Marc T. Rasich (9279)
  *mtrasich@stoel.com*
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone:  (801) 328-3131
Facsimile:  (801) 578-6999

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
Samuel F. Miller, TN BPR No. 22936
(*pending pro hac vice admission*)
Maia T. Woodhouse, TN BPR No. 30438
(*pending pro hac vice admission*)
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Telephone: (615) 726-5594
Fax: (615) 744-5594
Email: smiller@bakerdonelson.com

*Attorneys for Plaintiff Derma Pen, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DERMA PEN, LLC,<br><br>     Plaintiff<br><br>v.<br><br>4EVERYOUNG LIMITED, DERMAPENWORLD, BIOSOFT (AUST) PTY LTD d/b/a DERMAPENWORLD, EQUIPMED INTERNATIONAL PTY LTD d/b/a DERMAPENWORLD, and STENE MARSHALL d/b/a DERMAPENWORLD,<br><br>     Defendants. | **COMPLAINT**<br><br>**Civil Action No. 2:13cv00729BCW**<br><br>**Judge:   Brooke C. Wells**<br><br>**JURY TRIAL DEMANDED** |

Derma Pen LLC, for its causes of action against Defendants 4EverYoung Ltd, DermapenWorld, BioSoft (Aust) Pty Ltd d/b/a DermapenWorld, Equipmed International Pty Ltd d/b/a DermapenWorld, and Stene Marshall d/b/a DermapenWorld (collectively, "Defendants"), states as follows:

## I.   PARTIES

1.      Plaintiff Derma Pen LLC ("Derma Pen") is a limited liability company organized and existing under the laws of the State of Delaware.  Derma Pen maintains its principal place of business at 4760 South Highland Drive # 325, Salt Lake City, Utah 84117.

2.      Upon information and belief, Defendant 4EverYoung Limited ("4EverYoung") is a private limited company organized under the laws of the United Kingdom, with a principal place of business located at 70 North End Road, West Kensington, London, W14 9EP. 4EverYoung also lists a business address located at Unit 832, 19-21 Crawford Street, London W1H1PJ, United Kingdom.

3.      Upon information and belief, Defendant DermapenWorld ("DermapenWorld") is an unincorporated entity with a principal place of business located at 283 Mona Vale Road, Terrey Hills, New South Wales 2084, Australia.  According to its website located at www.dermapenworld.com, DermapenWorld maintains a business office located at 616 Corporate Way, Suite 2 #4000, Valley Cottage, New York, 10989.  Upon information and belief, DermapenWorld is a joint venture operated by Defendants Stene Marshall, Equipmed

International Pty Ltd, and BioSoft (Aust) Pty Ltd.   Upon information and belief, DermapenWorld may be served with process through service upon its owner, Stene Marshall.

4.      Upon information and belief, Defendant BioSoft (Aust) Pty Ltd d/b/a DermapenWorld ("BioSoft") is an Australian proprietary company with a principal place of business located at Unit 1/5 Talavera Road, North Ryde, New South Wales 2113, Australia.

5.      Upon information and belief, Defendant Equipmed International Pty Ltd. d/b/a DermapenWorld ("Equipmed") is an Australian private company organized under the laws of Australia, with a principal place of business located at 283 Mona Vale Road, Terrey Hills, New South Wales 2084, Australia.   According to its website located at www.equipmed.com, Equipmed maintains a business address located at 616 Corporate Way, Suite 2 #4000, Valley Cottage, New York 10989, as well as offices in Salt Lake City, Utah, New York City, New York, and Austin, Texas.

6.      Upon information and belief, Defendant Stene Marshall d/b/a DermapenWorld ("Marshall") is an individual citizen of Australia.   Upon information and belief, Marshall maintains a principal residence located at 283 Mona Vale Road, Terrey Hills, New South Wales 2084, Australia.

## II.      NATURE OF THE ACTION

7.      This is an action for rescission and fraudulent inducement, or, in the alternative, breach of contract under Utah law; violations of the Utah Unfair Trade Practices; trademark infringement arising under Section 32 of the Trademark Act of 1946 ("the Lanham Act"), as amended, 15 U.S.C. § 1114; unfair competition, false designation of origin, false description, and

dilution arising under Section 43 of the Lanham Act, as amended, 15 U.S.C. § 1125; common law trademark infringement, unfair competition, and unjust enrichment under Utah law; under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; and declaratory judgment pursuant to 28 U.S.C. § 2201.

## III.   JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 as it involves a federal question; under 28 U.S.C. § 1338 as it involves claims under the Copyright Act, 17 U.S.C. § 101 *et seq.* and the Lanham Act, 15 U.S.C § 1051 *et seq.*; 28 U.S.C. § 2201 as it involves a claim for declaratory judgment; and under 28 U.S.C. § 1332 as the action is between citizens of a State and citizens or subjects of a foreign state, and the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000.00.  This Court has supplemental jurisdiction over the claims that arise under Utah law pursuant to 28 U.S.C. § 1367(a) in that they are substantially related to the claims that arise under the Lanham Act of the United States.  Furthermore, this Court has supplemental jurisdiction because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

9.      Upon information and belief, this Court has personal jurisdiction over Defendants based on their continuous and systematic minimum contacts with residents of Utah, through the distribution and sale of their goods and/or services in Utah, because they are regularly transact business in this District, and/or have offered products into interstate commerce through one or more interactive websites, and have caused injury in this District.  Defendants, therefore, are

present in this judicial district and transact business and solicit business in the State of Utah, within this judicial district, and elsewhere.

10.     Further, upon information and belief, Defendants have committed tortious acts within the State of Utah and/or have committed tortious acts without the State of Utah and regularly do or solicit business, engage in other persistent courses of conduct and/or derive substantial revenue from products sold offered in the State of Utah and derive substantial revenue from interstate commerce.  In addition, Plaintiff has been injured in this judicial district.

11.     Upon information and belief, this Court has specific personal jurisdiction under Utah's long-arm statute, Utah Code Ann. § 78B-3-205, because (1) Defendants have transacted business within Utah; (2) Defendants have contracted to supply services or goods in Utah; (3) Defendants have caused injury within Utah through their tortious acts that give rise to this Complaint; and (4) jurisdiction based on Defendants' contacts with Utah (including, but not limited to, operation of their interactive websites and/or sales of goods or services) is not inconsistent with the Constitution of the State of Utah or the Constitution of the United States.

12.     Upon information and belief, venue is proper under Utah Code Ann. §§ 78B-3-304(2) and 78B-3-306.

## IV.     FACTUAL BACKGROUND

### A.     THE DERMAPEN® PRODUCTS AND TRADEMARKS

13.     Derma Pen was founded by Michael Morgan ("Morgan") and Chad Milton ("Milton") in 2011.  Morgan is the current CEO and Milton is the current President of Derma Pen.

14.     Derma Pen is a provider of Class 1 FDA cleared micro needling and skin treatment devices and systems.

15.     Derma Pen's micro needling products include, but are not limited to, the Dermapen® Medical Model micro needling device and the Dermapen® Aesthetic Model micro needling device.  The Dermapen® micro needling skin treatment devices shall hereinafter be referred to collectively as the "Dermapen® Products."

16.     Derma Pen also offers a line of Dermapen® approved consumables, which includes topical products, replacement needle tips, and cleaners, among others.

17.     As such, Derma Pen and its trademarks are associated with high-quality medical and cosmetic skin treatment products and services.

18.     Derma Pen has established, through continuous, long-term use in commerce common law rights in the mark "DERMAPEN" and in the use of the phrase "DERMAPEN" as a trade name or part of a trade name.  Commencing at least as early as June 1, 2011, Derma Pen has used the "DERMAPEN" mark continually nationwide in interstate commerce to identify certain of its goods and services and to distinguish such goods and services from those made and sold by others.

19.     Derma Pen is the owner of the Dermapen® trademark, which is the subject of U.S. Registration No. 4,096,295 (the "'295 Registration").  The '295 Registration was filed on June 29, 2011 and issued on February 7, 2012.

20.     Derma Pen is the owner of common law and federal rights in the mark DERMAPEN® (the "DERMAPEN® Mark") for use in connection with skin treatment devices

using multiple needles in a vibrating method for performing skin treatment procedures.  The DERMAPEN® Mark is the subject of U.S. Registration No. 4,096,295 (the "'295 Registration"), which was filed on June 29, 2011 and issued on February 7, 2012 and is now outstanding and valid.  A true and correct copy of the '295 Registration is attached hereto as **Exhibit 1**.

21.     Derma Pen's federally-registered and common law marks shall be hereinafter referred to collectively as the "DERMAPEN Marks."

22.     Derma Pen has expended considerable time, resources, and effort in promoting the DERMAPEN Marks and developing substantial goodwill associated therewith.

23.     The DERMAPEN Marks are arbitrary and inherently distinctive when used in connection with Derma Pen's goods and services.

24.     Due to the continual use of the DERMAPEN Marks by Derma Pen, the DERMAPEN Marks have come to indicate a single source of Derma Pen's goods and services. The DERMAPEN Marks have further come to indicate Derma Pen as the single source of such quality goods and services.

25.     Derma Pen and its use of the DERMAPEN Marks in the skin treatment industry is well-known.

26.     Derma Pen is the owner via assignment of the copyrights in certain textual and audiovisual content displayed on its website located at www.dermapen.com (the "Copyrighted Content").

27.     The Copyrighted Content is the subject of the following U.S. Copyright Applications and/or Registrations:

- Case No. 1-926932146 (with a screenshot of the webpage submitted as the deposit copy attached hereto as **Exhibit 2**);

- Case No. 1-926832793 (with a screenshot of the webpage submitted as the deposit copy attached hereto as **Exhibit 3**);

- Case No. 1-926477711 (with a screenshot of the webpage submitted as the deposit copy attached hereto as **Exhibit 4**); and

- Registration No. PA 1-844-151  (with the registration certificate attached hereto as **Exhibit 5**).

