James E. Magleby (7247)
  magleby@mgpclaw.com
Christine T. Greenwood (8187)
  greenwood@mgpclaw.com
Christopher M. Von Maack (10468)
  vonmaack@mgpclaw.com
**MAGLEBY & GREENWOOD, P.C.**
170 South Main Street, Suite 850
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Defendants, Counterclaim Plaintiffs, and Third-Party Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **DERMA PEN, LLC,**<br><br>　　Plaintiff,<br><br>v.<br><br>**4EVERYOUNG LTD., DERMAPENWORLD, BIOSOFT (AUST) PTY LTD d/b/a DERMAPENWORLD, EQUIPMED INTERNATIONAL PTY. LTD. d/b/a DERMAPENWORLD, and STENE MARSHALL d/b/a DERMAPENWORLD,**<br><br>　　Defendants. | **ORDER GRANTING 4EVERYOUNG'S MOTION FOR TEMPORARY RESTRAINING ORDER AGAINST MICHAEL E. ANDERER** |
| **4EVERYOUNG LTD. and EQUIPMED INTERNATIONAL PTY. LTD.,**<br><br>　　Counterclaim Plaintiffs,<br><br>v.<br><br>**DERMA PEN, LLC,**<br><br>　　Counterclaim Defendant. | Case No.:  2:13-CV-00729-DN-EJF<br><br>District Judge David Nuffer<br><br>Magistrate Judge Evelyn J. Furse |

| | |
|---|---|
| **4EVERYOUNG LTD.,**<br><br>     **Third-Party Plaintiff,**<br><br>**v.**<br><br>**MICHAEL E. ANDERER, JEREMY JONES, MICHAEL J. MORGAN, CHAD MILTON, MEDMETICS, LLC, a Delaware limited liability company, and JOHN DOES 1-25,**<br><br>     **Third-Party Defendants.** | |

Based upon 4EverYoung's Motion[1] for Temporary Restraining Order and Preliminary Injunction Against Michael E. Anderer, the prior orders, pleadings and papers on file, and for good cause shown, the Court hereby FINDS and ORDERS as follows:

1. 4EverYoung and Derma Pen are parties to the Sales Distribution Agreement.[2]

2. Section 11.1 of the Distribution Agreement provides:[3]

---

[1] Docket no. 504, filed January 21, 2015.

[2] *See* Sales Distribution Agreement, Docket No. 25.

[3] *Id.* § 11, Docket No. 25.

> **11.0 Term and Termination**
>
> **11.1 Term.**
>
> The term of this Agreement shall be a two (2) year contract from the Effective Date of this Agreement. It will renew automatically in one (1) year intervals, except when notice of termination is provided by either party before 60 days of the next renewal date.

3. On May 30, 2013, Derma Pen sent notice that it was terminating the Distribution Agreement pursuant to Section 11.1.[4]

4. "The Distribution Agreement has been terminated. Derma Pen terminated it."[5]

5. Part of 4EverYoung's claim for breach of contract seeks specific performance and damages under Sections 12.2 and 14.6 of the Distribution Agreement, which "provide 4EverYoung with certain rights to purchase the Derma Pen US trademark and the dermapen.com domain name after the Distribution Agreement terminated."[6]

6. Specific performance of this obligation was ordered on January 6, 2015, written in an order filed January 12, 2015.[7]

7. "Derma Pen has consistently resisted 4EverYoung's exercise of its rights under Sections 12.2 and 14.6 of the Distribution Agreement."[8]

---

[4] *See* 5-30-13 Letter J. Jones to S. Marshall, Trial Ex. 16.

[5] Temporary Restraining Order at 4, Docket No. 451.

[6] *Id.* at 4, Docket No. 451.

[7] Docket No. 476, filed January 12, 2014.

8. Anderer is a member and owner of approximately 26% of Derma Pen, and, up until approximately August 1, 2014, he was the chairman of the Derma Pen's board.[9]

9. Anderer was heavily involved in the negotiations regarding the Sales Distribution Agreement, and he was well aware of the post-termination transfer obligations in that agreement.[10]

10. Anderer made that clear that he was an architect – if not the architect – of Derma Pen's strategy for exiting the Distribution Agreement and retaining the Trademark in a September 9, 2012 email, in which he outlined the manner in which he thought the facts should be characterized and in which another former member of Derma Pen, Erik Felsted, stated that "over Mike A.'s dead body is he going to just allow Stene to take control of those assets," *i.e.*, the Trademark and Domain Name.[11]

11. Anderer has attended numerous depositions in this case, including the October 22, 2013 Rule 30(b)(6) deposition of Derma Pen at which Chad Milton testified

---

(...continued)
[8] *Id.* at 5, Docket No. 451.

[9] *See* Transcript of 10-9-14 Deposition of Michael Anderer ("Anderer Depo.") at 25-26 (discussing Anderer's ownership interest in Derma Pen), 43 (stating that Anderer was chairman until his resignation just prior to Derma Pen's bankruptcy filing), Docket No. 489-1.

