IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DERMA PEN, LLC,<br><br>    Plaintiff,<br>v.<br><br>4EVERYOUNG LIMITED d/b/a DERMAPENWORLD, BIOSOFT (AUST) PTY LTD d/b/a DERMAPENWORLD, EQUIPMED INTERNATIONAL PTY LTD d/b/a DERMAPENWORLD, and STENE MARSHALL d/b/a DERMAPENWORLD,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [581] ORAL MOTION FOR SUMMARY RELIEF**<br><br>Case No.:  2:13-CV-00729-DN-EJF<br><br>District Judge David Nuffer<br><br>Magistrate Judge Evelyn J. Furse |
| 4EVERYOUNG LTD. And EQUIPMED INTERNATIONAL PTY. LTD.,<br><br>    Counterclaim Plaintiffs,<br>v.<br><br>DERMA PEN, LLC, MICHAEL E. ANDERER, JEREMY JONES, MICHAEL J. MORGAN, CHAD MILTON, MEDMETICS, LLC, a Delaware limited liability company, and JOHN DOES 1-25,<br><br>    Counterclaim Defendants. | |

At the conclusion of the presentation of 4EverYoung Limited's ("4EverYoung") evidence in the most recent hearing[1] on several motions[2], counsel for Michael Anderer ("Anderer") moved for summary relief against 4EverYoung because 4EverYoung had failed to

---

[1] Minute Order, docket no. 583, filed February 12, 2015.

[2] Emergency Motion for Order to Show Cause Regarding Trademark and Domain Name Transfer Injunctions, docket no. 481, filed January 15, 2015; 4EverYoung's Motion for Temporary Restraining Order and Preliminary Injunction against Michael E. Anderer, docket no. 504, filed January 21, 2015; and Motion to Vacate TRO and Memorandum in Opposition to Motion for Preliminary Injunction Against Michael E. Anderer, docket no. 529, filed January 28, 2015.

present essential elements necessary to its success on the motions.[3] Argument on the limited issues of likelihood of success on 4EverYoung's claims under the Utah Fraudulent Transfer Act ("UFTA") was held Friday, February 13, 2015.[4] Argument on the issues under the Anti-Injunction Act, *Younger* Doctrine and the Motion for Order to Show Cause will be held Tuesday February 17, 2015.[5]

Counsel for Mr. Anderer argued three major points on Friday February 13th which are resolved in this order.

1. 4EverYoung Has Standing ................................................................................................. 2
2. 4EverYoung Did Not Need to Disprove Mr. Anderer's Defenses under Utah Code Ann. §25-6-9 ............................................................................................................................. 7
    Mr. Anderer Bears the Burden to Prove the Defense under Utah Code Ann. § 25-6-9(1) . 8
    Grants of Security Interests are Not Per Se Protected from UFTA Attack ........................ 9
    Anderer Bears the Burden to Prove the Defense Under § 25-6-9(6)(c) ........................... 10
3. The Definition of Asset does not insulate Anderer from the UFTA claims ..................... 10

### 1. 4EVERYOUNG HAS STANDING

Anderer claims that 4EverYoung lacks standing to make a UFTA claim because it is not a creditor. "'Creditor' means a person who has a claim"[6] and "'[c]laim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[7] Because

---

[3] Oral Motion Entered on the Record on February 13, 2015, docket no. 581.

[4] Minute Order, docket no. 584, filed February 13, 2015.

[5] *Id.*

[6] Utah Code Ann. § 25-6-2(4).

[7] *Id.* § 25-6-2(3).

4EverYoung's adjudicated claim[8] is for specific performance, and not solely a claim for payment, Anderer contends 4EverYoung cannot seek a UFTA remedy.

