IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DERMA PEN, LLC,<br><br>                      Plaintiff,<br>v.<br><br>4EVERYOUNG LIMITED d/b/a DERMAPENWORLD, BIOSOFT (AUST) PTY LTD d/b/a DERMAPENWORLD, EQUIPMED INTERNATIONAL PTY LTD d/b/a DERMAPENWORLD, and STENE MARSHALL d/b/a DERMAPENWORLD,<br><br>                      Defendants. | **MEMORANDUM DECISION AND ORDER REGARDING JURISDICTION**<br><br><br><br><br>Case No.:  2:13-CV-00729-DN-EJF<br><br>District Judge David Nuffer<br><br>Magistrate Judge Evelyn J. Furse |
| 4EVERYOUNG LTD. And EQUIPMED INTERNATIONAL PTY. LTD.,<br><br>    Counterclaim Plaintiffs,<br>v.<br><br>DERMA PEN, LLC, MICHAEL E. ANDERER, JEREMY JONES, MICHAEL J. MORGAN, CHAD MILTON, MEDMETICS, LLC, a Delaware limited liability company, and JOHN DOES 1-25,<br><br>    Counterclaim Defendants. | |

Michael E. Anderer ("Anderer") opposes 4EverYoung Limited's ("4EverYoung")

Motion for Temporary Restraining Order and Preliminary Injunction against Michael E.

Anderer[1] ("Motion for Preliminary Injunction") in part based on the abstention doctrine

---

[1] 4EverYoung's Motion for Temporary Restraining Order and Preliminary Injunction against Michael E. Anderer, docket no. 504, filed January 21, 2015.

enunciated by the United States Supreme Court in *Younger v. Harris*[2], and the Anti-Injunction Act, 28 U.S.C. § 2283.[3] 4EverYoung filed its response[4] on February 14, 2015, and Anderer filed a reply[5] on February 16, 2015. Argument was heard February 17, 2015.[6]

BACKGROUND FACTS ........................................................................................................... 2
ANALYSIS .................................................................................................................................. 5
    This Court Had Constructive Possession of the Property Prior to the State Court
        Action ............................................................................................................... 5
    Anti-Injunction Act ........................................................................................................ 10
    Younger Doctrine .......................................................................................................... 11
    Colorado River Doctrine ............................................................................................... 15
CONCLUSION ......................................................................................................................... 17

**BACKGROUND FACTS**

This case was filed August 1, 2013,[7] and set for bifurcated two-week jury trial on August 11, 2014.[8] Derma Pen LLC ("Derma Pen") filed a Chapter 11 bankruptcy in Delaware on August 8, 2014, one business day before the scheduled jury trial.[9] The bankruptcy court dismissed the case as not filed in good faith on December 19, 2014. Three days later, on December 22, 2014, Anderer requested and Derma Pen executed a Confession of Judgment in favor of Anderer,

---

[2] 401 U.S. 37 (1971).

[3] Anderer's Supplemental Bench Memorandum in Opposition to Motion for Preliminary Injunction on Issue of Futility ("Anderer's Bench Memo"), docket no. 576, filed February 10, 2015.

[4] Response to Bench Memorandum in Opposition to Motion for Preliminary Injunction on Issue of Futility ("4EY's Response"), docket no. 586, filed February 14, 2015.

[5] Anderer's Reply in Support of Supplemental Bench Memorandum in Opposition to Motion for Preliminary Injunction on Issue of Futility ("Anderer's Reply"), docket no. 587, filed February 15, 2015.

[6] Docket no. 591.

[7] Complaint, docket no. 2, filed August 1, 2013.

[8] Memorandum Decision and Order Re: Jury Trial on derma Pen, LLC's 22nd and 24th Causes of Action and Part of Defendants' 1st Counterclaim Cause of Action at 2-3, docket no. 207, filed June 24, 2014.

