IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DERMA PEN, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>4EVERYOUNG LTD., DERMAPENWORLD, BIOSOFT (AUST) PTY. LTD. d/b/a DERMAPENWORLD, EQUIPMED INTERNATIONAL PTY. LTD. d/b/a DERMAPENWORLD, and STENE MARSHALL d/b/a DERMAPENWORLD,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DERMA PEN'S MOTION FOR EXPEDITED DECLARATION OF ACCEPTANCE OR ORDER FOR MUTUAL REMEDIES**<br><br><br><br>Case No.:  2:13-CV-00729-DN-EJF<br><br>District Judge David Nuffer<br><br>Magistrate Judge Evelyn J. Furse |
| 4EVERYOUNG LTD. and EQUIPMED INTERNATIONAL PTY. LTD.,<br><br>    Counterclaim Plaintiffs,<br><br>v.<br><br>DERMA PEN, LLC, MICHAEL E. ANDERER, JEREMY JONES, MICHAEL J. MORGAN, CHAD MILTON, MEDMETICS, LLC, a Delaware limited liability company, and JOHN DOES 1-25,<br><br>    Counterclaim Defendants. | |

Plaintiff and Counterclaim Defendant Derma Pen, LLC's ("Derma Pen") Motion for Expedited Declaration of Acceptance or Order for Mutual Remedies (the "Motion for Declaration")[1] was heard on March 5, 2015[2] following expedited briefing requested by Derma Pen.[3] At that hearing, Derma Pen was represented by Douglas R. Short; Counterclaim Defendant Michael E. Anderer ("Anderer") was represented by David E. Leta of Snell & Wilmer LLP; and Defendants and Counterclaim Plaintiffs 4EverYoung Limited ("4EverYoung") and Equipmed International Pty. Limited ("Equipmed") and Defendants Biosoft (Aust.) Ltd. Pty. ("Biosoft") and Stene Marshall ("Marshall") (collectively "Defendants"), were represented by Christine T. Greenwood and Christopher M. Von Maack of Magleby & Greenwood, P.C.

The factual background of this Motion for Declaration is fully contained in the Memorandum Decision and Order Granting 4EverYoung's 240 Motion for Partial Summary Judgment Directed Against Derma Pen, LLC's Defenses to Specific Performance (the "Specific Performance Defenses Order").[4] In the Specific Performance Defenses Order, the Court analyzed the construction and operation of Sections 12.2 and 14.6 of the Sales Distribution Agreement.[5]

Based upon the pleadings and papers on file, arguments of counsel, and for good cause shown, the Court hereby FINDS, CONCLUDES, and ORDERS as follows:

---

[1] Docket no. 618, filed February 23, 2015.

[2] *See* Minute Order, docket no. 656, entered March 6, 2015.

[3] *See* Docket Text Order, docket no. 623, entered February 25, 2015; *see also* Opposition to Motion for Expedited Declaration of Acceptance or Order for Mutual Remedies, docket no. 641, filed March 2, 2015; Reply Memorandum in Support of Derma Pen's Motion to Require Declaration or Mutuality of Remedies, docket no. 648, filed March 5, 2015.

[4] Docket no. 465, filed December 30, 2014.

[5] Docket no. 25, filed under seal October 10, 2013.

Derma Pen seeks an order (a) compelling "4EverYoung to explicitly declare whether it has or has not accepted" Derma Pen's "offer to sell it the [Trademark and Domain Name]," despite the fact that the value of the Trademark and Domain Name has not yet been determined by the Court,[6] or (b) to invalidate Sections 12.2 and 14.6 of the Sales Distribution Agreement for lack of mutuality of remedies.

The Sales Distribution Agreement is unambiguous and expresses very clearly the parties' intention that 4EverYoung have a right to purchase the Trademark and Domain Name in two instances: (1) a right to receive an offer after termination and (2) a first right of refusal.[7]

A first right of refusal is the right to refuse the opportunity to purchase on the same terms presented by or to a third party. In a first right of refusal scenario, the terms are presented and known.

On the other hand, 4EverYoung's post-termination option to purchase the Trademark and Domain Name does not articulate a set price. Instead, the value was to be set by independent auditors, one of which would be appointed by each party. If the parties could not agree on a price after considering those auditors' determinations, then the price would be set by judicial valuation. The court's decision as to price is to be final and binding upon both parties.

While the post-termination provision omits some terms, the written language is clear that an offer must be made and a valuation set. Supplying terms that are reasonable and incidental does not make the Sales Distribution Agreement ambiguous. Thus, to enforce Sections 12.2 and 14.6, an offer must be made, a valuation must be set, the offer must be accepted or rejected in a reasonable time, and payment must be made in a reasonable time.

---

[6] Motion for Declaration at 2.

[7] *See* Specific Performance Defenses Order at 5–12.