**B.     DERMA PEN'S RELATIONSHIP WITH STENE MARSHALL**

28.     In or around May 2011, prior to Derma Pen's formation, Morgan was introduced to Defendant Marshall through a third party, Justin Williams.

29.     Marshall was looking for a distributor to fund and market a skin micro needling device called the ePen in the United States.

30.     On or around June 21, 2011, Marshall flew to Salt Lake City, Utah for three days to meet with Morgan and his business partner, Milton, to demonstrate how the ePen product worked, and to negotiate a sales distribution agreement with Morgan and Milton to market and sell the ePen in the United States.

31.     During the initial negotiations, and prior to meeting Marshall in June 2011, Morgan and Milton decided to rebrand and market the ePen under the name "Dermapen" if they entered into an agreement with Marshall.

32.     Milton registered Derma Pen, LLC with the Utah Division of Corporations and Commercial Code on May 26, 2011, and which expired on December 21, 2012.

74343068.1 0202276-00001

8

33.     Milton and Morgan registered Derma Pen, LLC with the Delaware Department of State,  Division of Corporations on October 11, 2012, which is currently active and registered to do business in Utah.

### C.     MARSHALL'S AND 4EVERYOUNG'S MISREPRESENTATIONS REGARDING PATENTS EMBODIED IN THE EPEN

34.     At the June 21, 2011 meeting in Salt Lake City, Utah, Marshall represented to Morgan and Milton, acting on behalf of Derma Pen, that the manufacturer of the ePen (later identified as Sunwoo) had obtained patent registrations to protect the technology embodied in the ePen.

35.     Marshall represented that Sunwoo had worldwide exclusivity to the technology embodied in the ePen.

36.     Marshall further represented that he had the exclusive right worldwide to distribute and/or license the ePen to distributors for $65,000 per country.

37.     Derma Pen requested a copy of Marshall's manufacturing agreement with Sunwoo, but Marshall refused to produce the full agreement until Morgan and Milton wired $65,000 to Marshall to distribute the ePen in the United States.

38.     Instead, Marshall provided Derma Pen with a redacted version of the manufacturing agreement with Sunwoo, throughout which Sunwoo's name had been redacted.

39.     Marshall did not produce an unredacted version of the manufacturing agreement identifying Sunwoo as the manufacturer of the ePen until months after the parties executed the sales distribution agreement.

40.     Derma Pen also requested copies of Sunwoo's patents and proof of worldwide exclusivity to the technology embodied in the ePen, but Marshall refused to produce such documents until after Derma Pen entered into a sales distribution agreement.

41.     Because Marshall had redacted the identity of the manufacturer of the ePen from the manufacturing agreement, Derma Pen could not perform its own patent search prior to entering into a sales distribution agreement to determine whether, where, and which patents had been obtained by Sunwoo disclosing the invention embodied in the ePen.

42.     In reliance upon Marshall's material representations that Sunwoo owned patents granting it the exclusive right to make, use, sell, offer for sale, or import worldwide the invention embodied in the ePen, Derma Pen decided to enter into a business relationship with Marshall to sell and distribute the ePen in the United States under the DERMAPEN Marks.

### D.     THE SALES DISTRIBUTION AGREEMENT

43.     Various drafts of a sales distribution agreement were exchanged between Marshall on behalf of his company, 4EverYoung, and Morgan and Milton on behalf of their anticipated entity, Derma Pen.

44.     On August 2, 2011, 4EverYoung and Derma Pen executed the sales distribution agreement for Derma Pen to sell and distribute the ePen under Derma Pen's Dermapen® mark in the United States (the "Agreement").  The Agreement is incorporated by reference herein.  Due to confidentiality provisions contained in the Agreement, Derma Pen will move to file the Agreement under seal at a later date, if necessary.

45.     The Agreement affords Derma Pen the right to promote, market, distribute and sell the ePen in the United States under the DERMAPEN Marks.

46.     The Agreement contains several provisions related to the parties' respective trademark rights with regard to the DERMAPEN Marks.

47.     The Agreement grants all United States trademark rights in the DERMAPEN Marks to Derma Pen.

48.     The Agreement also contains provisions detailing 4EverYoung's alleged proprietary rights in the patents disclosing the invention embodied by the ePen device.

49.     The Agreement's provisions give the false impression that patents disclosing the invention embodied in the ePen exist and are owned by Marshall, 4EverYoung, and/or Sunwoo.

50.     Marshall and/or 4EverYoung also represented that 4EverYoung owned proprietary rights to the ePen and related documentation.

51.     The Agreement further provides that the prevailing party shall be entitled to recover reasonable attorney fees, costs, and expenses in the event of a dispute with respect to the Agreement.

### E.     MARSHALL AND 4EVERYOUNG ALTER THE AGREEMENT WITHOUT DERMA PEN'S KNOWLEDGE

52.     During Derma Pen's and 4EverYoung's contract negotiations, the parties agreed that Derma Pen would sell and distribute the ePen in the United States under Derma Pen's DERMAPEN Marks.

53.     The parties further agreed that 4EverYoung would be permitted to use Derma Pen's DERMAPEN Marks in the United Kingdom to sell and distribute the ePen.

54.     Derma Pen and 4EverYoung never discussed either 4EverYoung, Marshall, or any of the remaining Defendants using the DERMAPEN Marks in any other country other than the United Kingdom.

55.     Derma Pen and 4EverYoung only discussed trademark rights in Derma Pen's DERMAPEN Marks in the United States and the United Kingdom.  Use of the DERMAPEN Marks in all other countries was left open for future negotiation.

56.     Prior to execution of the Agreement and without any notice to or discussion with Derma Pen, Marshall and 4EverYoung unilaterally changed the language of § 12.1 of the Agreement to state that 4EverYoung owned trademark rights in the DERMAPEN Marks in a greater geographic scope than what was proposed in the final draft of the Agreement (the "Contested Language").

57.     To Derma Pen's knowledge, the Contested Language was not present in the "final" draft of the Agreement that Derma Pen approved for execution.

58.     Marshall's and 4EverYoung's addition of the Contested Language to § 12.1 of the Agreement after Derma Pen approved the final draft of the Agreement is a material fact that would have affected Derma Pen's execution of the Agreement.

59.     Derma Pen was not aware, and was not made aware, at the time of signing the Agreement that Marshall and/or 4EverYoung changed the Agreement to include granting worldwide rights to Marshall and 4EverYoung in the DERMAPEN Marks.

60.     The Contested Language in § 12.1 of the Agreement was not in the draft of the Agreement provided to Derma Pen by Marshall one to two days prior to executing the Agreement.

61.     Had Derma Pen been aware of the Contested Language in § 12.1 of the Agreement, it would not have executed the Agreement.

62.     Derma Pen executed the Agreement in reliance upon its belief that Marshall and 4EverYoung were acting in good faith and that the final version to sign was the same agreement that had been approved by Derma Pen prior to signing.

### F.     DERMA PEN DISCOVERS MARSHALL'S AND 4EVERYOUNG'S MISREPRESENTATIONS

63.     Derma Pen was also seeking to negotiate distribution rights in Canada and Mexico by leveraging its DERMAPEN Marks and granting Marshall the right to use the DERMAPEN Marks in other countries beyond the United Kingdom.

64.     On or around June 7, 2012, Marshall informed Derma Pen that he believed Derma Pen was registering country-specific domain names containing the DERMAPEN Marks.

65.     Marshall demanded that Derma Pen assign any country-specific domain names containing the DERMAPEN Marks or variants thereof to him.

66.     When Derma Pen questioned Marshall's request, Marshall informed Derma Pen to "read the contract."

67.     At the time of the June 7, 2012 meeting, Derma Pen had no knowledge that Marshall and 4EverYoung had added the Contested Language to the Agreement.

74343068.1 0202276-00001

68.     After being told to "read the contract" by Marshall, Derma Pen discovered that the Contested Language had been added to the Agreement.

69.     In or around March 2012, Derma Pen further discovered that neither Marshall, 4EverYoung, or Sunwoo owned patents granting worldwide exclusive rights to make, use, sell, offer for sale, or import the invention embodied in the ePen.

70.     Prior to signing the Agreement, Marshall and 4EverYoung represented that Sunwoo owned multiple patents guaranteeing Marshall exclusivity and worldwide rights to make, use, sell, offer for sale, or import the invention embodied in the ePen.

71.     Having never received the patents or proof of exclusive rights after executing the Agreement, as represented by Marshall, Derma Pen conducted its own search and discovered that Sunwoo only owned a Korean patent covering the invention embodied in the ePen.

72.     Upon Derma Pen's confronting of Marshall regarding the single Korean patent, Marshall admitted that the Korean patent was the only patent procured by Sunwoo.

73.     Marshall's and 4EverYoung's representations that Sunwoo had obtained multiple patents to ensure worldwide rights and exclusivity to the invention embodied in the ePen were material representations that Derma Pen reasonably relied upon in forming a business relationship with Marshall and 4EverYoung and executing the Agreement.

### G.     DEFENDANTS' RELATIONSHIP WITH EACH OTHER

74.     Upon information and belief, Defendants Marshall, 4EverYoung, Equipmed, and BioSoft own and/or operate an unincorporated entity named DermapenWorld.

75.        Biosoft is the owner of the registration for the www.dermapenworld.com domain name.  A true and correct copy of the WHOIS information for the www.dermapenworld.com domain name is attached hereto as **Exhibit 6**.

76.        The website located at the domain name www.dermapenworld.com directs consumers to a webpage advertising the DermaPen products offered by Defendants (the "DermapenWorld Website").  A true and correct copy of select webpages of the DermapenWorld Website is attached hereto as **Exhibit 7**.