[10] *See, e.g.,* 7-18-11 Email C. Milton to M. Morgan and M. Anderer, Trial Ex. 48 ("I GUESS THE ONLY QUESTION WE NEED TO ASK OURSELVES IS IF THE TRADEMARK CLAUSE IS A DEAL KILLER").

[11] *See* 9-9-12 Email Chain between M. Anderer, E. Felsted, M. Morgan, J. Jones, and C. Milton, Trial Ex. 630.

as the company representative[12] and the June 5, 2014 deposition of Stene Marshall. In the bankruptcy case, Anderer's own deposition was taken in Florida, and he attended the depositions of two former employees of Derma Pen, LLC.

12. On August 8, 2011, just one business day prior to the jury trial scheduled on the bifurcated contract claims in this case, Derma Pen filed a Chapter 11 bankruptcy in Delaware.[13]

13. Each of the members of Derma Pen, including Anderer, executed a resolution authorizing the filing of the bankruptcy.[14]

14. Derma Pen's bankruptcy was dismissed on Friday, December 19, 2014, after the bankruptcy court determined that the bankruptcy was filed "as a litigation tactic, rather than as a good faith attempt to reorganize or preserve value for creditors."[15]

15. "The bankruptcy dismissal declares that the bankruptcy filing was a bad faith attempt to prevent adjudication in this case."[16]

---

[12] At the conclusion of Milton's deposition, Anderer informed Mr. Marshall, in the presence of counsel, that he would follow Marshall all over the world and would sue him anywhere and everywhere.

[13] *See In Re Derma Pen, LLC*, Bankr., Case No. 14-11894 (KJC); *see also* Notice of Filing of Bankruptcy and Automatic Stay Under 11 U.S.C. § 362, Docket No. 422, filed August 8, 2014.

[14] *See* Voluntary Petition and attached Consent Resolution of the Members of Derma Pen, LLC, *In Re Derma Pen, LLC*, Bankr., Case No. 14-11894 (KJC), Bankr. Docket No. 1.

[15] *See* Memorandum (*In Re Derma Pen, LLC*, Bankr., Case No. 14-11894 (KJC)), Docket No. 448, filed December 19, 2014; *see also* Notice of Dismissal of Bankruptcy Case and Request for Pretrial Conference, Docket No. 448, filed December 19, 2014.

16. On Monday, December 22, 2014, Derma Pen executed a Confession of Judgment in favor of Anderer, which referenced certain debts allegedly owed by Derma Pen to Anderer.[17]

17. Each of Jones, Morgan, and Milton executed a written consent by which they approved the Confession of Judgment.[18]

18. On the same day, Anderer filed or caused to be filed the Confession of Judgment through an action styled *Michael E. Anderer v. Derma Pen,* LLC, in the Third Judicial District Court, State of Utah (the "Confession of Judgment Action").[19]

19. Also on December 22, 2014, Derma Pen executed the Trademark Assignment in favor of Anderer.[20]

20. On that same day, Anderer (or Derma Pen, on Anderer's behalf) filed the assignment with the United States Patent and Trademark Office (the "PTO").[21]

---

(...continued)
[16] Temporary Restraining Order at 5, Docket No. 451; *see also* Preliminary Injunction Order at 12, Docket No. 476.

[17] *See* Confession of Judgment, Docket No. 460-1.

[18] *See* Written Consent of the Members of Derma Pen, LLC in Lieu of a Special Meeting (attached to Confession of Judgment), Docket No. 489-2.

[19] *See* copy of docket for the Confession of Judgment Action, Case No. 140908635, Docket No. 496 at 7.

[20] *See* Trademark Assignment, Docket No. 460-2.

[21] *See* Assignment Confirmation Receipt, Docket No. 496 at 8.  Although the document does not indicate who filed the Trademark Assignment with the PTO, the receipt indicates it was sent to Jeremy Jones, Derma Pen's current CEO.  If the Trademark Assignment was filed by Derma Pen, that filing is further evidence that Derma Pen and Anderer were proceeding in active concert with each other.

21.     The Trademark Assignment and Confession of Judgment were disclosed by Derma Pen on December 23, 2014.[22]

22.     On December 23, 2014, the Court entered the Temporary Restraining Order enjoining transfer of the Trademark and Domain Name against "Derma Pen, its officers, agents, servants, employees, and attorneys, and those acting in concert[] with them."[23]  The written Temporary Restraining Order recited that the "bankruptcy dismissal declares that the bankruptcy filing was a bad faith attempt to prevent adjudication in this case" and that the "Confession of Judgment is also an attempt to evade this adjudication process by placing the trademark beyond the reach of the court."[24]

23.     The Temporary Restraining Order (and Preliminary Injunction) is supported by a $10,000 bond filed on the first day the Court was open following entry of the Temporary Restraining Order.[25]

24.     Following a hearing on January 6, 2015, the Court with consent of Derma Pen, issued a ruling continuing the Temporary Restraining Order as a Preliminary injunction, and it issued the written Preliminary Injunction Order on January 12, 2015.[26]

---

[22] Docket no. 450.