The UFTA "is a codification of the common law that provided a remedy against debtors who sought to conceal their assets from creditors."[9] "Because the Fraudulent Transfer Act is remedial in nature, it should be liberally construed."[10] Although there is no Utah case law clarifying the definition of "right to payment," courts in other jurisdictions have defined the phrase broadly. Alabama's Supreme Court, for example, in *Foy v. Foy*,[11] stated that "[a]nyone is a creditor, under . . . [the AFTA], who has a right by law to demand, either presently or upon future contingency, the fulfillment of any obligation or contract."[12] "The word 'creditors' as used in the [AFTA] . . . does not have a narrow or technical interpretation."[13] Also, the Supreme Court has stated in the Bankruptcy context that "[t]he plain meaning of a right to payment is nothing more nor less than an enforceable obligation. . . ."[14] "Consistent with this definition, other courts have held an equitable remedy will 'give rise to a right of payment' and therefore be deemed a 'claim,' when the payment of monetary damages is an alternative to the equitable remedy."[15]

---

[8] Memorandum Decision and Order Granting 4EverYoung's 241 Motion For Partial Summary Judgment on Specific Performance . . . (Specific Performance Order), docket no. 476, filed January 12, 2015.

[9] *National Loan Investors, L.P. v. Givens*, 952 P.2d 1067, 1069 (Utah 1998).

[10] *Id.*

[11] 447 So.2d 158

[12] *Id.* at 163; *see also Strategic Well-Site Materials and Logistics LLC v. Frac Master Sands LLC*, 2013 WL 1282053, *3 (Because Strategic Well–Site had an existing contract with FMS [for the purchase of silica sand], and thus a contingent claim, at the time the conveyances . . . , Strategic Well–Site is a creditor within the meaning of the AFTA.").

[13] *Id.*

[14] *F.C.C. v. NextWave Personal Communications Inc.,* 537 U.S. 293, 303 (2003). Although the United States Supreme Court was defining the "right to payment" phrase found in the Bankruptcy Code 11 U.S.C.A. § 101, this distinction is immaterial.

[15] *Rederford v. US Airways, Inc.,* 586 F. Supp. 2d 47, 52 (D.R.I. 2008) *aff'd sub nom. Rederford v. U.S. Airways, Inc.*, 589 F.3d 30 (1st Cir. 2009) *citing In Re Matter of Udell*, 18 F.3d 403, 407 (7th Cir.1994) (holding "one example of a 'claim' under the Bankruptcy Code is a right to an equitable remedy that can be satisfied by an 'alternative' right to payment"); *Air Line Pilots Ass'n v. Cont'l Airlines*, 125 F.3d 120, 135-36 (3d Cir.1997)

Utah law on specific performance provides that "where a plaintiff seeks specific performance of a contract and that relief is not available, the trial court may grant monetary damages for breach of contract."[16]

Here, 4EverYoung requests[17] (and has been ordered to receive)[18] specific performance of the parties' post-contractual obligations to purchase the Trademark and Domain Name. Although 4EverYoung has argued these are unique assets, this alone is not dispositive. If the fulfillment of the specific performance order becomes impossible (for example, through state court execution sale or other alienation of those assets), then an alternative claim for damages would go to a jury under the breach of contract cause of action. 4EverYoung's current pleading seeks damages as part of its breach of contract claim,[19] which was the foundation of the specific performance decision.

Anderer, during argument, cited to four cases supporting his view that specific performance is not considered a claim. Because of the dearth of case law in the context of the UFTA, Anderer relies on cases arising in Bankruptcy. In that context, defining a cause of action as a "claim" has the effect of discharging the claim, and ending the rights of the claimant. The pre-disposition of bankruptcy courts to avoid satellite litigation and questions about jurisdiction

---

(analogizing to reinstatement when explaining that the airline pilots' equitable remedy of seniority integration could give rise to a right to payment and thus fall within the Bankruptcy Code's definition of claim); *see also In Re The Ground Round, Inc.*, 482 F.3d 15, 20 (1st Cir.2007) (stating that because a damage claim is an alternative to a request for specific performance the definition of claim in Bankruptcy would arguably include the equitable remedy).