[9] *See In Re Derma Pen, LLC*, case no. 14-11894 (KJC), 2014 WL 7269762 (Bankr. D. Del. Dec. 19, 2014); *see also* Notice of Filing of Bankruptcy and Automatic Stay Under 11 U.S.C. § 362, docket no. 422, filed August 8, 2014.

which referenced certain debts owed by Derma Pen to Anderer.[10] That same day, Anderer filed an action in the Third District Court, State of Utah ("State Court Action"), against Derma Pen to obtain a judgment and levy against all of Derma Pen's assets that Derma Pen pledged to Anderer as collateral for loans made by Anderer to Derma Pen.[11]

On December 23, 2014, during a telephone conference with the court to discuss the impact of the bankruptcy dismissal, counsel for Derma Pen disclosed the December 22, 2014 Confession of Judgment filed in the Third District Court of the State of Utah. Counsel for 4EverYoung requested "that the Court rule upon the motion for preliminary injunction filed by 4EverYoung, which was Document 141."[12] No objections were made by counsel for Derma Pen.[13] At the conclusion of the telephone conference, the Court entered a Temporary Restraining Order,[14] ordering that "Derma Pen, its officers, agents, servants, employees, and attorneys, and those acting in concert, with them (collectively, the 'Enjoined Parties') shall not transfer the trademark and domain name."[15]

Based on the Confession of Judgment, the State Court, on December 24, 2014, entered Judgment against Derma Pen and in favor of Anderer in the amount of $791,012.18.[16] On January 12, 2015, Anderer filed an Application for Writ of Execution in the State Court, requesting the issuance of a Writ of Execution for the levy and sale of all of Derma Pen's

---

[10] Confession of Judgment, docket no. 460-1, lodged December 24, 2014.

[11] *See Anderer v. Derma Pen, LLC*, case No. 140908635, Third Judicial District Court, Salt Lake County, Utah.

[12] December 23, 2014 Telephonic Conference Transcript at 5:2-3, docket no. 520, filed January 27, 2015.

[13] *Id.* at 23:20-23.

[14] Memorandum Decision and Order Granting in Part Defendants' Motion for Temporary Restraining Order (the "December 23, 2014 TRO") at 2–3, docket no. 451, filed December 23, 2014.

[15] *Id.* at 6, ¶ 2.

[16] Confession of Judgment, docket no. 529-17; Judgment December 24, 2014, docket no. 529-18.

assets.[17] Hearing on continuation of the restraint as a preliminary injunction in this Court was set for January 6, 2015.

In the January 6, 2015 hearing, counsel for Derma Pen stated they had no objection to continuation of restraint and a preliminary injunction was ordered against Derma Pen, its officers, agents, servants, employees, and attorneys, and those acting in concert, with them (collectively, the "Enjoined Parties"), enjoining them from transferring the DermaPen Trademark and Domain Name to anyone other than 4EverYoung. On January 12, 2015, based upon Defendants' Injunction Motion,[18] the January 6, 2015 hearing, and the pleadings and papers on file, a preliminary injunction order was filed by this Court.[19]

On January 13, 2015, the State Court Clerk issued a Writ of Execution in connection with the State Court action.[20] On January 26, 2015, 4EverYoung filed a Reply to Writ and Request for Hearing in the State Court Action ("Reply to Writ").[21] 4EverYoung, in the Reply to Writ, argued, among other things, that the Writ of Execution was wrongfully obtained and requested an evidentiary hearing.[22] Anderer, on February 4, 2015, filed his Response to 4EverYoung's Reply ("Response to Reply to Writ").[23] According to Anderer, the State Court has set a hearing on the Writ of Execution issue for March 4, 2015.[24]

---

[17] Application for Writ of Execution, docket no. 576 at 12.

[18] Defendants' Motion for Temporary Restraining Order and Preliminary Injunction and Supporting Memorandum, docket no. 141, filed May 2, 2014.

[19] Memorandum Decision and Order Granting 4EverYoung's 241 Motion for Partial Summary Judgment on Specific Performance and Granting in Part Defendants' 141 Motion for Preliminary Injunction, docket no. 476, filed January 12, 2015.

[20] Writ of Execution January 13, 2015, docket no. 529-20, filed January 28, 2015.

[21] Reply to Writ, docket no. 576, exhibit 2.

[22] *Id.*

[23] Response to Third Party Claimant 4EverYoung Ltd's Reply to Writ and Request for Hearing, docket no. 576, exhibit 3.

[24] Anderer's Reply at 9, n. 36.