It has already been determined that Derma Pen had an affirmative obligation pursuant to Sections 12.2 and 14.6 of the Sales Distribution Agreement to first offer the Trademark and Domain Name before any requirement of performance arose on 4EverYoung's part.[8] Derma Pen's argument that Derma Pen has a unilateral right to withdraw its offer or not make an offer is incorrect. The Sales Distribution Agreement states that Derma Pen must make an offer to 4EverYoung. This did not occur when required.

4EverYoung is not required to accept the offer before it is made or before value is determined. Instead, 4EverYoung has the option to accept or reject the offer upon the Court's determination of value when Derma Pen's obligation to offer will be enforced.

In *Coulter & Smith, Ltd. v. Russell*[9], the Utah Supreme Court emphasized that one of the unique characteristics of an option agreement is that the option holder has the legal privilege to accept or reject the offer which arises by the option:

> An option contract is a continuing offer, supported by consideration, which the promisor is bound to keep open. *Jensen v. Anderson*, 24 Utah 2d 191, 192, 468 P.2d 366, 367 (1970) (citing *Walker v. Bamberger*, 17 Utah 239, 246, 54 P. 108, 109 (1898)). It is a unilateral obligation binding only on the optionor. *Cahoon v. Cahoon*, 641 P.2d 140, 143 (Utah 1982). It is unique; the holder has "the legal power to consummate a second contract . . . and at the same time the legal privilege of not exercising it." *Property Assistance Corp. v. Roberts*, 768 P.2d 976, 978 (Utah Ct.App.1989) (citing 1A Corbin on Contracts § 259, at 464 (1963)). An option consists of the following two elements: "(1) an offer to sell, which does not become a contract until accepted; and (2) a contract to leave the offer open for a specified time." *Id.* (citations omitted). The contract to leave the option open for a specified time must be supported by consideration; without it the promisor is not bound. *Jensen*, 468 P.2d at 367.[10]

---

[8] *Id.* at 9–10, 12.

[9] 966 P.2d 852 (Utah 1998).

[10] *Id.* at 859.

Similarly in *Anderson v. Bills*[11], the Illinois Supreme Court explained that the defense of lack of mutuality does not apply to option agreements:

> This rule of mutuality applies to executory contracts in which there are mutual rights and obligations to be performed by each of the parties, but the rule does not apply to option or unilateral contracts. In Page on Contracts (2d Ed.) § 571, it is said: "An option is said to be a unilateral agreement binding upon the party who executes it from the date of its execution, and it becomes a contract inter parties when exercised according to its terms; an exclusive privilege to buy; a continuing offer binding for the time specified on the one who makes it but not on the one to whom it is made unless he accepts; or an obligation by which one binds himself to sell and leaves it discretionary with the other party to buy." The contract in this case was an option or unilateral contract, and by its terms it was binding upon one party alone and could be specifically enforced against that party. Pomeroy on Specific Performance (3d Ed.) § 169, p. 439. An option agreement to convey, without a corresponding obligation or covenant to purchase, will be specifically enforced in equity if made upon sufficient and valuable consideration.[12]

Thus, a construction of the Sales Distribution Agreement to require acceptance by 4EverYoung before the price term is known is unreasonable, and 4EverYoung is not required to accept whatever value is ultimately determined, but may accept or reject the offer upon the Court's determination of value.

Derma Pen argues that the remedies for breach of Sections 12.2 and 14.6 lack mutuality. But the doctrine of mutuality of remedies as a bar to specific performance has been repudiated.[13]

The issue of when the offer must be accepted or the time or terms of payment has not been previously addressed, but the time frames contemplated in the Sales Distribution Agreement are fairly short. For instance, the parties' negotiations, based upon the independent

---

[11] 335 Ill. 524, 528-29, 167 N.E. 864 (1929).

[12] *Id.* at 866.

[13] *See* Humble Oil & Refining Co. v. DeLoache, 297 F. Supp. 647, 657-58 & n.9 (D.S.C. 1969) ("[A]s a limitation upon the exercise of [specific performance], [the lack of mutuality defense] has been so restricted in application as to be valueless. Mr. Justice Cardozo aptly observed in his oft-cited opinion in *Epstein v. Gluckin* . . . that, the rule, criticized as it has been without reserve by text writers and legal scholars, 'has been so qualified by exceptions that, viewed as a precept of general validity, it has ceased to be a rule today.' Clearly, . . . 'the great weight of modern authority has repudiated it.' This conclusion is amply supported by recent decisions." (citations and footnote omitted)).

auditor's valuations, were to occur within 30 days of the appointment of those auditors. That is a relatively short timeframe to obtain independent audits and attempt to reach an agreement on value. Under the circumstances, a reasonable time for 4EverYoung to accept the offer would be within 15 days of the valuation. A reasonable time for 4EverYoung's payment would be within 30 days of its acceptance. There is, however, no provision for terms, such as payment over time or security agreement with periodic payments, and such terms would not be reasonable to imply.

## ORDER

Derma Pen's Motion for Declaration[14] is DENIED.

Dated April 7, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[14] Docket no. 618.