77.        The Terms and Conditions for the DermapenWorld Website state that "[t]he Customer acknowledges agreement with these Terms and Conditions of Sale by the placement of an order to purchase a product from Equipmed[.]"   A true and correct copy of the DermapenWorld Website Terms and Conditions is attached hereto as **Exhibit 8**.

78.        The DermapenWorld Website Terms and Conditions reference Equipmed's obligations and representations regarding the products sold on the DermapenWorld Website, including without limitation, Equipmed's policy for the return or exchange of goods, warranty information, delivery of goods, title of goods, and payment. *See id.*

79.        The DermapenWorld Website Terms and Conditions contain a general warranty that "Equipmed warrants that it has good title to all products that it sells."  *See id.*

80.        The DermapenWorld Website Terms and Conditions instruct consumers to contact DermapenWorld at dermapen@equipmed.com.  *See id.*

81.     Each of the DermapenWorld locations lists "info@equipmed.com" as its contact email address on the contact information page of the DermapenWorld Website.  A true and correct copy of the DermapenWorld Website Contact page is attached hereto as **Exhibit 9**.

82.     Biosoft is also the owner of the registration for the www.derma-pen.com domain name.  A true and correct copy of the WHOIS information for the www.derma-pen.com domain name is attached hereto as **Exhibit 10**.

83.     The website located at the domain name www.derma-pen.com directs consumers to a webpage advertising the DermaPen products offered by Defendants (the "Derma-Pen Website").  A true and correct copy of select webpages of the Derma-Pen Website is attached hereto as **Exhibit 11**.

84.     The Derma-Pen Website states that Equipmed has "sourced and developed our own range of solutions, including Dermapen . . . ."  *See id.*

85.     The Terms and Conditions for the Derma-Pen Website state that "[t]he Customer acknowledges agreement with these Terms and Conditions of Sale by the placement of an order to purchase a product from Equipmed[.]"  A true and correct copy of the Derma-Pen Website Terms and Conditions is attached hereto as **Exhibit 12**.

86.     The Derma-Pen Website Terms and Conditions reference Equipmed's obligations and representations regarding the products sold on the Derma-Pen Website, including without limitation, Equipmed's policy for the return or exchange of goods, warranty information, delivery of goods, title of goods, and payment. *See id.*

87.     The Derma-Pen Website Terms and Conditions contain a general warranty that "Equipmed warrants that it has good title to all products that it sells."  *See id.*

88.     The  Derma-Pen Website lists "info@equipmed.com" as its contact email address on its contact information page.  A true and correct copy of the Derma-Pen Website Contact page is attached hereto as **Exhibit 13**.

89.     Biosoft is also the owner of the registration for the www.equipmed.com domain name.  A true and correct copy of the WHOIS information for the www.equipmed.com domain name is attached hereto as **Exhibit 14**.

90.     The website located at the domain name www.equipmed.com directs consumers to a webpage advertising the DermaPen products offered by Defendants (the "Equipmed Website").  A true and correct copy of select webpages of the Equipmed Website is attached hereto as **Exhibit 15**.

91.     The Equipmed Website states that Equipmed has "sourced and developed our own range of solutions, including Dermapen . . . ."  *See id.*

92.     The Terms and Conditions for the Equipmed Website state that "[t]he Customer acknowledges agreement with these Terms and Conditions of Sale by the placement of an order to purchase a product from Equipmed[.]"  A true and correct copy of the Equipmed Website Terms and Conditions is attached hereto as **Exhibit 16**.

93.     The Equipmed Website Terms and Conditions reference Equipmed's obligations and representations regarding the products sold on the Equipmed Website, including without

limitation, Equipmed's policy for the return or exchange of goods, warranty information, delivery of goods, title of goods, and payment. *See id.*

94.     The Equipmed Website Terms and Conditions contain a general warranty that "Equipmed warrants that it has good title to all products that it sells."  *See id.*

95.     The  Equipmed Website lists "info@equipmed.com" as its contact email address on its contact information page.  A true and correct copy of the Equipmed Website Contact page is attached hereto as **Exhibit 17**.

96.     Biosoft is also the owner of the registration for the www.beautepacifique.com.au domain name.   A true  and  correct  copy  of  the  WHOIS  information  for  the www.beautepacifique.com.au domain name is attached hereto as **Exhibit 18**.

97.     Upon information and belief, one or more of the Defendants own, operate, and/or are affiliated with the website located at the domain name www.beautepacifique.com.au (the "Beaute Pacifique Website").   A true and correct copy of select webpages of the Beaute Pacifique Website is attached hereto as **Exhibit 19**.

98.     The Beaute Pacifique Website Terms and Conditions state that "[i]nformation contained  and  presented  in  this  site  remains  the  intellectual  property  of www.beautepacifique.com.au, Equipmed and or its authorised representatives."

99.     The Beaute Pacifique Website Terms and Conditions further state that "Equipmed and/or any of its subsidiaries will not be liable to any third party" as a result of any material "provided by this website or Equipmed associated websites, or representatives."

100.     Upon information and belief, Marshall is the owner and CEO of Equipmed.

101.     Upon information and belief, Marshall is the owner and/or primary officer of DermapenWorld, Equipmed, and Biosoft.

102.     Upon information and belief, Marshall is the director and/or primary officer of 4EverYoung.

103.     Upon information and belief, in his position as owner and primary officer of DermapenWorld, Marshall exercises complete control, not mere majority or complete stock control, but complete domination not only of finances but of policy and business practice with respect to DermapenWorld's transactions, including its interactive website located at www.dermapenworld.com, such that DermapenWorld has no separate mind, will, or existence of its own.

104.     Upon information and belief, in his role as owner and/or primary officer of DermapenWorld, Equipmed, Biosoft, and 4EverYoung, Marshall is actively and personally involved in the wrongful acts giving rise to this action.

105.     Upon information and belief, Marshall personally took part in, ratified and/or directed others to engage in the infringing activity.  As a result, Marshall is personally liable for the wrongful acts he has committed as alleged herein.  Further, as owner and/or primary officer of DermapenWorld, Equipmed, and Biosoft, Marshall has a direct financial interest in Defendants and the right and ability to supervise Defendants' activities, including the wrongful acts alleged herein.

106.     Upon information and belief, Marshall knowingly and actively participated in, authorized, ordered, controlled, participated, approved, or ratified operation of the DermapenWorld Website.

107.     Upon information and belief, Marshall knowingly and actively participated in, authorized, ordered, controlled, participated, approved, or ratified operation of the Derma-Pen Website.

108.     Upon information and belief, Marshall knowingly and actively participated in, authorized, ordered, controlled, participated, approved, or ratified operation of the Equipmed Website.

109.     Upon information and belief, and in addition to or in conjunction with his individual wrongful and illegal conduct, Marshall has used and continues to use DermapenWorld, Equipmed, Biosoft, and 4EverYoung as his "alter ego" and as a corporate fiction to shield Marshall from personal liability, as evidenced by but not limited to, the common ownership and/or common control of DermapenWorld, Equipmed, Biosoft, and 4EverYoung by Marshall, Marshall's common corporate positions as the primary officer of DermapenWorld, Equipmed, Biosoft, and 4EverYoung, the common business addresses used for DermapenWorld and Equipmed, the common business addresses used for Biosoft and Equipmed, the undercapitalization of 4EverYoung showing share capital of £100 and total net liabilities totaling £43,153 (GBP) for 2011, and share capital of £100 and total net liabilities of £72,255 (GBP) for 2012 as of August 2012, and the common address used for DermapenWorld and Equipmed's

business offices and Marshall's personal residence, which suggests a failure to observe corporate formalities and commingling of corporate assets.

110.     Upon information and belief, Marshall uses his various alter egos interchangeably and as alter egos of each other, as evidenced by the DermapenWorld Website Terms and Conditions creating an agreement between users of the DermapenWorld Website and Equipmed; the Derma-Pen Website Terms and Conditions creating an agreement between users of the Derma-Pen Website and Equipmed; the DermapenWorld Website, Derma-Pen Website, and Equipmed Website sharing identical Terms and Conditions; the Derma-Pen Website and Equipmed Website sharing virtually identical content; the common business addresses used for DermapenWorld and Equipmed; Marshall's use of the same address located at Unit 1/5 Talavera Road, New South Wales 2113, Australia for both Equipmed and Biosoft; and Biosoft registering and owning the domain names www.dermapenworld.com, www.derma-pen.com, www.equipmed.com, and www.beautepacifique.com.au.   A true and correct copy of the U.S. Food and Drug Administration Establishment Registration and Device Listing page, available at www.accessdata.fda.gov and listing Equipmed's address as Unit 1/5 Talavera Road, Macquarie Park, New South Wales 2113 Australia, is attached hereto as **Exhibit 20**.

### H.     DEFENDANTS' WANTON, KNOWING, AND INTENTIONAL INFRINGING AND/OR UNLAWFUL CONDUCT

#### 1.     The DermapenWorld Website

111.     Without Derma Pen's knowledge or consent, and beginning long after Derma Pen had established extensive and valuable goodwill in connection with its goods and services identified by the subject marks, Defendants commenced to use, and are currently using, in

interstate commerce and commerce affecting interstate commerce, trade names and word marks which include the phrase "DERMAPEN" in connection with the sale, offering for sale, distribution, advertising, and promotion of their services, including, without limitation, micro needling skin treatment devices and related products.

112.    Upon information and belief, Defendants operate and transact business through the interactive DermapenWorld Website, through which could accept orders of their products from any person in any city in the United States, including residents in this District.  *See* **Exhibits 7-9**.

113.    Upon information and belief, through their interactive DermapenWorld Website, Defendants transacted business, both accepting and processing orders of their products, including without limitation, its "Dermapen™ Personal" model device, "Dermapen™ Personal" needles, and "Dermapen™ Dermaceuticals" products.