[23] *See* Temporary Restraining Order at 6, Docket No. 451.

[24] *See id.* at 5, Docket No. 451.

[25] Docket No. 462; Docket No. 463.

[26] Preliminary Injunction Order, Docket No. 476.

25. In the Preliminary Injunction Order, the Court explained that the TRO Order included language similar to Rule 65(d)(2)(C), "reciting that the temporary restraining order binds 'persons who are in active concert or participation with' Derma Pen, which includes Anderer."[27]

26. Despite the Temporary Restraining Order and the Preliminary Injunction Order, on January 9, 2015, Anderer (through counsel) issued a notice of public sale of Derma Pen and its assets, including the Trademark.[28] According to the Notice of Sale, the sale will take place on January 22, 2015, at 8:00 a.m., at the Salt Lake City office of Snell & Wilmer.[29]

27. 4EverYoung is likely to suffer irreparable injury in the absence of preliminary injunctive relief by reason of transfer of the Trademark and Domain Name, and defeat of its contractual rights, and the harm it faces outweighs the harm faced by Anderer from the issuance of an injunction which is measurable by monetary damages. The facts are established by an uncontested record that the sale is set to occur less than 12 hours from now, without any intervening business hours.

28. The public interest favors this restraining order to uphold contractual rights, prevent transfer of assets outside the control of parties subject to orders of the court, and ensure orderly resolution of disputes.

---

[27] *Id.* at 4-5, Docket No. 476.

[28] *See* Notice of Sale, Docket No. 489-1.

[29] *See id.* at 1, 489-1.

29. 4EverYoung is at this stage shown to be likely to prevail on the merits of its claim for fraudulent transfer.

30. Under Utah Code Ann. § 25-6-5(1)(a), a transfer is fraudulent if

(1) the creditor has a claim that arose either before or after the transfer was made or the obligation was incurred; and

(2) the transfer was made with actual intent to hinder, delay, or defraud any creditor of the debtor.

31. The facts recited show the actual intentions of the control group including Anderer to hinder, delay and obstruct 4EverYoung's claims.

32. Under Utah Code Ann. 25-6-6(2), a transfer is fraudulent where:

(1) the creditor has a claim that arose before the transfer was made or the obligation was incurred;

(2) the transfer was made to an insider for an antecedent debt;

(3) the debtor was insolvent at the time;

(4) the insider had reasonable cause to believe that the debtor was insolvent.

33. 4EverYoung's claim arose before Derma Pen transferred the trademark and domain name to Anderer.

34. Anderer is an insider.

35. The antecedent debts are the 2012 and 2014 Notes and Security Agreements.

36. Anderer had reasonable cause to believe that Derma Pen was insolvent.

37. The statements in a paper filed by Derma Pen and by Derma Pen's counsel in court that Derma Pen has a verbal license from Anderer to use the Trademark show the transfer is likely illusory.

38. Derma Pen and Anderer stated in court that the Public Sale will convey title to the Trademark, Domain Name and other property subject of the sale and that there is no effect on that sale by reason of the levy of execution in the Confession of Judgment Action.

39. This Temporary Restraining Order is issued without notice because there are no working hours before the time set for the public sale and for the reasons stated in 4EverYoung's Emergency ExParte Motion for Alternative Service[30] and the Declaration of Christine T. Greenwood in support of that motion.[31]

**IT IS HEREBY ORDERED**

1. Defendants' Motion for Temporary Restraining Order and Preliminary Injunction Against Michael E. Anderer is GRANTED.

2. A temporary restraining order is entered as follows:

    (a) Third-Party Defendant Michael E. Anderer, his agents, servants, employees, and attorneys, and those acting in concert with them (collectively, the "Enjoined Parties") shall not transfer nor sale the trademark and domain name to

---

[30] Docket No. 501.

[31] Docket No. 502.

anyone other than 4EverYoung, including by virtue of the Public Sale scheduled for January 22, 2015, at 8:00 a.m.;

    (b)    This order will remain in effect until otherwise ordered by the Court;

    (c)    Further hearing on this Temporary Restraining Order is set for January 29, 2015 at 9:00 a.m.; and

    (d)    The bond already posted by 4EverYoung shall serve as security for this order until 4:30 p.m. Thursday January 22, 2015 by which time an additional bond in the amount of $10,000 must be posted as security for the issuance of this temporary restraining order. If that security is not timely posted, this order shall dissolve.

Dated January 21, 2015.    Time Issued:  9:16 p.m.

BY THE COURT:

_____
David Nuffer
United States District Judge