[16] *Richards v. Baum,* 914 P.2d 719, 721 (Utah 1996); *see also Wagner v. Anderson,* 250 P.2d 577, 580 (Utah 1952) (stating that "when decreeing specific performance, a court of equity may award damages also to the plaintiff if the decree of specific performance will not give complete relief").

[17] Third Amended Counterclaim . . . ¶¶ 146-152, docket no. 547, filed February 3, 2015.

[18] Specific Performance Order.

[19] Third Amended Counterclaim . . . ¶151.

over such ancillary litigation[20] favors finding equitable causes of action to not be "claims." A UFTA claim is presented, by contrast, to a court with broader jurisdiction by someone seeking protection, and obliteration of claims is not the primary function of such a court. In the bankruptcy context, courts focus on the *desirability* of an alternative monetary remedy for an equitable claim. If the monetary remedy is not a viable alternative, the claim is not discharged in bankruptcy. In the UFTA context, the analysis must be different. If a secondary alternative damages remedy were not cognizable as a remedy, then a holder of a specific performance claim could never prevent alienation of the asset. The remedial purpose of the UFTA would be defeated.

In *Kennedy v. Medicap Pharmacies, Inc.*,[21] the issue was whether "an injunction for breach of a covenant not to compete is a claim, and therefore, dischargeable in bankruptcy."[22] The debtor asserted it was and that he was free to engage in competitive behavior. In this setting a narrow view of "claim" would protect the party claiming rights under the injunction. The court stated that "[t]he right to equitable relief constitutes a claim only if it is an alternative to a right to payment or if compliance with the equitable order will itself require the payment of money."[23] The court concluded that "compliance with an injunction would not require the expenditure of money. . . . Looking at the substance of the equitable relief sought, it is clear that Medicap was not seeking the payment of money. Medicap's right to equitable relief [a non-compete injunction] does not, therefore, equate to being a claim."[24] *Kennedy* is distinguishable from the present case

---

[20] Ralph Brubaker, *A "Summary" Statutory and Constitutional Theory of Bankruptcy Judges' Core Jurisdiction After Stern v. Marshall*, 86 Am. Bankr. L.J. 121 (Winter 2012).

[21] 267 F.3d 493 (2001).

[22] *Id.* at 497.

[23] *Id.*

[24] *Id.* at 497–498. *But cf. Ohio v. Kovacs,* 469 U.S. 274, 282–83 (1985) (holding that an injunctive order was a "claim" that was dischargeable in bankruptcy).

because 4EverYoung's specific performance claim may be alternatively satisfied with monetary damages, even though that is not 4EverYoung's preference. There was no showing in *Kennedy* that the injunction could not be fulfilled or that fulfillment required payment of money. Here, 4EverYoung's right to specific performance may be factually defeated by external circumstances, making a damages alternative necessary.

In *In re Ben Franklin Hotel Associates*,[25] another case cited by Anderer, the Third Circuit decided "whether an equitable demand for reinstatement of an interest in a partnership constitutes a 'claim' within the meaning of section 101(5)(B) of the Bankruptcy Code."[26] The Third Circuit rejected the debtor's argument that because damages and equitable relief were sought, this alone shows that monetary relief is a viable alternative remedy. The court clarified that "[t]he relevant issue . . . is not the form of relief that appellees most hoped to achieve . . . , but whether damages are an alternative BFG's proposed equitable remedy for the loss of its partnership interest."[27] The Third Circuit noted that the parties had specifically alleged that they did not have an adequate remedy at law because "their losses cannot be properly measured nor adequately compensated for by an award of monetary damages, and because their partnership interests are unique."[28] The Third Circuit held that BFG would not be in a position to calculate its damages with any sufficient degree of certainty, and therefore monetary damages were not an adequate substitute for reinstatement of its partnership interest. The decision of the court protects the holder of the equitable right by finding the equitable remedy to not be a claim.