On February 3, 2015, 4EverYoung and Equipmed International Pty. Ltd ("Equipmed") (collectively, "4EverYoung" or "Counterclaim Plaintiffs") filed claims against Anderer in this Court ("Third Amended Counterclaim").[25] 4EverYoung's Third Amended Counterclaim alleges, among other things, that "[b]y virtue of the 2012 Security Interest and 2013 Lien, Derma Pen fraudulently transferred its assets to Anderer, with the actual intent to hinder, delay, or defraud 4EverYoung."[26] And "[i]n 2014, by virtue of the 2014 Security Interest and the 2015 Lien, just prior to Derma Pen's filing of the Bankruptcy Case, and despite Derma Pen's and Anderer's knowledge of 4EverYoung's claims against Derma Pen, Derma Pen again fraudulently transferred its assets or interests in its assets to Anderer with the intent to hinder, delay, or defraud 4EverYoung."[27]

## ANALYSIS

### This Court Had Constructive Possession of the Property Prior to the State Court Action

Anderer argues that the Trademark and Domain Name are within the exclusive *in rem* jurisdiction of the State Court because he (1) filed an Application for Writ of Execution in the State Court; (2) the Writ of Execution was issued by the Third District Court Clerk; and (3) a constable levied execution on the Trademark and Domain Name.[28]

In response, among other things, 4EverYoung argues that "whether or not the state court has issued the writ, the writ does not exten[d] to property of Derma Pen that has long been the

---

[25] Second Amended Counterclaim, Third-Party Complaint, and Demand for Jury Trial, docket no. 492 and docket no. 494, filed January 21, 2015. On January 21, 2015, the Counterclaim Plaintiffs' Emergency Motion for Alternative Service was granted, docket no. 503 (Corrected Order, docket no. 507, filed January 22, 2015), and service on Anderer was effected by serving Anderer's counsel. *See also* Third Amended Counterclaim and Demand for Jury Trial, docket no. 547, filed February 3, 2015; Motion for Leave *Nunc Pro Tunc* to File Third Amended Complaint and Brief Regarding Propriety of Previous Filing of Third Amended Complaint, docket no. 569, filed February 6, 2015; Memorandum Decision and Order Granting [569] *Nunc Pro Tunc* Motion, docket no. 588, filed February 16, 2015.

[26] Third Amended Counterclaim at 46, ¶ 165.

[27] *Id.* at 46–47, ¶ 166.

[28] Anderer's Bench Memo at 5.

subject of litigation in this Court."[29] "Rather, because this action seeks to resolve the issue of the ownership of the Trademark and Domain Name, it is in the nature of an action *quasi in rem*, pursuant to which 'the court . . . has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought.'"[30]

Anderer replies that this court never had *in rem* jurisdiction over the assets at issue, because the "Court never issued a prior levy or attachment against the Assets, and it still has not done so[,]" and "the defendants[31] do not hold, and never have held, any lien or security interest in the Assets."[32] Furthermore, "the Defendants only sought to adjudicate the validity of Anderer's liens when they amended their counterclaim and asserted a third-party complaint. At that time, the Assets were within the jurisdiction of the State Court."[33] Anderer also contends "it is irrelevant that this original action was filed before the State Court case, because the parties and the claims in those actions are completely different."[34] Anderer claims that Defendants are conflating their claims against Derma Pen with their claims against him:

> The action between D[erma]P[en] and 4E[ver]Y[oung] is about interpretation and enforcement of the Distribution Agreement. Anderer is not a party to that contract, and never was a party. That original action makes no mention of liens or security interests against the Assets, does not attempt to adjudicate the validity of any liens, and it does not even mention Anderer's security interests. By contrast, the State Court action is a lien enforcement and collection proceeding brought by Anderer against D[erma]P[en]. For the first time, the Third-Party Complaint attempts to challenge Anderer's liens, but that challenge was brought weeks after the State Court action was filed.[35]

---

[29] 4EY's Response at 2–3.

[30] *Id.* at 3 (quoting *Princess Lida of Thum & Taxis v. Thomas*, 305 U.S. 456, 466 (1939)).

[31] Defendants refers to the Counterclaim Plaintiffs.

[32] Anderer's Reply at 2.

[33] *Id.* at 3.