114.    Upon information and belief, Defendants operate and transact business through the interactive DermapenWorld Website, through which Defendants invite potential customers to submit their contact information and inquiries for future contact by DermapenWorld.

115.    Upon information and belief, the DermapenWorld Website was designed to form contacts with potential customers, inviting them to create an account and to sign up for its newsletters by clicking a box labeled "Sign up for our newsletter!"  Through signing up for Defendants' newsletter, potential customers could receive "Dermapen™ deals, news and alerts." The DermapenWorld Website further invites potential customers to "get deals sent by email."

116.     The DermapenWorld Website also allows customers to validate their warranties for the DermapenWorld products.

117.     The DermapenWorld Website also allows potential customers to find a Dermapen provider near the customers, including providers within the United States.

118.     The DermapenWorld Website lists only one location for United States residents to find a provider – in Washington, District of Columbia.  The DermapenWorld Website does not direct potential customers to Derma Pen or any of the providers to whom Derma Pen distributes its Dermapen Products.

119.     Upon information and belief, Defendants advertise and offer the DermapenWorld products for sale in the United States through the interactive DermapenWorld Website.

120.     According to the DermapenWorld Website, DermapenWorld maintains an office in New York.

### 2.     The Derma-Pen Website

121.     Upon information and belief, Defendants also operate and transact business through the interactive Derma-Pen Website, through which Defendants advertise and offer for sale their products to any person in any city of the United States, including residents in this District. *See* **Exhibits 11-13**.

122.     According to the Derma-Pen Website, Defendants maintain offices in Salt Lake City, Utah, New York City, New York, Valley Cottage, New York, and Austin, Texas.

123.     Upon information and belief, through their interactive Derma-Pen Website, Defendants have transacted business, both accepting and processing orders of their products,

including, without limitation, their "Dermapen Consumables."   A true and correct copy of a screenshot of the Derma-Pen Website dated May 28, 2013 and demonstrating that customers could purchase products directly from the Derma-Pen Website is attached hereto as **Exhibit 21**.

124.     Upon information and belief, through their interactive Derma-Pen Website, Defendants now transact business through inviting potential customers to click a button titled "purchase here" for their products, including their DermaPen MEDICAL aesthetic device, DermaPen PROFESSIONAL aesthetic device, DermaPen PERSONAL aesthetic device, and their "DermaPen Consumables," such as their DermaPen HylaActive Serum.

125.     When a potential customer clicks on the "purchase here" button, he or she is redirected to the Beaute Pacifique Website, which is believed to be owned, operated, and/or affiliated by or with one or more of the Defendants.  *See* **Exhibits 18, 19**.

126.     Upon information and belief, Defendants operate and transact business through the interactive Derma-Pen Website, through which Defendants invite potential customers to submit their contact information and inquiries for future contact by Equipmed.

127.     Upon information and belief, the Derma-Pen Website was designed to form contacts with potential customers, inviting them to create an account and to sign up for its newsletters by clicking a box labeled "Get deals sent by email."   Through signing up for Defendants' newsletter, potential customers could receive Equipmed's "'Cosmetic Equipment Sale Deals' newsletters" and "monthly email notifications."

128.     The Derma-Pen Website also allows customers to submit support requests, or "support tickets" to Equipmed's support team at info@equipmed.com.

129.     The Derma-Pen Website also allows customers to contact Equipmed's Service Training and Test center for Equipmed's "professional expertise" and "quality, fast and low cost services" including: replacement parts order and delivery; training in house and online; pre buy testing; professional advice; and equipment audit.

130.     The Derma-Pen Website does not direct potential customers to Derma Pen or any of the providers to whom Derma Pen distributes its Dermapen Products.

131.     Upon information and belief, Defendants advertise and offer the DermapenWorld products for sale in the United States through the interactive Derma-Pen Website.

132.     The Derma-Pen Website also displays the following image reproduced in Figure 1 below, which advertises that Defendants "support you with financing cosmetic equipment through partnerships with common financial lenders" in "USA," "UK & Europe," and "Australia & NZ."



**Finance Available**

We support you with financing cosmetic equipment through partnerships with common financial lenders

‣ USA
‣ UK & Europe
‣ Australia & NZ

Figure 1: Image from Derma-Pen Website

### 3.     The Equipmed Website

133.     Upon information and belief, Defendants also operate and transact business through the interactive Equipmed Website, through which Defendants advertise and offer for

sale their products to any person in any city of the United States, including residents in this District.  *See* **Exhibits 15-17**.

134.      According to the Equipmed Website, Defendants maintain offices in Salt Lake City, Utah, New York City, New York, Valley Cottage, New York, and Austin, Texas.

135.      Upon information and belief, through their interactive Equipmed Website, Defendants have transacted business, both accepting and processing orders of their products, by inviting potential customers to click a button titled "purchase here" for their products, including their DermaPen MEDICAL aesthetic device, DermaPen PROFESSIONAL aesthetic device, DermaPen PERSONAL aesthetic device, and their "DermaPen Consumables," such as their DermaPen HylaActive Serum.

136.      When a potential customer clicks on the "purchase here" button, he or she is redirected to the Beaute Pacifique Website, which is believed to be owned, operated, and/or affiliated by or with one or more of the Defendants.  *See* **Exhibits 18, 19**.

137.      Upon information and belief, Defendants operate and transact business through the interactive Equipmed Website, through which Defendants invite potential customers to submit their contact information and inquiries for future contact by Equipmed.

138.      Upon information and belief, the Equipmed Website was designed to form contacts with potential customers, inviting them to create an account and to sign up for its newsletters by clicking a box labeled "Get deals sent by email."  Through signing up for Defendants' newsletter, potential customers could receive Equipmed's "'Cosmetic Equipment Sale Deals' newsletters" and "monthly email notifications."

139.     The Equipmed Website also allows customers to submit support requests, or "support tickets" to Equipmed's support team at info@equipmed.com.

140.     The Equipmed Website also allows customers to contact Equipmed's Service Training and Test center for Equipmed's "professional expertise" and "quality, fast and low cost services" including: replacement parts order and delivery; training in house and online; pre buy testing; professional advice; and equipment audit.

141.      The Equipmed Website does not direct potential customers to Derma Pen or any of the providers to whom Derma Pen distributes its Dermapen Products.

142.     Upon information and belief, Defendants advertise and offer the DermapenWorld products for sale in the United States through the interactive Equipmed Website.

143.     The Equipmed Website also displays the following image reproduced in Figure 2 below, which advertises that Defendants "support you with financing cosmetic equipment through partnerships with common financial lenders" in "USA," "UK & Europe," and "Australia & NZ."



**Finance Available**

We support you with financing cosmetic equipment through partnerships with common financial lenders

‣ USA
‣ UK & Europe
‣ Australia & NZ

Figure 2: Image from Equipmed Website

**4.      Harm to Derma Pen**

144.      Defendants' use of the DERMAPEN Marks on the interactive DermapenWorld Website, interactive Derma-Pen Website, and interactive Equipmed Website is without Derma Pen's permission or authority and is likely to cause or has caused confusion, mistake, and deception among consumers and customers.

145.      Defendants' uses of the DERMAPEN Marks in interstate commerce to advertise, promote, and market their goods and services through the interactive DermapenWorld Website, interactive Derma-Pen Website, and interactive Equipmed Website were never approved, permitted or endorsed by Derma Pen, and occurred after Derma Pen had established extensive and valuable goodwill in connection with its goods and services identified by the DERMAPEN Marks.

146.      Derma Pen's first use in commerce of the DERMAPEN Marks predate Defendants' first use of the DERMAPEN Marks and, therefore, have priority over Defendants' first use of the DERMAPEN Marks.

147.      Notwithstanding the constructive notice of the DERMAPEN® Mark by virtue of the '295 Registration, Defendants had actual notice of Derma Pen's rights in the DERMAPEN Marks at least as early as August 2, 2011 at the execution of the Agreement.

148.      The Agreement expressly acknowledges that Derma Pen owns the U.S. trademark rights to the DERMAPEN Marks.

149.      By selecting and continuing their use of the DERMAPEN Marks in connection with the sale and offering of their goods and services, notwithstanding their knowledge of Derma

Pen's rights, Defendants have acted and continue to act with the wanton disregard for Derma

Pen's rights, and with the willful intent and purpose of improperly taking or benefiting from the

favorable reputation and valuable goodwill which Derma Pen has established in the

DERMAPEN Marks.  Defendants' brazen and illegal actions have caused and continue to cause

their goods and services to be passed off as made, authorized, sponsored, or endorsed by or

otherwise connected with Derma Pen.

150.     The trade names and marks utilized by Defendants incorporating the phrase

"DERMAPEN" are colorable imitations of and confusingly similar to Derma Pen's

DERMAPEN Marks.

151.     Defendants' wrongful and illegal activities are likely to cause confusion, to cause

mistake, and to deceive consumers and others as to the source, nature, and quality of the goods

and services offered by Defendants.

152.     On the DermapenWorld Website for DermapenWorld's products and as an aid to

their sales efforts, Defendants have included unauthorized reproductions of Derma Pen's

Copyrighted Content (the "Infringing Content").   True and correct copies of webpages

containing the Infringing Content are attached hereto as collective **Exhibit 22**.

153.     A chart comparing the Infringing Content to the Copyrighted Content is attached

hereto as **Exhibit 23**.

154.     Derma Pen has been seriously damaged by Defendants' activities complained of

herein, and unless such activities are preliminarily and permanently enjoined, Derma Pen and its

goodwill and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated or compensated in money damages.