---

[25] 186 F.3d 301 (3d 1999).

[26] *Id.* at 302.

[27] *Id.*

[28] *Id.*

6

Anderer's remaining two cases are also distinguishable. *Multibank 2009-1 CML-ADC Venture, LLC v. Yoshizawa*[29] held that a party had "not offered any citation to authority" that a claim for reformation of a deed and declaratory judgment was a claim under the Nevada Uniform Fraudulent Transfer Act.[30]

The last case cited by Anderer is *American Monument Foundation, LLC v. Fairbrother.*[31] American Monument Foundation ("AMF") sought to avoid its payment obligations under a Note to Fairbrother by claiming Fairbrother's assignment of the Note to a third party was a fraudulent transfer. The court held that AMF had no right to payment under the Note under which it was obligee and so had no standing under the Nevada Fraudulent Transfer Act. In *American Monument Foundation,* AMF had the obligation to pay on its promissory note. Neither Global nor Fairbrother had an obligation to AMF. Here, Derma Pen has an obligation to 4EverYoung based on the post-termination provisions of the Sales Distribution Agreement.

Anderer's argument also discounts the presence of other claims stated in the 4EverYoung's current pleading and prior pleadings. The hostile and contentious testimony about use of the Trademark, and customer interference on both sides provide some factual basis for these claims, sufficient for the "claim" definition under the UFTA.

2. **4EVERYOUNG DID NOT NEED TO DISPROVE MR. ANDERER'S DEFENSES UNDER UTAH CODE ANN. §25-6-9**

Anderer argues that 4EverYoung's fraudulent transfer claim is defeated by the good faith transfer defenses under Utah Code Ann. § 25-6-9. Anderer states that § 25-6-9(1) is a defense to

---

[29] No. 2:10-CV-00695-LDG, 2011 WL 1100104, D. Nev. Mar. 24, 2011).

[30] *Id.* at *2.

[31] No. 2:05-CV-00019-PMPPAL, 2006 WL 3063473 (D. Nev. Oct. 24, 2006) *aff'd in part sub nom. Am. Monument Found., LLC v. Creeger,* 327 F. App'x 31 (9th Cir. 2009).

4EverYoung's fraudulent transfer claim under § 25-6-5(1) and that §§ 25-6-9(5) and (6) are defenses to 4EverYoung's fraudulent transfer claim under § 25-6-6(2).

**Mr. Anderer Bears the Burden to Prove the Defense under Utah Code Ann. § 25-6-9(1)**

Section 25-6-9(1) states the defense of a good faith purchase for value: "A transfer or obligation is not voidable under Subsection 25-6-5(1)(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Anderer argues 4EverYoung has presented no evidence that Anderer took any of the transfers in bad faith.

However, because this is a defense, the UFTA places the burden of showing fraud upon the creditor Anderer. Once the creditor establishes, through the presence of sufficient badges of fraud, an inference that the debtor "made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor[,]"[32] then the burden shifts to the transferee to come forward with rebuttable evidence that he took in good faith and for a reasonably equivalent value.[33]

Evidence of several badges of fraud has been presented by 4EverYoung. These include that Anderer is an insider;[34] that the debtor Derma Pen has maintained control of the Domain Name and Trademark at all times, even after the Trademark Assignment and Confession of Judgment;[35] that the transfer and obligation were not made known by concurrent filing of UCC-1 financing statements;[36] that there was serious conflict between Derma Pen and 4EverYoung

---

[32] Utah Code Ann. § 25-6-5(1)(a).