[34] *Id.*

[35] *Id.*

6

"To avoid unseemly and disastrous conflicts in the administration of the dual judicial system, and to protect the judicial processes of the court first assuming jurisdiction, the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other."[36] In determining whether a court has assumed jurisdiction over the property in question, a court must look to the judgment sought. When the judgment sought is for the "recovery of money or for an injunction compelling or restraining action by the defendant" then "the judgment sought is strictly *in personam.*"[37] In such a case, "both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as res adjudicata in the other."[38] Where, however, the judgment sought requires "that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought," then the proceeding is considered *in rem* or *quasi in rem.*[39] Where "the two suits are in rem or quasi in rem . . . the jurisdiction of one court must of necessity yield to that of the other."[40] Therefore, "when the two suits have substantially the same purpose and the jurisdiction of the courts is concurrent, that one whose jurisdiction and process are first invoked by the filing of the bill [complaint] is treated as in *constructive possession of the property* and as authorized to proceed with the cause."[41] It is of no effect that another court subsequently acquires actual possession.[42]

---

[36] *Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935) (internal citations omitted).

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at 196.

[42] *Id.*

This test is accepted and utilized by courts faced with a conflict of jurisdiction.[43] For example, in *Farmer's Loan & Trust Company v. Lake Street Elevated Railroad Company*,[44] the Supreme Court found that a federal court action to foreclose a mortgage and a state court action brought to enjoin the foreclosure were substantially the same controversy, and held that the filing of the bill and service of process in the federal court action amounted to a constructive possession of the property. Similarly, in *Palmer v. State of Texas*[45] the Supreme Court held that a state court action brought by the state seeking the forfeiture of a corporate charter and a winding up of the company's affairs was substantially similar in purpose to a federal court action brought by a stockholder to liquidate the corporation. In that case, a state court that had appointed receivers but had not taken possession until the case was examined on appeal was held to be in constructive possession of the property and was given priority with regard to the property as against federal receivers who had taken actual possession under a subsequently filed bill.

The present litigation commenced on August 1, 2013; one aspect of relief sought by Derma Pen was declaratory judgment that 4EveryYoung has no right of first refusal to the sale of Derma Pen's Trademark and Domain Name.[46] Predictably, 4EveryYoung counterclaimed on May 2, 2014, seeking specific performance by Derma Pen requiring the offer of sale and the sale

---

[43] *See e.g., Princess Lida*, 305 U.S. at 466 ("[I]f the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other."); *Boynton v. Moffat Tunnel Imp. Dist.*, 57 F.2d 772, 779 (10th Cir. 1932) (McDermott, J.), cert. denied, 287 U.S. 620, (1932) ("The rule that as between two actions quasi in rem the one first filed excludes the later one is subject to an important and wellsettled qualification, to wit, that the two actions shall invoke the same jurisdiction. This qualification is essential to the administration of justice; except for it, a stockholder could apply for a receiver and either indefinitely postpone relief to creditors or bondholders, or could require them to come to the court of the stockholder's selection."); *Straus v. Straus*, 987 F. Supp. 52, 53-55 (D. Mass. 1997) (same).

[44] 177 U.S. 51, 61 (1900).

[45] 212 US 118, 130-31 (1909).

[46] Complaint ¶ Q, docket no. 2, filed August 1, 2013.

of the Trademark and Domain Name to 4EveryYoung.[47] Thus, by May 2, 2014 at the latest, this court could only afford relief on the counterclaim if it had control over the Trademark and Domain Name.  Hence, this court had constructive possession of the Trademark and Domain Name by May 2, 2014. When the State Court Action was commenced months later, on December 22, 2014, one aspect of relief sought by Anderer was the sale of Derma Pen's Trademark and Domain Name to cover unpaid, collateralized debts.  For either court to award relief, it must have possession or control of the property, making both actions either *in rem* or *quasi in rem*. Further, the two suits seek the *sale* of the same Trademark and Domain Name assets. Thus, under *Penn General,* "the two suits have substantially the same purpose" and thus seek to invoke the same jurisdiction.[48]  Because this Court's jurisdiction and processes were invoked first, this Court has constructive possession of the *res* (subject matter) and is authorized to proceed with its case.[49]  Therefore, it is this Court rather than the state court that may exercise jurisdiction over the sale of the Trademark and Domain Name assets and the rights of the parties therein.

    Anderer makes much of the fact that he was not a party to this action until after the state court was filed and that the commencement of the action against him should govern.  As the cases above demonstrate repeatedly, the dispositive moment occurs when the court had

---

[47] Answer to First Amended Complaint, Counterclaim, Third-Party Amended Complaint, and Demand for Jury Trial ¶ C, docket no. 139, filed May 2, 2014.

[48] *See Penn General Casualty Co.*, 294 U.S. at 196.