## V.   CAUSES OF ACTION

### COUNT I

### FRAUDULENT INDUCEMENT
**(*against Defendants 4EverYoung and Marshall*)**

155.     Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

156.     As alleged herein, Defendants Marshall and 4EverYoung made material misrepresentations of presently existing facts to induce Derma Pen into executing the Agreement, including, without limitation, that Marshall, 4EverYoung, and/or Sunwoo owned multiple patents protecting their rights and exclusivity in the invention embodied in the ePen worldwide, and that the final Agreement sent to Derma Pen for its signature was the same version previously approved by Derma Pen that did not contain the Contested Language.

157.     Marshall's and 4EverYoung's representations are demonstrably false, as Sunwoo only owned a single patent in Korea for the invention embodied in the ePen, and had no other claim to rights or exclusivity in any other country.

158.     Marshall's and 4EevrYoung's representations are demonstrably false because they added the Contested Language to the Agreement after Derma Pen approved the final terms and before Derma Pen executed the Agreement.

159.     Marshall and 4EverYoung knew such representations were false, or made such representations recklessly knowing that there was insufficient knowledge upon which to base such representations.

160.     Marshall's and 4EverYoung's false representations were made for the purpose of inducing Derma Pen to act upon such representations and enter into an agreement with Marshall and 4EverYoung for exclusive sales distribution rights in the United States.

161.     Derma Pen, acting reasonably and in ignorance of such representations' falsity, did in fact rely upon such representations that it could only license the ePen through Marshall and 4EverYoung, as the ePen was protected by multiple patents obtained worldwide.

162.     Derma Pen, acting reasonably and in ignorance of such representations' falsity, did in fact rely upon such representations that the final Agreement sent for Derma Pen's signature was the same version previously approved by Derma Pen and which did not contain the Contested Language.

163.     Derma Pen was thereby induced to act upon such representations and execute the Agreement to its injury and damage.

164.     Therefore, Derma Pen is entitled to all available remedies to restore Derma Pen to the position it occupied before Marshall's and 4EverYoung's fraud, including without limitation, rescission of the Agreement, restitution, interest, and costs.

## COUNT II

**BREACH OF CONTRACT**
**(*against 4EverYoung*)**

165.     Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

166.     In the alternative, and to the extent the Court finds that the Agreement is valid and enforceable, Defendant 4EverYoung has breached the Agreement by using the DERMAPEN Marks in commerce in the United States.

167.     In the alternative, and to the extent the Court finds that the Agreement is valid and enforceable, Derma Pen has performed its obligations under the Agreement.

168.     In the alternative, and to the extent the Court finds that the Agreement is valid and enforceable, 4EverYoung has breached the Agreement through its use of the DERMAPEN Marks on Defendants' interactive websites located at www.dermapenworld.com, www.derma-pen.com, and www.equipmed.com.

169.     In the alternative, and to the extent the Court finds that the Agreement is valid and enforceable, Defendants' use of the DERMAPEN Marks on the DermapenWorld Website, Derma-Pen Website, and Equipmed Website constitutes use in commerce, which violates the express provisions in the Agreement acknowledging that Derma Pen owns the U.S. trademark rights in the DERMAPEN Marks.

170.     In the alternative, and to the extent the Court finds that the Agreement is valid and enforceable, as a result of 4EverYoung's breaches of the Agreement, Derma Pen has suffered and continues to suffer damage.

171.     Accordingly, in the alternative, and to the extent the Court finds that the Agreement is valid and enforceable, Derma Pen is entitled to an award of monetary damages including, but not limited to, actual damages; lost profits; incidental damages; consequential damages; injunctive relief; attorney fees; interest; and costs.

## COUNT III

### FEDERAL AND STATE TRADEMARK INFRINGEMENT
### (*against all Defendants*)

172.     Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

173.     Defendants' acts constitute infringement of Derma Pen's exclusive rights to the DERMAPEN Marks in violation of the Lanham Act, specifically 15 U.S.C. § 1114(1), and of Derma Pen's trademark rights under Utah state and common law.

174.     Defendants' acts of infringement have caused Derma Pen damages, and Derma Pen seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unauthorized and infringing use of Derma Pen's trademarks, for the damages sustained by Derma Pen, for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

175.     Derma Pen seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or Derma Pen's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

176.      Pursuant to 15 U.S.C. § 1116 and equity, Derma Pen is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

177.      Pursuant to 15 U.S.C. § 1118 and equity, Derma Pen is entitled to impoundment and destruction of infringing articles.

178.      Derma Pen is further entitled to all available remedies provided by common law, including, but not limited, to temporary and permanent injunctive relief; Defendants' profits; any damages sustained by Derma Pen; and costs.

**COUNT IV**

**TRADE NAME INFRINGEMENT**
(***against all Defendants***)

179.      Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

180.      Defendants' acts constitute trade name infringement in violation of Derma Pen's trade name rights at common law.

181.      Defendants' acts of infringement have caused Derma Pen damages, and Derma Pen seeks judgment for Defendants' profits made by Defendants' unauthorized and infringing use of Derma Pen's trade name, for the damages sustained by Derma Pen, for all costs necessary to remediate the infringing uses and their effects, and for the costs incurred in bringing the present action.

182.      Further, Derma Pen is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

## COUNT V

### FEDERAL STATUTORY UNFAIR COMPETITION IN VIOLATION
### OF THE LANHAM ACT, 15 U.S.C. § 1125(a)
### (*against all Defendants*)

183.     Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

184.     Defendants have used names and marks which are identical or confusingly similar to Derma Pen's DERMAPEN Marks with the intent to deceive the public into believing that goods and services offered or sold by Defendants are made by, approved by, sponsored by, or affiliated with Derma Pen.

185.     Defendants' acts as alleged herein were committed with the intent to pass off Defendants' goods and services as the goods and services of, approved by, sponsored by, or affiliated with Derma Pen, and with the intent to deceive and defraud the public.

186.     Defendants' acts constitute unfair competition and passing off, and have caused Derma Pen damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to Derma Pen's goodwill and reputation caused by Defendants.

187.     Defendants' acts constitute violations of 15 U.S.C. § 1125.

188.     Defendants' acts of unfair competition have caused Derma Pen damages, and Derma Pen seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of Derma Pen's goods and services, for the damages sustained by Derma Pen, for all costs necessary to remediate the unfair competition and

passing off and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

189.     Derma Pen further seeks judgment for three times the amount of Defendants' profits or Derma Pen's damages, whichever is greater, due to the nature of Defendants' conduct.

190.     Pursuant to 15 U.S.C. § 1116, Derma Pen is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

191.     Pursuant to 15 U.S.C. § 1118, Derma Pen is entitled to impoundment and destruction of infringing articles.

<u>**COUNT VI**</u>

**FALSE DESIGNATION OF ORIGIN IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)**
(*against all Defendants*)

192.     Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

193.     Defendants have caused products and/or services to enter interstate commerce designated with variations of the DERMAPEN Marks.

194.     Defendants' use of said designation and other representations constitute a false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Derma Pen and as to the origin, sponsorship, or approval of such goods and services by Derma Pen.

195.     Defendants' acts are in violation of 15 U.S.C. § 1125 in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Derma Pen, and as to the origin, sponsorship, and approval of Defendants' goods, services, and commercial activities by Derma Pen.

196.     Defendants' acts have caused Derma Pen damages, and Derma Pen seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of Derma Pen's goods and services, for the damages sustained by Derma Pen, for all costs necessary to remediate the unlawful acts and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

197.     Derma Pen further seeks judgment for three times the amount of Defendants' profits or Derma Pen's damages, whichever is greater, due to the nature of Defendants' conduct.

198.     Pursuant to 15 U.S.C. § 1116, Derma Pen is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

199.     Pursuant to 15 U.S.C. § 1118, Derma Pen is entitled to impoundment and destruction of infringing articles.

<u>**COUNT VII**</u>

**TRADEMARK DILUTION IN VIOLATION OF
THE LANHAM ACT, 15 U.S.C. § 1125(c)**
(***against all Defendants***)

200.     Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

201.     Derma Pen and its DERMAPEN Marks have been famous for a significant amount of time.

202.     Defendants' use of Derma Pen's DERMAPEN Marks have been used in commerce for Defendants' commercial gain.

203.     Defendants have engaged in dilution by blurring because Defendants' use of the DERMAPEN Marks has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and Derma Pen's DERMAPEN Marks that impairs the actual or acquired distinctiveness of Derma Pen's DERMAPEN Marks.

204.     Defendants' acts have already caused or are likely to cause an association arising from the similarity between their infringing use and Derma Pen's marks that lessens the capacity of Derma Pen's marks to identify and distinguish its goods and services.

205.     Defendants willfully intended to trade on the recognition of Derma Pen and its famous marks.

206.     Defendants' acts are in violation of 15 U.S.C. § 1125(c).

207.     Defendants' acts have caused Derma Pen damages, and Derma Pen seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants through

their unlawful acts, for the damages sustained by Derma Pen, for all costs necessary to remediate the unlawful acts and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

208.     Derma Pen further seeks judgment for three times the amount of Defendants' profits or Derma Pen's damages, whichever is greater, due to the nature of Defendants' conduct.

209.     Pursuant to 15 U.S.C. §§ 1116 and 1125(c)(1) and equity, Derma Pen is entitled to preliminary and permanent injunctive relief against First State to stop the illegal conduct.

210.     Pursuant to 15 U.S.C. § 1118, Derma Pen is entitled to impoundment and destruction of infringing articles.

## COUNT VIII

### VIOLATIONS OF THE UTAH REGISTRATION AND PROTECTION OF TRADEMARKS AND SERVICE MARKS ACT, UTAH CODE ANN. § 70-3a-403 *et seq.* (*against all Defendants*)

211.     Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

212.     Derma Pen's trademarks are distinctive or have acquired a secondary meaning.

213.     Derma Pen and its DERMAPEN Marks have been famous for a significant amount of time.

214.     Defendants' use of Derma Pen's DERMAPEN Marks have been used in commerce for Defendants' commercial gain.

215.     Defendants, with full knowledge of the public recognition of Derma Pen's famous marks, intended to and willfully traded on goodwill associated with Derma Pen's marks.