[33] *See Territorial Sav. & Loan Ass'n v. Baird*, 781 P.2d 452, 462 n. 18 (Utah Ct. App. 1989); *see e.g., In re M & L Bus. Mach. Co., Inc.*, 84 F.3d 1330, 1338 (10th Cir. 1996) (stating that transferee has the burden of establishing good faith under § 548(c) of the Bankruptcy Code, a section similar to that of the UFTA); *Aptix Corp. v. Quickturn Design Systems Inc.,* 148 Fed.Appx. 925, 930 (9th Cir. 2005) (stating that statute requires the transferee present evidence of transferee's good faith).

[34] Utah Code Ann. §25-6-2(a).

[35] Utah Code Ann. §25-6-2(b).

[36] Utah Code Ann. §25-6-2(c).

before the execution of the 2012 Note and Security Agreement, the 2014 Note and Security Agreement and the Trademark Assignment and Confession of Judgment;[37] that the 2014 Note and Security Agreement and the Trademark Assignment and Confession of Judgment were of substantially all of Derma Pen's assets;[38] that Derma Pen declared itself insolvent by its bankruptcy filing near the time of the 2014 Note and Security Agreement;[39] and that the 2014 Note and Security Agreement was executed shortly before the August 2014 trial and the Trademark Assignment and Confession of Judgment were executed immediately after the bankruptcy dismissal which renewed exposure to this litigation.[40] The burden, therefore, now shifts to Anderer (as the transferee) to provide rebuttable evidence that he took in good faith and for a reasonably equivalent value.

**Grants of Security Interests are Not Per Se Protected from UFTA Attack**

Anderer contends that the transfer is not voidable under Utah Code Ann. § 25-6-6, "if the transfer results from . . . enforcement of a security interest."[41] Anderer is not absolutely insulated from a fraudulent transfer attack simply because he holds a security interest.[42] The circular error in Anderer's argument is similar to that discussed in Part 3 below.

---

[37] Utah Code Ann. §25-6-2(d).

[38] Utah Code Ann. §25-6-2(e).

[39] Utah Code Ann. §25-6-2(i).

[40] Utah Code Ann. §25-6-2(j).

[41] Utah Code Ann. § 25-6-9(5)(b).

[42] See Aptix, 148 Fed.Appx. at 930 ("[W]e affirm the decision of the district court voiding as a fraudulent transfer the security interest Aptix granted to Mohsen."); Matter of Holloway, 955 F.2d 1008, 1008 (5th Cir. 1992) ("Under a correct application of the law, the evidence can only support the conclusion that Allison is an insider; therefore, the transfer of the security interest is voidable as a fraudulent conveyance."); Phillips v. Phillips, No. A13-0699, 2014 WL 902683, at *1 (Minn. Ct. App. Mar. 10, 2014) (unpublished) (reversing and remanding because district court erred by failing to treat the grant of a security interest as a "transfer" under the MUFTA).

**Anderer Bears the Burden to Prove the Defense Under § 25-6-9(6)(c)**

A transfer is not voidable under § 25-6-6(2) "if made pursuant to a good-faith effort to rehabilitate the debtor and the transfer secured present value given for that purpose as well as an antecedent debt of the debtor."[43] This defense

> is new and reflects a policy judgment that an insider who has previously extended credit to a debtor should not be deterred from extending further credit to the debtor in a good faith effort to save the debtor from a forced liquidation in bankruptcy or otherwise. A similar rationale has sustained the taking of security from an insolvent debtor for an advance to enable the debtor to stave off bankruptcy and extricate itself from financial stringency. The amount of the present value given, the size of the antecedent debt secured, and the likelihood of success for the rehabilitative effort are relevant considerations in determining whether the transfer was in good faith.[44]

"A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is in fact substantially contemporaneous."[45] Furthermore, the transferee must show that the transfer was made in a good-faith attempt to rehabilitate the debtor.[46] Anderer, as the transferee claiming the defense, has the burden to show that (1) the transfer he received from the debtor was a security interest; (2) the transfer secured present value; and (3) the transfer was *made in a good-faith effort* to rehabilitate the debtor.