[49] *See id.*

jurisdiction over the *res*.[50]  The identity of the parties claiming an interest in the *res* has no consequence.[51]  Thus the question turns on the identity of the *res*, not the identity of the parties.

## Anti-Injunction Act

Under the Anti–Injunction Act, this Court may not grant "an injunction to stay the proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[52]  The statute is interpreted broadly and includes injunctions directed at the parties rather than the state court itself.[53]

Courts have interpreted "the 'necessary in aid of' exception to § 2283 . . . as incorporating [an] historical *in rem* exception."[54]  Specifically, the Supreme Court has acknowledged that "where the federal court has obtained jurisdiction over the res, prior to the state-court action" an historical exception to the Anti-Injunction Act exists.[55]

Here, this exception to the Act applies. An injunction against the State Court Action is necessary to aid this court's jurisdiction. As discussed above, this court obtained jurisdiction over the property at issue—specifically, the Trademark and Domain Name—prior to the filing of the State Court Action.  Thus to protect its jurisdiction, the court may enjoin state court action.

---

[50] *See id.*

[51] *See id.* at 191-92 (noting the federal plaintiff was a shareholder, but the state plaintiff was the state attorney general); *Princess Lida,* 305 U.S. at 459 (noting filers in state court were two surviving trustees on behalf of three trustees and the filers in federal court were the beneficiaries of the trust).

[52] 28 U.S.C. § 2283.

[53] *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 287 (1970).

[54] *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 641 (1977); *see also In re Joint Eastern and Southern District Asbestos Litigation,* 134 F.R.D. 32, 37 (E. & S.D.N.Y. 1990) ("Courts have interpreted the 'necessary in aid of jurisdiction' exception liberally 'to prevent a state court from ... interfering with a federal court's flexibility and authority' to decide the case before it.") (quoting *Atlantic Coast Line R.R. Co.,* 398 U.S. at 295).

[55] *Id.*

**Younger Doctrine**

Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction except in certain extraordinary circumstances.[56] "[E]ven in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the exception not the rule."[57] However, under the abstention doctrine that the Supreme Court articulated in *Younger v. Harris*,[58] "federal courts should not 'interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—' when a state forum provides an adequate avenue for relief."[59] *Younger* is grounded in notions of comity—the idea that a state court should not, in certain circumstances, be interfered with.[60] In the present circumstance, both this action and the State Court Action require disposition of the *res*, which makes the claims *in rem* or *quasi in rem* as discussed above. "*In rem* proceedings are exceptions to the abstention doctrine."[61] Therefore, "[t]he considerations of comity and federalism as outlined in *Younger* . . . do not apply to this proceeding."[62]

Even if it were assumed that *Younger* applied, the first factor of *Younger* has not been met, and therefore, abstention is inappropriate. *Younger* holds that a federal court should abstain when (1) there is an ongoing state judicial proceeding; (2) "the state court must offer an adequate forum to hear the federal plaintiff's claims from the federal lawsuit"; and (3) "the state

---

[56] *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976).

[57] *Sprint Communications v. Jacobs*, ___ U.S.___, 134 S. Ct. 584, 593 (2013) (internal quotation omitted).

[58] 401 U.S. 37 (1971).

[59] *Weitzel v. Div. of Occupational & Prof'l Licensing,* 240 F.3d 871, 875 (10th Cir. 2001) (quoting *Rienhardt v. Kelly,* 164 F.3d 1296, 1302 (10th Cir. 1999)).

[60] *Younger*, 401 U.S. at 44.

[61] *Eggleston v. State of Colorado*, 588 F. Supp. 1352, 1354 (D. Colo. 1984).

[62] *Id.*

proceeding must involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."[63] Once the three conditions are met, "*Younger* abstention is non-discretionary[.]"[64]

*There Is No Ongoing State Judicial Proceeding*

As to the first condition, Anderer contends that the State Court Action was an ongoing state proceeding when 4EverYoung filed its federal claims against him.[65] Anderer further argues that "[t]he applicable time period is when the Defendants sought to join Anderer to this action, not when this action was first filed against the other parties on wholly unrelated issues."[66] Anderer argues that the "the Supreme Court[, in *Hicks*] implicitly recognized that the relevant date is the date a party is joined to an action; it is not the date on which the action is filed."[67] "When the State Court Action was filed: (a) Anderer was not a party to this federal case; (b) there were no issues in this case addressing any liens or lien rights against the Assets; and (c) Anderer was not a party to the underlying contract, which was the subject of the lawsuit between DP and 4EY."[68] Therefore, Anderer contends, that "the case has not progressed beyond the embryonic stage as it relates to Anderer."[69]

4EverYoung contends that where "there have been proceedings of substance and the federal litigation has moved beyond the 'embryonic stage' before the state action commences,

---

[63] *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997).