216.     Defendants' acts, including their use of Derma Pen's trademarks and trade names, has created a likelihood of dilution of the distinctive quality of Derma Pen's trademarks and trade names and/or a likelihood of injury to Derma Pen's business reputation.

217.     Defendants' acts have already caused or are likely to cause an association arising from the similarity between Defendants' infringing use and Derma Pen's marks that lessens the capacity of Derma Pen's marks to identify and distinguish its goods and services.

218.     Defendants' acts constitute violations of Sections 70-3a-403 of the Utah Code.

219.     Derma Pen is entitled to injunctive relief, damages, and all other available statutory remedies pursuant to Utah Code Ann. §§ 70-3a-403 and 70-3a-404.

## COUNT IX

### VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT, UTAH CODE ANN. § 13-11-1 *et seq.* (*against all Defendants*)

220.     Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

221.     Defendants' willful and knowing acts, including their use of Derma Pen's trademarks and trade names in commerce and on their interactive website, constitute unfair, deceptive, and/or unconscionable acts or practices in violation of Sections 13-11-4(2)(a) and (i) of the Utah Code.

222.     Defendants' acts are violations of Utah Code Ann. § 13-11-1 *et seq.* in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Derma Pen and as to the origin, sponsorship, or approval of such goods and services by Derma Pen.

223.     Defendants' acts are violations of Utah Code Ann. § 13-11-1 *et seq.* in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities.

224.     Defendants' willful and knowing acts, including their use of Derma Pen's trademarks and trade names in commerce and on their interactive website, were known by Defendants to be deceptive and misleading, or through the exercise of reasonable care or investigation could or might have been ascertained to be deceptive and misleading.

225.     Defendants' acts were conducted with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property or services, or to induce the public to enter into obligations relating to such property or services.

226.     Derma Pen has suffered injury as a result of Defendants' unfair, deceptive, and misleading acts.

227.      Derma Pen is entitled to injunctive relief and all other available statutory remedies, including an award of Derma Pen's actual damages or $2,000, whichever is greater, sustained under Section 13-11-19, and reasonable attorney fees and costs.

228.      Further, Derma Pen is entitled to injunctive relief against Defendants to stop the illegal conduct.

## COUNT X

### VIOLATIONS OF THE UTAH TRUTH IN ADVERTISING ACT, UTAH CODE ANN. § 13-11a-1 *et seq.* (*against all Defendants*)

229.      Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

230.      Defendants' willful and knowing acts, including their use of Derma Pen's trademarks and trade names in commerce and on their interactive websites, constitute deceptive, misleading, and false advertising practices in violation of Sections 13-11a-3(a)-(c), (e), and (t) of the Utah Code.

231.      Defendants have intentionally made misleading statements of fact in commercial advertising in interstate commerce through their websites located at www.dermapenworld.com, www.derma-pen.com, and www.equipmed.com.

232.      Upon information and belief, Defendants have caused products and/or services to enter interstate commerce through their interactive websites under the DERMAPEN Marks.

233.      The DermapenWorld Website, Derma-Pen Website, and Equipmed Website using the DERMAPEN Marks affects interstate commerce because they are available on the internet to

citizens of every state, and represents that DermapenWorld  maintains an office in New York, and that Equipmed maintains an office in New York, Utah, and Texas.

234.     Defendants' use of the DERMAPEN Marks on their interactive websites constitutes commercial advertising or promotion of Defendants' goods and services.

235.     Defendants' acts are Utah Code Ann. § 13-11a-1 *et seq.* in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake as to the affiliation, connection, or association of Defendants with Derma Pen, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services by Derma Pen.

236.     Defendants' acts are violations of Utah Code Ann. § 13-11a-1 *et seq.* in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities.

237.     Upon information and belief, Defendants' literally false and/or misleading commercial advertising statements, if they have not actually deceived consumers, have the tendency to deceive a substantial segment of their audience.

238.     Defendants' literally false and/or misleading commercial advertising statements are material in that the statements are likely to influence existing and potential consumers of their products and services.

239.     Derma Pen has been or is likely to be injured as a result of the false statements either by direct diversion of sales or by a loss of goodwill associated with its services and/or products.

240.     Derma Pen is entitled to all available statutory remedies, including an award of Derma Pen's actual damages or $2,000, whichever is greater, sustained under Section 13-11a-4, and reasonable attorney fees and costs.

## COUNT XI

### UNFAIR COMPETITION IN VIOLATION OF UTAH COMMON LAW
### (*against all Defendants*)

241.     Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

242.     Through Defendants' use of the DERMAPEN Marks on their interactive websites and in commerce, Defendants have committed passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

243.     Defendants are liable to Derma Pen for unfair competition under Utah law, because Defendants' conduct is tortious and has deprived Derma Pen of customers and other prospects.

244.     Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services, including, but not limited to, that

DermapenWorld and/or Defendants are the author and/or owner of the copyrights embodied in the Infringing Content.

245.     Defendants' acts as alleged herein constitute unfair, deceptive, or misleading acts and false advertising in violation of Utah law.

246.     Defendants' acts constituting unfair competition have caused Derma Pen damages as hereinafter alleged.

247.     Defendants' acts of unfair competition have caused Derma Pen damages, and Derma Pen seeks judgment for Defendants' profits made by Defendants' unfair competition and/or passing off of Derma Pen's goods and services, for the damages sustained by Derma Pen, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

248.     Derma Pen further seeks judgment for punitive damages of at least three times the amount of Defendants' profits or Derma Pen's damages, whichever is greater, due to the nature of Defendants' conduct.

249.     Further, Derma Pen is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

## COUNT XII

### UNJUST ENRICHMENT IN VIOLATION OF UTAH COMMON LAW
(*against all Defendants*)

250.     Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

251.    Defendants' willful and knowing acts, including their use of Derma Pen's trademarks and trade names, permitted Defendants to sell goods and services in the that they otherwise would not have been able to sell.

252.    Derma Pen has conferred a benefit, directly or indirectly, upon Defendants through Defendants' use of the DERMAPEN Marks.

253.    Defendants have received appreciable benefits from using the DERMAPEN Marks in commerce.

254.    It is inequitable for Defendants to retain the benefits of the use of the DERMAPEN Marks, including, but not limited to, monetary and reputational benefits and value of the DERMAPEN Marks.

255.    Defendants' acts have caused Derma Pen damages such that monetary and injunctive remedies are appropriate.

256.    Defendants have been unjustly enriched by virtue of their false representations, to the detriment of Derma Pen, as well as consumers in the marketplace.

257.    Defendants actions have been made willfully and knowingly.

258.    Defendants acts have caused Derma Pen damages and unjustly enriched Defendants as alleged herein.

259.    Derma Pen is entitled to all available remedies, including preliminary and permanent injunctive relief, damages, Defendants' profits, enhanced damages, and costs.

## COUNT XIII

### COPYRIGHT INFRINGEMENT OF COPYRIGHT APPLICATION
### CASE NO. 1-926932146
### (*against all Defendants*)

260.     Derma Pen hereby restates the preceding allegations as if set forth fully herein.

261.     The Infringing Content is identical or substantially similar to the Copyrighted Content subject to Application No. 1-926932146.

262.     Defendants had access to the Copyrighted Content subject to Application No. 1-926932146 through Plaintiff's website located at www.dermapen.com.

263.     By reproducing, distributing, and/or publicly displaying the Infringing Content without Derma Pen's permission or other authorization, Defendants have infringed and will continue to infringe Derma Pen's copyright interest in and relating to the Copyrighted Content subject to Application No. 1-926932146.

264.     Defendants' acts are and were knowing, willful, and/or made with reckless disregard for the copyright interest of Derma Pen, thus entitling Derma Pen to all available remedies pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, including but not limited to temporary, preliminary, and permanent injunctions; destruction of any copies of the Infringing Content; Derma Pen's damages; Defendants' profits; willful/treble damages; statutory damages; attorneys' fees and expenses; costs; pre-judgment interest; post-judgment interest; and other equitable relief.

## COUNT XIV

### COPYRIGHT INFRINGEMENT OF COPYRIGHT APPLICATION
### Case NO. 1-926832793
### (*against all Defendants*)

265.    Derma Pen hereby restates the preceding allegations as if set forth fully herein.

266.    The Infringing Content is identical or substantially similar to the Copyrighted Content subject to Application No. 1-926832793.

267.    Defendants had access to the Copyrighted Content subject to Application No. 1-926832793through Plaintiff's website located at www.dermapen.com.

268.    By reproducing, distributing, and/or publicly displaying the Infringing Content without Derma Pen's permission or other authorization, Defendants have infringed and will continue to infringe Derma Pen's copyright interest in and relating to the Copyrighted Content subject to Application No. 1-926832793.

269.    Defendants' acts are and were knowing, willful, and/or made with reckless disregard for the copyright interest of Derma Pen, thus entitling Derma Pen to all available remedies pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, including but not limited to temporary, preliminary, and permanent injunctions; destruction of any copies of the Infringing Content; Derma Pen's damages; Defendants' profits; willful/treble damages; statutory damages; attorneys' fees and expenses; costs; pre-judgment interest; post-judgment interest; and other equitable relief.

## COUNT XV

### COPYRIGHT INFRINGEMENT OF COPYRIGHT APPLICATION
### CASE NO. 1-926477711
### (*against all Defendants*)

270.        Derma Pen hereby restates the preceding allegations as if set forth fully herein.

271.        The Infringing Content is identical or substantially similar to the Copyrighted Content subject to Application No. 1-926477711.