3. **THE DEFINITION OF ASSET DOES NOT INSULATE ANDERER FROM THE UFTA CLAIMS**

Anderer claims that the UFTA definition of asset protects his interest from attack because he holds a valid lien. Transfers subject to scrutiny under the UFTA must be of "an asset or an

---

[43] Utah Code Ann. § 25-6-9(6)(c).

[44] Unif. Fraudulent Transfer Act § 8, Comments (internal citations omitted).

[45] *Id.* § 3(c).

[46] *Prairie Lakes Health Care System, Inc. v. Wookey*, 1998 SD 99, 583 N.W.2d 405 (S.D. 1998) (holding that the "good faith effort to rehabilitate" defense was inapplicable when preferential transfer to son was made to dispose of entire real estate portfolio rather than to rehabilitate the debtor).

10

interest in an asset."[47] "'Asset' means property of a debtor, but does not include . . . property to the extent it is encumbered by a valid lien[.]"[48] Therefore, Anderer claims his liens are immune from UFTA attack. He asserts these liens were validated in the Bankruptcy proceeding[49] and in the State Court action.[50] Neither of those actions included claims by 4EverYoung under the UFTA. The Bankruptcy proceeding was dismissed before those claims could be asserted.

Anderer's technical compliance with the underlying legal requirements for a grant of lien under Article 9 of the Uniform Commercial Code does not insulate him from a fraudulent transfer attack. If Anderer's rationale was true, then any fraudulent transfer receiving a grant of lien would be insulated.

A similar issue was raised in an accelerated, interlocutory appeal in *Telephone Equipment Network, Inc., v. TA/Westchase Place, Ltc.*[51] There, the trial court granted a temporary injunction enjoining Telephone Equipment Network, Inc. ("TEN") "from foreclosing on and disposing of property owned by Telephone Liquidation, Inc., f/k/ a Charles Tharp, Inc. d/b/a Southwest Communications, Inc. ["Southwest"], in which TEN claim[ed] a security interest."[52] TEN argued that it had a valid lien in Southwest's assets, and therefore those assets could not be the subject of an injunction because any property encumbered by a valid lien is excluded from the definition of "asset."[53] The appellate court, rejecting TEN's argument, stated that TEN's argument is flawed as it presumes "that its security interest in Southwest's property will not be found to be voidable

---

[47] Utah Code Ann. § 25-6-2(12).

[48] *Id.* § 25-6-2(2).

[49] Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, and 363 . . . , *In re: Derma Pen, LLC.,* Case No. 14-11894 (KJC) U.S.B.C. Del. October 16, 2014), marked as Exhibit 123.

[50] Confession of Judgment, docket no. 460-1, lodged December 24, 2015.

[51] 80 S.W.3d 601 (Tex. App. 2002).

[52] *Id.* at 603.

[53] *Id.* at 608.

as part of a fraudulent transfer or obligation under UFTA."[54] The court further explained that "[t]he assignment of Sterling Bank's security interest to TEN is an integral part of the alleged fraudulent transfer of assets at issue in this suit. Particularly, the assignment of the security interest in Southwest's property was but the first step in the alleged fraudulent transfer of Southwest's assets to TEN. If Westchase ultimately prevails at trial on the merits of its UFTA claims, TEN's security interest, as part of the fraudulent transfer of assets, will be voidable."[55]

Similarly, 4EverYoung has the right to attempt to show that Anderer's security interests and documents to enforce them may be part of an alleged fraudulent transfer of assets. If 4EverYoung ultimately prevails at trial on the merits of its UFTA, then Anderer's security interest, and therefore his valid liens, would be voidable just as any other transfer under the UFTA.

## CONCLUSION

None of the arguments advanced February 13, 2015, at the end of 4EverYoung's presentation prevent further proceeding. Argument will proceed February 17, 2015 and presentation of evidence will proceed on the days thereafter.

Dated February 16, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[54] *Id.*

[55] *Id.* at 608–609.