[64] *Amanatullah v. Colorado Bd. of Med. Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999).

[65] Anderer's Bench Memo at 4.

[66] Anderer's Reply at 6.

[67] *Id.* at 7 (relying on *Hicks v. Miranda*, 422 U.S. 332, 349 (1975)).

[68] *Id.* at 8.

[69] *Id.*

federal courts 'do not have the discretion to abstain from exercising jurisdiction.'"[70] It cites to *For Your Eyes Alone, Inc. v. City of Columbus*[71] where the Eleventh Circuit stated that "the determination of whether a prosecution is pending is not made based on the respective commencement dates of the state and federal actions. Instead, the [Supreme] Court has ruled that federal courts are to abstain [only] if the state criminal prosecution commenced 'before any *proceeding of substance on the merits* have taken place in the federal court.'"[72] 4EverYoung argues that the "federal proceedings in this case had moved well beyond the 'embryonic stage' before Anderer commenced the State Court Action on December 22, 2014."[73] "Moreover, the parties had briefed and the Court had ruled on substantive issues regarding the merits of the case long before Anderer initiated the State Court action . . . ."[74] According to 4EverYoung, the analysis above does not change simply because Anderer was not named as a party in this case until shortly after the commencement of the State Court Action.[75] "Indeed, the claims against Anderer arise out of the same set of transactions and occurrences that have been at issue in the case since it was filed, and Anderer is an insider and until very recently was the chairman of Derma Pen, which is the party who commenced this case."[76]

---

[70] 4EY's Response at 4 (quoting *For Your Eyes Alone, Inc.* v. City of Columbus, 281 F.3d 1209, 1217 (11th Cir. 2002)); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975) (stating that state action is "ongoing" if the federal litigation is in "an embryonic stage and no contested matter has been decided"); *iMergent, Inc. v. Giani*, No. 2:06-cv-00720, 2007 WL 895128, *5 (D. Utah March 21, 2007) (unpublished) (noting that case was in "embryonic stage" where the court had "decided no contested matters")).

[71] For Your Eyes Alone, Inc., 271 F.3d at 1217 (quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1976)).

[72] 4EY's Response at 4 (emphasis added).

[73] *Id.* at 5.

[74] *Id.*

[75] *Id.*

[76] *Id.*

At the time the State Court Action was initiated, federal proceedings of substance on the merits of some of 4EverYoung's claims[77] had occurred. Specifically, proceedings of substance relating to the Trademark and Domain Name had occurred: the court had set trial for August 11, 2014, on the issue of whether 4EverYoung could obtain specific performance of its right to purchase the Trademark and Domain Name. The court had ruled on multiple motions in limine leading up to the trial, when the court had to stay the action because of Derma Pen's bankruptcy filing.[78]  Thus, the present litigation was past the "embryonic stage" as it related to the assets in question.

The Supreme Court, in *Hicks*, held that "where state . . . proceedings are begun . . . after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force."[79] *Hicks* clarified that the timing issue of the *Younger* doctrine is not the filing date of the federal action as compared to the state action nor is it the date that a party is joined, but it is the date when substantive proceedings begin. *Hicks* does not support Anderer's argument that the Court must look at the date when he became a party to the present lawsuit to determine whether any proceeding of substance had occurred, and he cited no other support for the position.

Proceedings of substance on the merits occurred in federal court before the State Action was filed, and it is of no consequence that Anderer was added as a party to this litigation later in time. *Younger* stands for the proposition that in some instances a federal court should not interfere with a substantive state judicial proceeding.[80] Here, the opposite situation exists. The

---

[77] *See, e.g.,* Memorandum Decision and Order re: Jury Trial on Derma Pen, LLC's 22nd and 24th Causes of Action and Part of Defendants' 1st Counterclaim Cause of Action, docket no. 207, filed June 24, 2014.

[78] *See* docket nos. 207–423.

[79] *Hicks,* 422 U.S. at 349.

[80] *Younger*, 401 U.S. at 43.