272.        Defendants had access to the Copyrighted Content subject to Application No. 1-926477711 through Plaintiff's website located at www.dermapen.com.

273.        By reproducing, distributing, and/or publicly displaying the Infringing Content without Derma Pen's permission or other authorization, Defendants have infringed and will continue to infringe Derma Pen's copyright interest in and relating to the Copyrighted Content subject to Application No. 1-926477711.

274.        Defendants' acts are and were knowing, willful, and/or made with reckless disregard for the copyright interest of Derma Pen, thus entitling Derma Pen to all available remedies pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, including but not limited to temporary, preliminary, and permanent injunctions; destruction of any copies of the Infringing Content; Derma Pen's damages; Defendants' profits; willful/treble damages; statutory damages; attorneys' fees and expenses; costs; pre-judgment interest; post-judgment interest; and other equitable relief.

## COUNT XVI

**COPYRIGHT INFRINGEMENT OF COPYRIGHT
REGISTRATION NO. PA 1-844-151
(*against all Defendants*)**

275.     Derma Pen hereby restates the preceding allegations as if set forth fully herein.

276.     The Infringing Content is identical or substantially similar to the Copyrighted Content subject to Registration No. PA 1-844-151.

277.     Defendants had access to the Copyrighted Content subject to Registration No. PA 1-844-151 through Plaintiff's website located at www.dermapen.com.

278.     By reproducing, distributing, and/or publicly displaying the Infringing Content without Derma Pen's permission or other authorization, Defendants have infringed and will continue to infringe Derma Pen's copyright interest in and relating to the Copyrighted Content subject to Registration No. PA 1-844-151.

279.     Defendants' acts are and were knowing, willful, and/or made with reckless disregard for the copyright interest of Derma Pen, thus entitling Derma Pen to all available remedies pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, including but not limited to temporary, preliminary, and permanent injunctions; destruction of any copies of the Infringing Content; Derma Pen's damages; Defendants' profits; willful/treble damages; statutory damages; attorneys' fees and expenses; costs; pre-judgment interest; post-judgment interest; and other equitable relief.

## COUNT XVII

### FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)
### (*against all Defendants*)

280.     Derma Pen hereby restates the preceding allegations as if fully set forth herein.

281.     Defendants have intentionally made literally false and/or misleading statements of fact in commercial advertising in interstate commerce through their website located at www.dermapenworld.com.

282.     Specifically, and as evidenced by screenshots contained in **Exhibits 7-9** and **22** hereto, Defendants have placed a notice with the phrase "© DermapenWorld 2013.  All Rights Reserved." on the bottom of each page of their website located at www.dermapenworld.com, including pages displaying the Infringing Content.

283.     Upon information and belief, Defendants have caused products and/or services to enter interstate commerce through their interactive website designated with the copyright notice "© DermapenWorld 2013.  All Rights Reserved."

284.     The DermapenWorld Website bearing the copyright notice "© DermapenWorld 2013.  All Rights Reserved" affects interstate commerce because it is available on the internet to citizens of every state, and represents that DermapenWorld maintains an office in New York.

285.     Defendants' use of the copyright notice "© DermapenWorld 2013.  All Rights Reserved" on their interactive website constitutes commercial advertising or promotion of Defendants' goods and services.

286.    Defendants' acts are in violation of 15 U.S.C. § 1125(a) in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities, including, but not limited to, that DermapenWorld and/or Defendants are the author and/or owner of the copyrights embodied in the Infringing Content.

287.    The "© DermapenWorld 2013.  All Rights Reserved." phrase is literally false and/or misleading because Defendants do not own the copyrights in the Infringing Content that would entitle them to use the © designation.

288.    Upon information and belief, Defendants' literally false and/or misleading commercial advertising statements, if they have not actually deceived consumers, have the tendency to deceive a substantial segment of their audience.

289.    Defendants' literally false and/or misleading commercial advertising statements are material in that the statements are likely to influence existing and potential consumers of their products and services.

290.    Derma Pen has been or is likely to be injured as a result of the false statements either by direct diversion of sales or by a loss of goodwill associated with its services and/or products.

291.    Defendants' acts constitute false advertising in violation of the 15 U.S.C. § 1125(a).

292.     Defendants' acts have caused Derma Pen damages, and Derma Pen seeks judgment pursuant to 15 U.S.C. § 1117 for statutory damages, Defendants' profits made by Defendants' unauthorized and infringing use of Derma Pen's Copyrighted Content, for the damages sustained by Derma Pen, for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

293.     Derma Pen seeks an award of treble damages for at least three times the amount of Defendants' profits or Derma Pen's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

294.     Pursuant to 15 U.S.C. § 1116, Derma Pen is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

295.     Pursuant to 15 U.S.C. § 1118, Derma Pen is entitled to impoundment and destruction of articles bearing the literally false statements.

## COUNT XVIII

### VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICE ACT, UTAH CODE ANN. § 13-11-1 *et seq.* (*against all Defendants*)

296.     Derma Pen hereby restates the preceding allegations as if fully set forth herein.

297.     Defendants' willful and knowing acts, including their use of the copyright notice "© DermapenWorld 2013.  All Rights Reserved." on the DermapenWorld Website containing the Infringing Content, constitute unfair, deceptive, and/or unconscionable acts or practices in violation of Sections 13-11-4(2)(a) and (i) of the Utah Code.

298.     Defendants' acts are in violation of Utah Code Ann. § 13-11-1 *et seq.* in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities, including, but not limited to, that DermapenWorld and/or Defendants are the author and/or owner of the copyrights embodied in the Infringing Content.

299.     Defendants' willful and knowing acts, including their use of the copyright notice "© DermapenWorld 2013.  All Rights Reserved." on the DermapenWorld Website containing the Infringing Content, were known by Defendants to be deceptive and misleading, or through the exercise of reasonable care or investigation could or might have been ascertained to be deceptive and misleading.

300.     Defendants' acts were conducted with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property or services, or to induce the public to enter into obligations relating to such property or services.

301.     Derma Pen has suffered injury as a result of Defendants' unfair, deceptive, and misleading acts.

302.     Derma Pen is entitled to injunctive relief and all other available statutory remedies, including an award of Derma Pen's actual damages or $2,000, whichever is greater, sustained under Section 13-11-19, and reasonable attorney fees and costs.

303.     Further, Derma Pen is entitled to injunctive relief against Defendants to stop the illegal conduct.

## COUNT XIX

### FALSE ADVERTISING IN VIOLATION OF THE UTAH TRUTH IN ADVERTISING ACT, UTAH CODE ANN. § 13-11a-1 *et seq.*
### (*against all Defendants*)

304.     Derma Pen hereby restates the preceding allegations as if fully set forth herein.

305.     Defendants' willful and knowing acts, including their use of the copyright notice "© DermapenWorld 2013.  All Rights Reserved." on the DermapenWorld Website containing the Infringing Content, constitute deceptive, misleading, and false advertising practices in violation of Sections 13-11a-3(a)-(c), (e), and (t) of the Utah Code.

306.     Defendants have intentionally made literally false and/or misleading statements of fact in commercial advertising in interstate commerce through their website located at www.dermapenworld.com.

307.     Specifically, and as evidenced by screenshots contained in **Exhibits 7-9** and **22** hereto, Defendants have placed a notice with the phrase "© DermapenWorld 2013.  All Rights Reserved." on the bottom of each page of their website located at www.dermapenworld.com.

308.     Upon information and belief, Defendants have caused products and/or services to enter interstate commerce through their interactive website designated with the copyright notice "© DermapenWorld 2013.  All Rights Reserved."

309.    Upon information and belief, Defendants have caused products and/or services to enter interstate commerce through their interactive website designated with the copyright notice "© DermapenWorld 2013.  All Rights Reserved."

310.    The Dermapen World Website bearing the copyright notice "© DermapenWorld 2013.  All Rights Reserved" affects interstate commerce because it is available on the internet to citizens of every state, and represents that DermapenWorld maintains an office in New York.

311.    Defendants' use of the copyright notice "© DermapenWorld 2013.  All Rights Reserved" on their interactive website constitutes commercial advertising or promotion of Defendants' goods and services.

312.    The "© DermapenWorld 2013.  All Rights Reserved." phrase is literally false and/or misleading because Defendants do not own the copyrights in the Infringing Content that would entitle them to use the © designation.

313.    Defendants' acts are in violation of Utah Code Ann. § 13-11a-1 *et seq.* in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services, including, but not limited to, that DermapenWorld and/or Defendants are the author and/or owner of the copyrights embodied in the Infringing Content.

314.    Defendants' acts are in violation of Utah Code Ann. § 13-11a-1 *et seq.* in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion,

and to cause mistake, and to deceive as to the nature, characteristics, qualities, or geographic origin of Defendants' goods, services, or commercial activities, including, but not limited to, that DermapenWorld and/or Defendants are the author and/or owner of the copyrights embodied in the Infringing Content.

315.    Upon information and belief, Defendants' literally false and/or misleading commercial advertising statements, if they have not actually deceived consumers, have the tendency to deceive a substantial segment of their audience.

316.    Defendants' literally false and/or misleading commercial advertising statements are material in that the statements are likely to influence existing and potential consumers of their products and services.

317.    Derma Pen has been or is likely to be injured as a result of the false statements either by direct diversion of sales or by a loss of goodwill associated with its services and/or products.

318.    Derma Pen is entitled to all available statutory remedies, including an award of Derma Pen's actual damages or $2,000, whichever is greater, sustained under Section 13-11a-4, and reasonable attorney fees and costs.

## COUNT XX

### UNFAIR COMPETITION IN VIOLATION OF UTAH COMMON LAW
### (*against all Defendants*)

319.    Derma Pen hereby restates the preceding allegations as if fully set forth herein.

320.    Through Defendants' use of the copyright notice "© DermapenWorld 2013.  All Rights Reserved" on their interactive website containing the Infringing Content and in

commerce, Defendants have committed passing off, palming off, imitating, and/or practices that are causing or are likely to cause confusion or deception.