State Court Action threatens to dispose of property that forms the basis for this court's substantive proceedings, the practical effect of which is to diminish the court's power to bring this litigation, now pending for over a year and half, to a natural conclusion.

## Colorado River Doctrine[81]

Under *Colorado River Water Conservation Dist. v. United States*,[82] a federal court may assess the appropriateness of abstention in the event of an exercise of concurrent state jurisdiction.[83] The *Colorado River* doctrine is not an abstention doctrine in the technical sense; rather it is a set of principles which rest on considerations of wise judicial administration.[84] The Supreme Court has stressed, however, that the *Colorado River* exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" is a narrow one.[85] Only exceptional circumstances justify such a stay, and whether these circumstances exist is determined by weighing of certain enumerated factors.[86]

If the suits are parallel, then the following factors must be considered in determining whether *Colorado River* abstention is appropriate: (1) whether either court has assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the vexatious or reactive nature of either the federal or the state action; (6) whether federal law provides a rule of decision; (7) the adequacy of the state court action to protect the federal

---

[81] Anderer, for the first time, raised the *Colorado River* Doctrine issue in his proposed Findings of Facts and Conclusions of Law. *See* [Anderer's Proposed] Findings of Fact, Conclusions of Law and Order . . . , docket no. 611, filed February 21, 2015.

[82] 424 U.S. 800 (1976).

[83] *Id.* at 817.

[84] *Id.*

[85] *Id.; see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 17 (1983).

[86] *Moses H. Cone*, 460 U.S. at 23–26.

plaintiff's rights; and (8) whether the party opposing abstention has engaged in impermissible forum shopping.[87]

This case and the State Court Action are parallel: both involve the same parties, similar claims, the same subject matter and, if fairly and fully litigated, the same disputed issues of fact (*i.e.*, the validity of Anderer's claims against Derma Pen and his security interest against the assets). As discussed above, this court first assumed jurisdiction over the property. The Second and Ninth Circuits have held that this factor alone is dispositive.[88] The analyses of the remaining factors also weigh against abstention. The federal forum is equally convenient to the parties as is the state forum. The desirability of avoiding piecemeal litigation weighs in favor of the federal proceeding which has been pending for over a year and a half and is well evolved. Because the state and federal cases involve identical parties and issues, the potential problem of inconsistent judgments may be obviated through res judicata if one court renders judgment before the other. As mentioned above, this court was first to obtain jurisdiction over the assets through constructive possession.

The record indicates that the State Court Action is vexatious. Mr. Anderer was an insider at Derma Pen and was keenly aware of this litigation and the trial set in August of 2014. As trial approached, this court granted 4EverYoung's Motion for Summary Judgment on Derma Pen's claim for rescission of the contract that obligated Derma Pen to offer for sell the Trademark and

---

[87] *Id.*

[88] *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 102 (2d Cir. 1999) ("[T]he first prong of the *Colorado River* analysis is dispositive[.]") (citing *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939) ("[I]f the two suits are *in rem,* or *quasi in rem,* so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other.")); *40235 Washington St. Corp. v. Lusardi*, 976 F.2d 587, 589 (9th Cir.1992) (per curiam) (in an *in rem* or *quasi in rem* action, "the first prong of the *Colorado River* abstention test is dispositive. In proceedings *in rem* or *quasi in rem,* the forum first assuming custody of the property at issue has exclusive jurisdiction to proceed.").

the Domain Name to 4EverYoung.  On the eve of trial on specific performance of Derma Pen's obligation, Derma Pen filed for bankruptcy.  The bankruptcy court dismissed the case for having not been filed in good faith.  Immediately, Anderer took steps to attempt to prevent this court from adjudicating the parties' contractual obligations. On these facts, the State Court Action is vexatious.

However, federal law does not provide the rule of decision, and 4EverYoung has not suggested that the state court action is inadequate to protect its rights. But 4EverYoung has not engaged in any impermissible forum shopping. In balancing the factors as applied to this case, the balance weighs heavily in favor of this court's exercise of jurisdiction.

## CONCLUSION

Because this action falls within an exception to the Anti-Injunction Act and because the *Younger* and *Colorado River* doctrines do not apply, this court need not abstain from further action and may restrain Anderer from taking specified actions in the State Court Action.

Dated February 25, 2015.

BY THE COURT:

_____
David Nuffer
United States District Judge