321.     Defendants are liable to Derma Pen for unfair competition under Utah law, because Defendants' conduct is tortious and has deprived Derma Pen of customers and other prospects.

322.     Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services, including, but not limited to, that DermapenWorld and/or Defendants are the author and/or owner of the copyrights embodied in the Infringing Content.

323.     Defendants' acts as alleged herein constitute unfair, deceptive, or misleading acts and false advertising in violation of Utah law.

324.     Defendants' acts constituting unfair competition have caused Derma Pen damages as hereinafter alleged.

325.     Defendants' acts of unfair competition have caused Derma Pen damages, and Derma Pen seeks judgment for Defendants' profits made by Defendants' unfair competition and/or passing off of Derma Pen's Copyrighted Content, for the damages sustained by Derma Pen, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

326.     Derma Pen further seeks judgment for punitive damages of at least three times the amount of Defendants' profits or Derma Pen's damages, whichever is greater, due to the nature of Defendants' conduct.

327.     Further, Derma Pen is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

**COUNT XXI**

**DECLARATORY JUDGMENT**
**(*against 4EverYoung*)**

328.     Derma Pen hereby restates the preceding allegations as if fully set forth herein.

329.     Defendant 4EverYoung asserts that it is entitled to a right of first refusal and obligation by Derma Pen to sell and/or assign its right to the DERMAPEN® Mark to 4EverYoung under the Agreement.

330.     Derma Pen disputes that any such right and/or obligations exists upon termination of the Agreement.

331.     Derma Pen seeks a declaratory judgment by the Court that 4EverYoung is not entitled to a right of first refusal and Derma Pen has no obligation to sell and/or assign its right to the DERMAPEN® Mark to 4EverYoung upon termination of the Agreement.

**VI.     ENTITLEMENT TO INJUNCTIVE RELIEF**

332.     Derma Pen hereby restates the allegations contained in the preceding paragraphs as if set forth fully herein.

333.     By reason of Defendants' acts alleged herein, Derma Pen has and will suffer immeasurable, and thus irreparable, damage to its business, reputation, and goodwill.

334.     Upon information and belief, Defendants intend to continue to do the acts complained of herein unless restrained and enjoined.

335.     Derma Pen's remedy at law is inadequate.

336.     Derma Pen is entitled to a preliminary and permanent injunction prohibiting Defendants, and their affiliates, agents, servants, and employees, and anyone acting with their authority or on their behalf, from directly or indirectly using any mark, word, name, or domain name similar to the DERMAPEN Marks, which is likely to cause confusion or mistake or to deceive.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Derma Pen requests the following relief:

A.     That judgment enter in favor of Derma Pen against Defendants as to each of the above Counts;

B.     That Derma Pen be awarded all relief to which they are entitled under 15 U.S.C. § 1051 *et seq.*, 17 U.S.C. § 101 *et seq.*, and Utah statutory and common law;

C.     That Defendants, their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, be forthwith preliminarily enjoined and restrained from using the DERMAPEN Marks and/or any variants thereof or similar wording in connection with advertising, promoting, selling, offering for sale or importing any good or service that does not emanate from or originate with Derma Pen including, but not limited, an order barring importation of Defendants' products bearing the DERMAPEN Marks, and thereafter permanently enjoined and restrained from using the

DERMAPEN Marks and/or any variants thereof or similar wording in connection with advertising, promoting, selling, offering for sale or importing any good or service that does not emanate from or originate with Derma Pen including, but not limited, an order barring importation of Defendants' products bearing the DERMAPEN Marks;

D.     That Defendants be directed to file with this Court and serve on Derma Pen within thirty (30) days after the service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

E.     That Defendants and their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, be directed to deliver up and destroy all packaging, containers, devices, products, literature, advertising and any other material bearing the DERMAPEN Marks and/or any variants thereof or similar wording;

F.     That Derma Pen be awarded Defendants' profits after an accounting and Derma Pen's damages, including but not limited to, lost sales and monetary damages incurred as a result of actions Defendants or third parties that Defendants have caused, encouraged, enabled, assisted, and/or facilitated the advertisement, promotion, sale, offer for sale, manufacture, distribution, and/or importation of products bearing the DERMAPEN Marks, and that such award be trebled as provided under 15 U.S.C. § 1117 and Utah statutory and common law;

G.     Alternatively, and upon Derma Pen's election, that, in lieu of actual damages and profits, judgment be entered for Derma Pen and against Defendants for statutory damages based upon Defendants' acts of infringement, pursuant to the Lanham Act, 15 U.S.C. § 1117 *et seq.*;

H.     That Derma Pen be awarded all relief to which they are entitled under 15 U.S.C. § 1051 *et seq.*, 17 U.S.C. § 101 *et seq.*, and Utah statutory and common law;

I.      That Defendants, their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, be forthwith preliminarily enjoined and restrained from reproducing, distributing, and/or displaying the Infringing Content, during the pendency of this civil action, and thereafter permanently enjoined and restrained from (1) reproducing, distributing, and/or displaying the Infringing Content; and (2) publishing the copyright notice "© DermapenWorld 2013.  All Rights Reserved" on their website located at www.dermapenworld.com for the Infringing Content;

J.      That Defendants be directed to file with this Court and serve on Derma Pen within thirty (30) days after the service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

K.     That the Court order impoundment of all copies, phonorecords, plates, molds, matrices, masters, tapes, film negatives, or other articles that infringe the copyrights in the Copyrighted Content pursuant to 17 U.S.C. § 503;

L.      That Defendants and their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, be directed to deliver up and destroy all packaging, containers, devices, products, literature, advertising and any other material infringing the copyrights in the Copyrighted Content, as well as all other infringing materials;

M.      That Derma Pen be awarded (1) its actual damages incurred as a result of Defendant's acts of copyright infringement, and all profits Defendants realized as a result of their acts of copyright infringement, in amounts to be determined at trial; or (2) in the alternative, and upon Derma Pen's election, award to Derma Pen, pursuant to 17 U.S.C. § 504, statutory damages;

N.      That Derma Pen be awarded (1) Defendants' profits after an accounting and Plaintiff's damages, including but not limited to, lost sales and monetary damages incurred as a result of actions Defendants or third parties that Defendants have caused, encouraged, enabled, assisted, and/or facilitated the advertisement, promotion, sale, offer for sale, manufacture, distribution, and/or importation of products bearing the false copyright notice "© DermapenWorld 2013.  All Rights Reserved," and that such award be trebled as provided under 15 U.S.C. § 1117 and Utah statutory and common law; or, (2) in the alternative, and upon Derma Pen's election, that, in lieu of actual damages and profits, judgment be entered for Derma Pen and against Defendants for statutory damages based upon Defendants' acts of infringement, pursuant to the Lanham Act, 15 U.S.C. § 1117 *et seq.*;

O.      That Defendants' acts be deemed exceptional under 15 U.S.C. § 1117;

P.      That Derma Pen be awarded a judgment against Defendants for monetary damages based on Defendants' profits, Derma Pen's damages, statutory damages, treble damages, punitive damages, reasonable attorney fees, litigation expenses, costs, pre-judgment interest, post-judgment interest, and other equitable relief;

Q.      That the Court enter a declaratory judgment in favor of Derma Pen that 4EverYoung is not entitled to a right of first refusal and Derma Pen has no obligation to sell and/or assign its right to the DERMAPEN® Mark to 4EverYoung upon termination of the Agreement; and

R.      That Derma Pen be awarded such other and further relief as this Court deems just and proper.

## JURY DEMAND

Derma Pen requests a trial by jury for all issues so triable.


Dated:  August 1, 2013

                                        STOEL RIVES LLP


                                        /s/ *Marc T. Rasich*
                                        Marc T. Rasich

# Index Of Exhibits To Complaint

| 1. | U.S. Registration No. 4,096,295 for DERMAPEN trademark |
|---|---|
| 2. | Screenshot of webpage from www.dermapen.com submitted as deposit copy for Copyright Application Case No. 1-926932146 |
| 3. | Screenshot of webpage from www.dermapen.com submitted as deposit copy for Copyright Application Case No. 1-926832793 |
| 4. | Screenshot of webpage from www.dermapen.com submitted as deposit copy for Copyright Application Case No. 1-926477711 |
| 5. | Copyright Registration No. PA 1-844-151 |
| 6. | WHOIS information for domain name located at the www.dermapenworld.com |
| 7. | Select webpages of the website located at www.dermapenworld.com |
| 8. | Terms and Conditions webpage from the website located at www.dermapenworld.com |
| 9. | Contact webpage from the website located at www.dermapenworld.com |
| 10. | WHOIS information for domain name located at the www.derma-pen.com |
| 11. | Select webpages of the website located at www.derma-pen.com |
| 12. | Terms and Conditions webpage from the website located at www.derma-pen.com |
| 13. | Contact webpage from the website located at www.derma-pen.com |
| 14. | WHOIS information for domain name located at the www.equipmed.com |
| 15. | Select webpages of the website located at www.equipmed.com |
| 16. | Terms and Conditions webpage from the website located at www.equipmed.com |
| 17. | Contact webpage from the website located at www.equipmed.com |
| 18. | WHOIS information for domain name located at the www.beautepacifique.com.au |
| 19. | Select webpages of the website located at www.beautepacifique.com.au |
| 20. | U.S. Food and Drug Administration Establishment Registration and Device Listing webpage |
| 21. | Select webpage from website located at www.derma-pen.com |
| 22. | Select webpages of the website located at www.dermapenworld.com containing Defendants' infringing content |
| 23. | Chart comparing Plaintiff's copyrighted content and Defendants' infringing content |