## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DERMA PEN, LLC,<br><br>       Plaintiff,<br><br>vs.<br><br>4EVERYOUNG LIMITED, BIOSOFT (AUST) PTY LTD d/b/a DERMAPENWORLD, EQUIPMED INTERNATIONAL PTY LTD d/b/a DERMAPENWORLD, and STENE MARSHALL d/b/a DERMAPENWORLD,<br><br>       Defendants. | **FILED UNDER SEAL**<br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW;**<br>**ORDER**<br>  • **GRANTING [938, 943, 952, 944, 945, 1015, and 1017] MOTIONS,**<br>  • **FINDING MOOT [651 and 706] MOTIONS; AND**<br>**FINAL JUDGMENT AWARDING DAMAGES, INJUNCTIVE RELIEF, AND ATTORNEY'S FEES AND COSTS**<br><br>**\*\*REDACTED\*\***<br>Case No. 2:13-cv-00729-DN-EJF<br><br>District Judge David Nuffer<br>Magistrate Judge Evelyn J. Furse |

An evidentiary hearing[1] was held pursuant to Fed. R. Civ. P. 55(b)(2) to supplement the record which is relied on determining the appropriate sum of damages and equitable relief to grant to the plaintiff, in line with the relief requested in the First Amended Complaint. Based on that hearing and the entire record, the following findings of fact and conclusions of law are entered:

---

[1] Minute Order, docket no. 1010, entered March 1, 2017.

I.   FINDINGS OF FACT ........................................................................................... 3

   A.   PARTIES ............................................................................................................ 3

   B.   JURISDICTION ................................................................................................ 4

   C.   MATERIAL FACTS ......................................................................................... 4

     1.   Ownership of the DERMAPEN® trademarks in the USA and the domain
www.dermapen.com. ................................................................................................ 4

     2.   The Sales Distribution Agreement. ..................................................................... 8

     3.   Defendants never paid value for the DERMAPEN Marks or the Domain Name, but
nonetheless have been using a reproduction or counterfeit of the marks to sell micro-
needling products in the USA. ................................................................................. 12

     4.   Defendants have used copyrighted materials on their website without authorization... 16

     5.   Defendants have engaged in false advertising. ................................................. 17

     6.   Stene Marshall's conduct in Australia. ............................................................. 19

     7.   Defendants willfully published false statements about Derma Pen, LLC to third parties.
.................................................................................................................................. 21

     8.   4EverYoung, Equipmed, Biosoft and Mr. Marshall are alter egos of each other. ......... 23

     9.   4EverYoung and Equipmed failed to prosecute their claims for specific performance. 24

     10.   Derma Pen, LLC's Damages. ......................................................................... 33

II.   CONCLUSIONS OF LAW ................................................................................. 38

ORDER ........................................................................................................................ 49

# I.    FINDINGS OF FACT

## A.    PARTIES

1.    Derma Pen, LLC is a limited liability company organized and existing under Delaware law, with its principal place of business in Salt Lake City, Utah.[2]

2.    4EverYoung Limited ("4EverYoung") dba DermapenWorld purportedly is a private limited company organized under United Kingdom law, with its principal place of business in London, England.[3]

3.    BioSoft Pty. Limited ("Biosoft") dba DermapenWorld purportedly is an Australian private company organized under the laws of Australia, with its principal place of business in Sydney, Australia.[4]

4.    Defendant Equipmed International Pty Ltd. dba DermapenWorld ("Equipmed") purportedly is an Australian private company, with a principal place of business located in Sydney, Australia.[5]

5.    Stene Marshall dba DermapenWorld ("Mr. Marshall") is an individual citizen of Australia, who maintains his principal residence in New South Wales, Australia.[6]

6.    Biosoft, Equipmed, and Mr. Marshall are collectively the "Defendants."

---

[2] First Amended Complaint ("FAC") ¶ 1, <u>docket no. 118</u>, filed May 1, 2014.

[3] *Id.* ¶ 2.

[4] *Id.* ¶ 3.

[5] *Id.* ¶ 4.

[6] *Id.* ¶ 5.

**B.     JURISDICTION**

6. This case involves claims arising under the Lanham Act, 15 U.S.C § 1051 *et seq.*, the Copyright Act, 17 U.S.C. § 101 *et seq.*, and state-law claims arising under the same common nucleus of operative facts as the claims raising a federal question.[7]

7. Defendants voluntarily waived their rights to litigate this case in the United Kingdom under the forum selection and choice of law provisions of the Sales Distribution Agreement and consented to jurisdiction in this Court.[8]

**C.     MATERIAL FACTS**

      **1.     Ownership of the DERMAPEN® trademarks in the USA and the domain www.dermapen.com.**

8. Derma Pen, LLC was founded by Michael Morgan ("Mr. Morgan") and Chad Milton in 2011.[9]

9. Derma Pen, LLC was a provider of Class 1 FDA registered micro needling and skin treatment devices and systems.[10]

10.     Derma Pen, LLC's micro needling products included, but were not limited to, the DERMAPEN® Medical Model micro needling device and the DERMAPEN® Aesthetic Model micro needling device.[11]

---

[7] *Id.* ¶¶ 7–11.

[8] Memorandum Decision and Order RE: Choice of Law for August 2014 Proceedings at 4–5, <u>docket no. 213</u>, entered June 26, 2014.

[9] FAC ¶ 12.

[10] *Id.* ¶ 13.

[11] *Id.* ¶ 14.

11.    Derma Pen, LLC only sold its micro needling devices to trained and certified aestheticians and medical directors, *i.e.*, medical professionals.[12]

12.    Derma Pen, LLC did not sell, and has never sold, a micro needling device for personal use by individuals who were not trained, licensed, or certified to use such devices.[13]

13.    Derma Pen, LLC established, through continuous, long-term use in commerce common law rights in the DERMAPEN Mark in the USA and in the use of the phrase "DERMAPEN" as a trade name or part of a trade name. From June 2011 through February 2015, Derma Pen, LLC used the DERMAPEN Mark continually throughout the USA in interstate commerce to identify certain of its goods and services and to distinguish such goods and services from those made and sold by others.[14]

14.    Derma Pen, LLC obtained a registration from the United States Patent and Trademark Office for a DERMAPEN® Mark, U.S. Registration No. 4,096,295, for use in connection with skin treatment devices using multiple needles in a vibrating method for performing skin treatment procedures (the "295 Registration"). The 295 Registration was filed on June 29, 2011, prior to any agreement with the Defendants and issued on February 7, 2012, and is now outstanding and valid.[15]

15.    Derma Pen, LLC also offered a line of DERMAPEN® approved consumables, which included topical products, replacement needle tips, and cleaners, among others. The

---

[12] *Id.* ¶ 15.

[13] *Id.* ¶ 16.

[14] *Id.* ¶ 20.

[15] *Id.* ¶ 19. Derma Pen, LLC's federally-registered and common law marks shall be hereinafter referred to collectively as the "DERMAPEN Marks."

DERMAPEN® micro needling skin treatment devices and related accessory products sold under the DERMAPEN Marks shall hereinafter be referred to collectively as the "DERMAPEN® Products."[16]

16.    Derma Pen, LLC expended considerable time, resources, and effort in promoting the DERMAPEN Marks and developing substantial goodwill associated therewith throughout the United States of America.[17]

17.    The DERMAPEN Marks are arbitrary and inherently distinctive when used in connection with Derma Pen, LLC's goods and services.[18]

18.    Due to the continual use of the DERMAPEN Marks by Derma Pen, LLC the DERMAPEN Marks came to indicate a single source of Derma Pen, LLC's goods and services. The DERMAPEN Marks further came to indicate Derma Pen, LLC as the single source of such quality goods and services.[19]

19.    Derma Pen, LLC and its use of the DERMAPEN Marks in the skin treatment industry was and is well-known.[20]

20.    Derma Pen, LLC's first use in commerce of the DERMAPEN Marks predates any use by Mr. Marshall, 4EverYoung, Equipmed or Biosoft.[21]

---

[16] *Id.* ¶ 17.

[17] *Id.* ¶ 22.

[18] *Id.* ¶ 23.

[19] *Id.* ¶ 24.

[20] *Id.* ¶ 25.

[21] *Id.* ¶ 501.

21.     As such, Derma Pen, LLC and the DERMAPEN Marks are associated with high-quality medical and cosmetic skin treatment products and services.[22]

22.     Through Derma Pen, LLC's use of the DERMAPEN Marks in commerce, it became famous.[23]

23.     During the course of the current litigation, Michael Anderer, as creditor of Derma Pen, LLC, purchased the DERMAPEN Marks and the Domain Name at a foreclosure sale authorized by this Court.[24]

24.     Mr. Anderer then transferred the DERMAPEN Marks and the Domain Name to Dermagen International.[25]

25.     To comply with an order of the Court, Mr. Anderer subsequently caused Derma Pen IP Holdings, LLC to acquire the DERMAPEN Marks in the USA and the Domain Name, which acquisition the Court expressly recognized as proper.[26]

26.     Derma Pen, LLC was the owner via assignment of copyrights in certain textual and audiovisual content displayed on its website located at www.dermapen.com (the "Copyrighted Content").[27]

---

[22] *Id.* ¶ 18.

[23] *Id.* ¶ 596.

[24] Order Granting Emergency Motion for Approval of Alternative Remediation Relating to Contempt Ruling at 2, docket no. 729, entered March 30, 2015.

[25] *Id.*

[26] *Id.* at 2–4; Notice and Report of Compliance with March 31, 2015 Deadlines in Court's Order Granting Emergency Motion for Approval of Alternative Remediation Relating to Contempt Ruling, docket no. 732, filed March 31, 2015.

[27] FAC ¶ 26.

27.     The Copyrighted Content is the subject of the following USA copyright applications or registrations: Application No. 1-926932146; Registration No. TX-7-731-746; Registration No. TX-7-731-750; Registration No. PA 1-844-151.[28]

████████████████████████████████████████████████████

**2.     The Sales Distribution Agreement.**

29.     During the Summer of 2011, there were business discussions between Mr. Morgan and Mr. Marshall about a distribution agreement for the sale of micro-needling devices and the related disposable tips throughout the USA.[30]

30.     At the time of the discussions, Mr. Marshall was the owner of 4EverYoung.[31]

31.     During negotiations, Mr. Marshall represented to Derma Pen, LLC that a manufacturer, Sunwoo, with whom 4EverYoung had contracted, had worldwide patents on a certain micro-needling device and related tips, that 4EverYoung had exclusive, worldwide rights to distribute the products, and that 4EverYoung could grant and protect Derma Pen, LLC's exclusive right to sell the same in the USA.[32]

32.     In fact, Sunwoo did not have worldwide patents on the device or the tips; its patent was only effective in South Korea.[33]

---

[28] *Id.* ¶ 27.

[29] Review of DERMAPEN® Trademark Valuations at 44, <u>docket no. 610</u>, filed February 20, 2015.

[30] FAC ¶¶ 28–30.

[31] *Id.* ¶¶ 164–70.

[32] *Id.* ¶¶ 34–36.

[33] *Id.* ¶¶ 40–42.

33.     Mr. Marshall made this misrepresentation for the purpose of inducing Derma Pen, LLC to act upon it by entering into the Sales Distribution Agreement.[34]

34.     In reliance[35] on these representations made by Mr. Marshall, on August 1, 2011, Derma Pen, LLC was induced to enter into an agreement (the "Sales Distribution Agreement" or "SDA") with 4EverYoung.[36]



---

[34] *Id.* ¶¶ 40–42.

[35] *Id.* ¶¶ 39 and 43.

[36] The Sales Distribution Agreement ("SDA"), docket no. 25, filed October 10, 2013.



---

[42] FAC ¶ 99.



FAC ¶¶ 100 and 101.

**3. Defendants never paid value for the DERMAPEN Marks or the Domain Name, but nonetheless have been using a reproduction or counterfeit of the marks to sell micro-needling products in the USA.**

35. Within the USA, Mr. Marshall, 4EverYoung, Equipmed and BioSoft have used in interstate commerce – via websites, tradeshows and in-person solicitations – a reproduction, counterfeit, copy, or colorable imitation of the DERMAPEN Marks in connection with the sale, offering for sale, distribution, or advertising of micro-needling devices and accessories, including micro-needling tips. Indeed, from at least August 2013 through February 2015, Mr. Marshall, 4EverYoung, Equipmed and Biosoft sold, offered to sale and marketed micro-needling devices and micro-needling tips in the USA that bore a reproduction, counterfeit or colorable imitation of the DERMAPEN Marks,[47] even though they did not have the right to use the DERMAPEN Marks in the USA.[48]

36. Such use was likely to cause and did cause confusion, mistake or deception as to the source, nature, and quality of the goods sold by Mr. Marshall, 4EverYoung, Equipmed and BioSoft.[49]

37. The trade names and marks used by Mr. Marshall, 4EverYoung, Equipmed and BioSoft are colorable imitations of and confusingly similar to the DERMAPEN Marks.[50]

38. Mr. Marshall, 4EverYoung, Equipmed and Biosoft sold, offered for sale, distributed and marketed micro-needling devices and tips bearing a reproduction, counterfeit or colorable imitations of the DERMAPEN Marks in the USA, without the right to do so, in wanton

---

[47] FAC ¶ 198.

[48] *Id.* ¶¶ 103 and 107.

[49] *Id.* ¶ 499.

[50] *Id.* ¶ 506.

disregard for Derma Pen, LLC's rights to the DERMAPEN Marks and with the willful intent and purpose of improperly taking or benefitting from the favorable reputation and valuable goodwill which Derma Pen, LLC had established in the DERMAPEN Marks, as illustrated by the following:[51]

a) Defendants repeatedly and publicly asserted that the Sales Distribution Agreement gave them the right to use the DERMAPEN Marks in the USA or otherwise misrepresented that they owned or had the right to use the DERMAPEN Marks in the USA when, in fact, the Sales Distribution Agreement conferred no such rights. Defendants made these representations to potential buyers of micro-needling products and to Derma Pen, LLC's existing customers via mass emails,[52] in-person sales at tradeshows,[53] their various websites,[54] or in-person solicitations of Derma Pen, LLC's customers at the customers' places of business.[55]

b) Defendants hired former employees of Derma Pen, LLC. Defendants used some of these former employees to obtain unauthorized access to Derma Pen, LLC's database and steal Derma Pen, LLC's customer list and pricing information. Defendants then used the customer list to actively solicit Derma Pen, LLC's customers using reproductions, counterfeits or colorable imitations of the DERMAPEN Marks.[56]

---

[51] *Id.* ¶¶ 103, 105, 253, and 504–05.

[52] *Id.* ¶¶ 337–459.

[53] *Id.* ¶¶ 231–39.

[54] *Id.* ¶¶ 198–230.

[55] *Id.* ¶¶ 240–336, specifically ¶¶ 280 and 751.

[56] Deposition of Rebecca Bell at 68:1–86:24, docket no. 910-2, filed July 29, 2016; Transcript of March 1, 2017 Hearing before the Honorable David Nuffer ("Rule 55(b)(2) Hearing") at 29:8–21, docket no. 1011, filed March 7,

c)        Defendants attended tradeshows in the USA. At these tradeshows, Defendants used signage and other marketing materials that bore reproductions, counterfeits, or colorable imitations of the DERMAPEN Marks. On more than one occasion, the organizers of a tradeshow prevented Derma Pen, LLC from attending the tradeshow on grounds that no more than one company could sell or market goods at the tradeshow under the DERMAPEN Marks. At least one of these tradeshows, Defendants knew that Derma Pen, LLC had been precluded from attending the tradeshow but did not abdicate their spot at the tradeshow or otherwise clarify with the tradeshow organizers that Derma Pen, LLC owned the right to use the DERMAPEN Marks in the USA.[57]

d)        Mr. Marshall expressed a desire to "white ant" Derma Pen, LLC, which is Australian slang for destroying the company from the inside.[58]

39.      Mr. Marshall, 4EverYoung, Equipmed and BioSoft have sold micro-needling products bearing a reproduction, counterfeit, copy or colorable imitation of the DERMAPEN Marks directly to individuals who were not trained, licensed or certified to use such devices.[59]

40.      Derma Pen, LLC never approved, permitted or endorsed such use.[60]

41.      Such use occurred after Derma Pen, LLC had established extensive and valuable goodwill in connection with its goods and services identified by the DERMAPEN Marks.[61]

---

2017; Casey Isom Testimony February 18, 2015 Hearing before the Honorable David Nuffer at 10:8–10:10, docket no. 605, filed February 20, 2015.

[57] Rule 55(b)(2) Hearing at 26:6–29:7, 32:5–34:23, 55:9–60:9.

[58] Stene Marshall Dep. at 94:4–96:9, docket no. 938-7, filed October 17, 2016.

[59] FAC ¶¶ 508–14.

[60] Id. ¶¶ 500 and 510.

[61] Id. ¶ 500.

42.     Mr. Marshall, 4EverYoung, Equipped and Biosoft had actual notice of Derma Pen,

LLC's rights in the DERMAPEN Marks at least as early as August 2, 2011.[62]

43.     4EverYoung never paid any value to Derma Pen, LLC for the DERMAPEN Marks

or the Domain Name, nor did they ever purchase the DERMAPEN Marks or Domain Name form

Derma Pen, LLC.[63]

███████████████████████████████████████████████████

Defendants never have had any right to use the DERMAPEN Marks in the USA or to transfer that

right to do so to anyone else.[64]

45.     Defendants have used the DERMAPEN Marks and the "DERMAPEN" trade name

for their own commercial gain.[65]

46.     In using the DERMAPEN Marks and "DERMAPEN" trade name in the USA,

Defendants willfully traded on the goodwill associated with the mark and tradename.[66]

47.     Defendants' use of the DERMAPEN Marks and "DERMAPEN" trade name in the

USA has diluted the distinctive quality of the mark and tradename and harmed Derma Pen, LLC's

reputation.[67]

---

[62] *Id.* ¶¶ 502–03.

[63] *Id.* ¶¶ 106–07 and 504.

███████████████████

[65] FAC ¶ 597.

[66] *Id.* ¶ 647.

[67] *Id.* ¶ 648.

48.    Defendants' use of the DERMAPEN Marks and "DERMAPEN" trade name in the USA has lessened the capacity of the mark and trade name to identify and distinguish Derma Pen, LLC's goods and services.[68]

49.    As the owner or primary officer of 4EverYoung, Equipmed and BioSoft, Mr. Marshall was actively and personally involved in, ratified or directed others to engage in Defendants' willful and wanton use of the DERMAPEN Marks in the USA.[69]

### 4.    Defendants have used copyrighted materials on their website without authorization.

50.    Defendants have operated at least one website through which they sell or attempt to sell micro-needling products. On the website, Defendants have included unauthorized reproductions (the "Infringing Content") of Derma Pen, LLC's Copyrighted Content.[70]

51.    The Infringing Content is identical or substantially similar to Derma Pen, LLC's Copyrighted Content.[71]

52.    Defendants obtained the Infringing Content from the domain www.dermapen.com, which Derma Pen, LLC owned and controlled at the time of access.[72]

53.    Defendants used the Infringing Content knowingly, willfully or with reckless disregard for the copyright interests of Derma Pen, LLC.[73]

---

[68] *Id.* ¶ 649.

[69] Id. ¶ 190.

[70] *Id.* ¶ 497.

[71] *Id.* ¶¶ 498, 608, 613, 618 and 623; *id.* exhibit 22, docket no. 123-2, filed May 1, 2014.

[72] *Id.* ¶¶ 609, 614, 619 and 624.

[73] *Id.* ¶¶ 611, 616, 621 and 626.

### 5. Defendants have engaged in false advertising.

54. Defendants acted as Derma Pen, LLC's competitors in selling micro-needling devices in the USA.[74]

55. In so doing, Defendants made promotional claims about their micro-needling products that bear the DERMAPEN Marks.[75]

56. These promotional claims were false and misleading.[76]

57. The claims misrepresented the source, sponsorship, approval, or certification of Defendants' products that bear the DERMAPEN Marks by stating or implying that Defendants' goods originated from Derma Pen, LLC,[77] by stating or implying that Defendants micro-needling products bearing the DERMAPEN Marks had approval from the Food and Drug Administration when in fact they did not, by stating or implying that Equipmed manufactured micro-needling devices when in fact it did not, and by stating or implying the Defendants owned the DERMAPEN Marks.[78]

58. The claims misrepresented the nature, characteristics, qualities, source or geographic origin of Derma Pen, LLC's products, services or commercial activities by stating or implying that Defendants – not Derma Pen, LLC – owned the rights to the DERMAPEN Marks, that Derma Pen, LLC had lost a lawsuit to Defendants, that Derma Pen, LLC did not have the right to sell or distribute products bearing the DERMAPEN Marks in the USA, that Derma Pen, LLC

---

[74] *Id.* ¶ 570.

[75] *Id.* ¶¶ 231–496, 572.

[76] *Id.* ¶ 571.

[77] *Id.* ¶ 574.

[78] *Id.* ¶¶ 231–496, specifically 280, 460–73, 475, 575, 751.

would no longer be able to supply micro-needling products, and that Derma Pen, LLC owed Defendants money when in fact it did not.[79]

59. The claims misrepresented the nature, characteristics, qualities, source or geographic origin of Derma Pen, LLC's products, services or commercial activities by stating or implying that Derma Pen, LLC's DERMAPEN® Products originated from Defendants, by stating or implying that Derma Pen, LLC did not have the right to sell or distribute products bearing the DERMAPEN Marks, and by stating or implying that Derma Pen, LLC's DERMAPEN® Products were "knock offs" when in fact they were not.[80]

60. Defendants made these misrepresentations willfully, knowingly, intentionally and maliciously and did so with the intent to mislead and deceive.[81]

61. Defendants' false or misleading statements concerning their micro-needling devices that bear DERMAPEN Marks were material and likely to influence and did in fact influence existing and potential buyers of micro-needling devices generally, existing and potential buyers of Defendants' micro-needling devices or accessories bearing reproductions, counterfeits or colorable imitations of the DERMAPEN Marks, and existing and potential buyers of Derma Pen, LLC's DERMAPEN® Products.[82]

62. Buyers of Defendants' micro-needling products often had no choice but to accept Defendants' promotional claims as true.[83]

---

[79] Id. ¶¶ 231–496, specifically ¶¶ 280, 354, 363, 426, 496 and 751.

[80] Id. ¶¶ 231–496, specifically ¶¶ 354, 404, 416, 441.

[81] Id. ¶ 585.

[82] Id. ¶¶ 576 and 579.

[83] Id. ¶¶ 580, 699 and 702.

63.    Defendants' false and misleading promotional claims about their micro-needling devices bearing reproductions, counterfeits or colorable imitations of the DERMAPEN Marks have actually deceived or have the capacity to deceive a substantial portion of the statements' intended audience.[84]

64.    Defendants introduced their false and misleading promotional claims into interstate commerce through in-person solicitations, telephone, and email of potential and existing customers.[85]

65.    Defendants false or misleading claims injured Derma Pen, LLC by directly diverting sales from Derma Pen, LLC to Defendants and by decreasing the goodwill associated with Derma Pen, LLC's DERMAPEN® Products.[86]

### 6.    Stene Marshall's conduct in Australia.

66.    In 2014, the Australian Securities and Investments Commission ("ASIC"), acting under subsection 206F(1) of the Corporations Act 2001, disqualified Mr. Marshall from managing corporations based on Mr. Marshall's business dealings in Australia.[87] ASIC has prepared a comprehensive report describing the purpose of and basis for the disqualification (the "ASIC Report").[88]

67.    According to the ASIC Report, the purpose of Mr. Marshall's disqualification was to protect *"all those persons who deal with corporations from the consequences of the actions of*

---

[84] *Id.* ¶ 581.

[85] *Id.* ¶ 582.

[86] *Id.* ¶ 583 and 586.

[87] *In the matter of s206F of the Corporations Act 2001 and Stene Brian Marshal*, Report of the Australia Securities and Investments Commission dated September 3, 2014 at 1, <u>docket no. 910-3</u>, filed July 29, 2016.

*those corporate officeholders who, either through incompetence or dishonesty or a combination*
*of the two, bring about the failure of corporations and thus cause loss to others …."*[89]

68.     According to the ASIC Report, the disqualification arises from Mr. Marshall's extensive involvement in at least eight companies that "have failed with debts, in some cases substantial debts, to unsecured creditors."[90]

69.     For instance, according to the ASIC Report, Cell Share Consortium Pty Ltd. ("Cell Share") failed owing sixteen unsecured creditors a total of $767,232.00,[91] and EA Supplies Pty Ltd. ("EA Supplies") failed owing at least one creditor at least $138,561.00.[92] Additionally, the ASIC Report identifies five other companies connected with Mr. Marshall that have failed; these companies carried aggregate deficiencies of at least $1 million upon failure.[93]

70.     Though these failures perhaps result from poor management, the ASIC Report hints at something more nefarious. As the ASIC Report notes, companies connected with Mr. Marshall owe at least $602,808.70 in unpaid taxes to the Australian Taxation Office.[94]

71.     Additionally, the ASIC Report also found that Mr. Marshall has engaged in what Australian jurisprudence terms "phoenix" activity, which occurs when a director transfers the assets of an indebted company into a new company of which he is also a director and then places the initial company into liquidation with no assets to pay creditors, meanwhile continuing the

---

[89] ASIC Report, at 18–19, ¶ 79 (emphasis in original).

[90] ASIC Report, at 21, ¶ 92.

[91] ASIC Report, at 7, ¶ 28.

[92] ASIC Report, at 14, ¶ 61.

[93] ASIC Report, at 17–18, ¶ 76.

[94] ASIC Report, at 7, 17–18, ¶¶ 28, 76.

business using the new company structure. In Mr. Marshall's case, he "transferred the business of Cell Share into [EA Supplies] leaving Cell Share with no assets to pay creditors while continuing what was essentially the same business [via EA Supplies]."[95] Indeed, according to the ASIC Report, both Cell Share and EA Supplies operated as "medical equipment distributor[s]."[96]

72.     Although the ASIC Report stops short of finding that Equipmed – a party to the current litigation – is another phoenix-like incarnation of Cell Share, the report expresses concerns that that may be the case.[97]

73.     Finally, although the ASIC Report stops short of finding that, under Mr. Marshall's direction, Cell Share took on $541,903.43 in debts under circumstances in which Mr. Marshall knew or should have known that Cell Share was insolvent or may become insolvent as a result of the $541,903.43 indebtedness, the report suggests that there is some evidence to that effect.[98]

**7.     Defendants willfully published false statements about Derma Pen, LLC to third parties.**

74.     Defendants willfully and intentionally published false statements about Derma Pen, LLC to third parties, including:[99]

a)     False statements that Derma Pen, LLC did not have the right to distribute micro-needling devices bearing the DERMAPEN Marks;[100]

---

[95] ASIC Report, at 13–16, ¶¶ 64–70.

[96] ASIC Report, at 6, 14, ¶¶ 25, 64.

[97] ASIC Report, at 14–17, ¶¶ 65, 71–73.

[98] ASIC Report, at 11–13, ¶¶ 47–57.

[99] FAC ¶ 751.

[100] *Id.*

b)      False statements that Derma Pen, LLC breached an agreement with Equipmed;[101]

c)      False statements that Derma Pen, LLC  was offering inferior or unsafe micro-needling devices;[102]

d)      False statements that Derma Pen, LLC's principals lack substantive knowledge about micro-needling devices and procedures or the aesthetic medicine industry;[103]

e)      False statements that Derma Pen, LLC lost the current lawsuit;[104] and

f)      False statements that Derma Pen, LLC would run out of product and be unable to continue servicing its customers.[105]

75.      Defendants made the foregoing statements willfully and maliciously or with reckless disregard for their truth.[106]

76.      These false statements caused Derma Pen, LLC to suffer damages, including loss of goodwill, harm to reputation, loss of upstanding in the micro-needling community, loss of business opportunities, and loss of revenue.[107]

---

[101] *Id.*

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] *Id.* ¶ 753.

[107] *Id.* ¶ 761.

### 8. 4EverYoung, Equipmed, Biosoft and Mr. Marshall are alter egos of each other.

77.     Mr. Marshall has ownership or control of 4EverYoung, Equipmed and Biosoft, including 100 percent ownership of 4EverYoung and Equipmed.[108]

78.     Mr. Marshall is the primary officer of 4EverYoung, Equipmed and BioSoft.[109]

79.     As owner and primary officer of 4EverYoung and Equipmed, Mr. Marshall exercises complete control over 4EverYoung and Equipmed, including domination of each company's finances, policies and business transactions, such that these companies do not have separate minds, wills or existences of their own.[110]

80.     There are common business addresses between Mr. Marshall (or a companies owned by Mr. Marshall), 4EverYoung, Equipmed and BioSoft.[111]

81.     Mr. Marshall, 4EverYoung, Equipmed and BioSoft all operate under a common fictitious name: DermapenWorld.[112]

82.     4EverYoung and Equipmed are both undercapitalized, having less share capital than total net liabilities, while Biosoft has only issued one share for which the amount paid was de minimus.[113]

83.     BioSoft and 4EverYoung own websites that advertise micro-needling products. These websites purport to sell products from Equipmed. The warranty advertised on these websites

---

[108] *Id.* ¶¶ 164–70.

[109] *Id.* ¶¶ 162–63 and 190.

[110] *Id.* ¶¶ 188–94.

[111] *Id.* ¶ 195.

[112] *Id.* ¶¶ 2–5 and 129.

[113] *Id.* ¶ 195.

purportedly comes from Equipmed. All websites list info@equpmed.com as the contact email address. The terms and conditions contained on these websites are identical, while much of the other content is almost identical. Mr. Marshall knowingly and actively participated in, authorized, ordered, controlled, approved and ratified operation of these websites.[114]

### 9. 4EverYoung and Equipmed failed to prosecute their claims for specific performance.

#### a. 4EverYoung and Equipmed brought a claim for specific performance ▇▇▇▇▇▇▇▇▇▇ of the Sales Distribution Agreement, and the Court established a framework for overseeing the sale.

84.    4EverYoung and Equipmed brought a claim against Derma Pen, LLC for specific performance, "including to offer the [DERMAPEN Marks and the Domain Name] to 4EverYoung for purchase."[115]

85.    In response to 4EverYoung's request for specific performance, the Court established protocols for valuing the DERMAPEN Marks and the Domain Name and otherwise overseeing a potential sell.[116]

#### b. Defendants' failed to retain counsel and otherwise to comply with the Court's orders.

86.    Attorneys from the law firm Magleby & Greenwood, P.C. (the "Magleby Firm") appeared in the current litigation on behalf of 4EverYoung and Equipmed on October 16, 2013.[117]

---

[114] *Id.* ¶¶ 135–61.

[115] Fourth Amended Counterclaim and Demand for Jury Trial ¶¶ 219–27, docket no. 711, filed March 23, 2015.

[116] Memorandum Decision and Order Granting 4EverYoung's 241 Motion for Partial Summary Judgment on Specific Performance and Granting in Part Defendants' 141 Motion for Preliminary Injunction at 9–14, docket no. 476, entered January 12, 2015.

[117] Notices of Appearance, docket nos. 32–34, filed October 16, 2013.

87.     In May 2015, attorneys from the law firm Kirton McConkie (the "Kirton Firm") replaced the Magleby Firm as counsel for all Defendants.[118]

88.     Approximately seven months later, the Kirton Firm moved to withdraw as counsel because Defendants had incurred "significant outstanding amounts" of attorney fees but nonetheless "failed to pay . . . for services rendered," creating "irreconcilable conflicts."[119] The Court granted the Kirton Firm's motion on December 29, 2015.[120]

89.     Following the Kirton Firm's withdrawal, attorneys from the law firm Manning Curtis Bradshaw & Bednar, PLLC (the "Manning Firm") appeared on behalf of the Defendants,[121] while attorneys from the law firm Morgan, Lewis & Bockius, LLP (the "Morgan Firm") requested to appear *pro hac vice* on Defendants' behalf,[122] which request the Court granted.[123]

90.     Four months later, both the Manning Firm and the Morgan Firm moved to withdraw as counsel because Defendants had incurred "significant outstanding amounts" of attorney fees

---

[118] Substitution of Counsel, docket no. 798, filed May 1, 2015; Notices of Appearance, docket nos. 803–04 and 806–07, filed respectively on May 19, 2015 and May 20, 2015.

[119] Motion to Withdraw as Counsel for Defendants and Counterclaim Plaintiffs 4EverYoung, LTD. And Equipmed International Pty Ltd.; and Defendants Biosoft (AUST) Pty Limited and Stene Marshall; and Request for Termination of Electronic Notices at 2–3, docket no. 827, filed December 4, 2015.

[120] Order Granting Motion to Withdraw as Counsel for Defendants and Counterclaim Plaintiffs 4EverYoung, Ltd. And Equipmed International Pty Ltd.; and Defendants Biosoft (Aust) Pty Limited and Stene Marshall, docket no. 833, entered December 29, 2015.

[121] Notices of Appearance, docket nos. 840–42, filed January 19, 2016.

[122] Motions for Admission Pro Hac Vice, docket nos. 836–37 and 845, filed on January 19, 2016 and January 22, 2015.

[123] Docket Text Orders Granting Motions for Admission Pro Hac Vice, docket nos. 839, 843, 846, entered respectively on January 19, 21 and 22, 2016.

but nonetheless "ha[d] failed to pay Counsel fully for services rendered."[124] The Court granted the motion on May 31, 2016.[125]

91.     About the same time that the Manning Firm and the Morgan Firm were seeking to withdraw as Defendants' counsel, the Magleby Firm filed a complaint against Defendants and others in the United States District Court for the District of Utah, case number 2:16-cv-00421 (the "Magleby Complaint"), in which the Magleby Firm sought to recover $772,898.21 in unpaid expenses and legal fees.[126]

92.     In addition to asserting claims for breach of contract and breach of the covenant of good faith and fair dealing, the Magleby Complaint alleges that Mr. Marshall is the alter ego of parties 4EverYoung, Equipmed and Biosoft and the nonparty DermapenWorld, LLC because these companies do not comply with corporate formalities, because Mr. Marshall routinely paid each company's debts and has commingled his assets with each company's assets, and because Mr. Marshall actively participated in each company's wrongdoing.[127] Indeed, the Magleby Firm believes that Mr. Marshall has used 4EverYoung, Equipmed, Biosoft and DermapenWorld, LLC "to promote injustice and fraud."[128]

93.     In connection with the withdrawal of the Manning Firm and the Morgan Firm, the Court issued the following order:

> Within 21 days after entry of this order, [Defendants] shall file a notice of appearance of new counsel. [Defendants] are advised that pursuant to DUCivR 83-1.3, no corporation, association, partnership, limited liability company or other artificial entity may appear *pro*

---

[124] Motion for Leave to Withdraw as Counsel at 2, docket no. 890, filed May 26, 2016.

[125] Order Granting Motion for Leave to Withdraw as Counsel, docket no. 893, entered May 31, 2016.

[126] Magleby Complaint, docket no. 910-1, filed July 29, 2016.

[127] *Id.* ¶¶ 30–36.

[128] *Id.* ¶ 34.

*se*, but must be represented by an attorney who is admitted to practice in this court. Mr. Marshall may, however, appear pro se.

Failure to timely file a notice of appearance of new counsel may subject [Defendants] to sanctions pursuant to Federal Rule of Civil Procedure 16(f)(1), including but not limited to dismissal or default judgment.[129]

94.     The original deadline to comply with the order was June 21, 2016.[130]

95.     4EverYoung, Equipmed and Biosoft did not appoint counsel before June 21, 2016, and Mr. Marshall did not file a notice of pro se appearance before that date.

96.     On June 24, 2016, the Court docketed the following order, in which the Court revealed that an alleged representative of Defendants had contacted the Court *ex parte*:

> DOCKET TEXT ORDER: On May 31, 2016, an Order was entered requiring new counsel to appear on or before June 21, 2016 for [4EverYoung, Equipmed and Biosoft]. The court received a voicemail from Collin Murray at Baker & McKenzie LLP earlier this week. Mr. Murray informed the court that [4EverYoung, Equipmed and Biosoft] are in the process of retaining him for this case, but that he would need a few additional days to find local counsel and finalize the engagement letter. If no appearance of counsel is made by Monday, June 27, 2016, an order to show cause regarding dismissal will issue accordingly. Signed by Judge David Nuffer on June 24, 2016. (ks) [131]

97.     Attorneys from Ballard Spahr, LLP (the "Ballard Firm"), not Collin Murray, appeared on behalf of 4EverYoung and Equipmed on June 27, 2016.[132] No counsel appeared on behalf of Biosoft or Mr. Marshall, and Mr. Marshall filed nothing to indicate that he intended to proceed *pro se*.

---

[129] Order Granting Motion for Leave to Withdraw as Counsel at 2–3, <u>docket no. 893</u>, entered May 31, 2016.

[130] *Id.*

[131] Docket Text Order, docket no. 900, entered June 24, 2016.

[132] Notice of Appearance, <u>docket no. 901</u>, filed June 27, 2016.

98.    Approximately three weeks after appearing as counsel the Ballard Firm moved to withdraw because 4EverYoung and Equipmed "failed to timely provide a retainer as required by the engagement [contract]."[133] The Court granted the motion to withdraw on July 14, 2016.[134]

99.    That same day the Court issued the following order: "on or before August 1, 2016 [Defendants] must show cause . . . why default judgment should not be entered against them."[135]

100.    At no time before August 1, 2016 did any of the Defendants file anything in response to the Court's July 14, 2016 order to show cause.

101.    Via an *ex parte* letter dated August 2, 2016, which the Court lodged via docket number 915, Mr. Marshall requested a one-week extension for 4EverYoung and other companies that he claims to "represent" to appoint counsel.[136] The sole reason that Mr. Marshall gives for failing to appoint counsel is "the summer vacation period."[137]

102.    In the *ex parte* letter, Mr. Marshall expresses an intent to "lodge an appearance pro se until [] new counsel enters their appearance."[138] This was the first time since the Court's May 31, 2016, order that Mr. Marshall filed anything with the Court indicating an intent to proceed *pro se*. Mr. Marshall never actually appeared *pro se*.

103.    Derma Pen, LLC objected to the August 2 letter on several grounds, not least of which is that Mr. Marshall – a non-attorney – cannot file documents on behalf of corporate entities

---

[133] Motion for Withdrawal of Counsel at 3, docket no. 906, filed July 13, 2016.

[134] Order Granting Motion for withdrawal of Counsel, docket no. 908, entered July 14, 2016.

[135] Order to Show Cause, docket no. 909, entered July 14, 2016.

[136] Letter from Stene Marshall to Judge David Nuffer dated August 2, 2016, docket no. 915, lodged August 2, 2016.

[137] *Id.*

[138] *Id.*

like 4EverYoung, Equipmed and Biosoft, and that the request for an extension came after the Court's deadline to respond to the July 14 order to show cause.[139]

104.    No attorney appeared on behalf of Defendants by August 9, 2016, the date by which, under the most liberal reading of Mr. Marshall's *ex parte* letter, Mr. Marshall told the Court that counsel would appear.

105.    On August 10, 2016, Mr. Marshall sent the Court an *ex parte* email, in which Mr. Marshall informed the Court that he "anticipate[s] that new Counsel will enter its appearance in the next 48 hours. The new Counsel will appear for all of the Defendants and all Counter Claim Plaintiffs."[140]

106.    No attorney appeared on behalf of Defendants within 48 hours of that date.

107.    On October 31, 2016, attorneys from the law firm of Workman Nydegger ("Workman") appeared on behalf of Defendants.[141]

108.    Workman moved to withdraw as Defendants' counsel on January 12, 2017, on grounds that Defendants failed to "pay [Workman] fully for services rendered and maintain a retainer as required by the retainer agreement" and on grounds that Workman was not "able to communicate with Defendants … as they ha[d] stopped responding to telephone calls and emails."[142]

---

[139] Objection to and Motion to Strike Docket Entry 915, <u>docket no. 918</u>, filed August 3, 2016.

[140] Email from Stene Marshall to Judge David Nuffer dated August 10, 2016, <u>docket no. 923</u>, lodged August 11, 2016.

[141] Notices of Appearance, docket nos. 953, 954 and 956, filed October 31, 2016 and November 1, 2016.

[142] Motion for Leave to Withdraw as Counsel at 3, <u>docket no. 992</u>, filed January 12, 2017.

109.     On January 20, 2017, the Court granted Workman's motion to withdraw and ordered Defendants to appear with new counsel by 12:00 p.m. on January 30, 2017.[143]

110.     On January 30, 2017, at 11:48 a.m., Stene Marshall sent an email *ex parte* to the Court requesting a one-week extension to appear with new counsel.[144]

111.     Attached to the email was a document titled "Request for Continuance to File a Notice of Appearance of New Counsel," which asked for an extension until February 28, 2017, to appear with new counsel.[145]

112.     Nowhere in the email or document attached to the email did Mr. Marshall express an intent to proceed in the case *pro se*.

113.     12:00 p.m. on January 30, 2017, passed, and Defendants did not appear with new counsel as ordered by the Court, nor did Stene Marshall file a notice of *pro se* appearance as required by DUCivR 83-1.4(c)(3).

114.     The Court's clerk entered a default certificate against Defendants on January 31, 2017.[146]

115.     On February 28, 2017 at 5:26 p.m., Mr. Marshall sent an email to the Court *ex parte* requesting another extension.[147]

---

[143] Order Granting Motion for Leave to Withdraw as Counsel, docket no. 998, filed January 20, 2017.

[144] Email from Stene Marshall to Judge David Nuffer dated January 30, 2017, docket no. 1000, lodged January 30, 2017.

[145] Request for continuance to file a Notice of Appearance of New Counsel, docket no. 1000-1, lodged January 30, 2017.

[146] Default Certificate as to All Defendants, docket no. 1002, entered January 31, 2017.

[147] Email from Stene Marshall to Judge David Nuffer, dated February 20, 2017, docket no. 1004, lodged February 28, 2017.

116.    The Court issued a docket text order on February 28, 2017, holding that "[t]he email received and lodged as docket no. [1004] is not in proper form and not filed as a motion."[148]

117.    On February 27, 2017, Mr. Marshall sent an email to the Court *ex parte*, requesting that the Court "delay the evidentiary hearing scheduled for the 1st of March 2017."[149]

118.    At the hearing held on March 1, 2017, the Court ruled that the extension requested on February 27, 2017, was not in the form of or filed as a motion and, therefore, denied the request.

119.    Additionally, given the multiple opportunities that the Court has given Defendants to appear with counsel and the significant delays caused by Defendants failure to appear with counsel, the Court hereby finds that there was not good cause to grant the February 27, 2017, extension.

### c.    Defendants' failed to participate in outstanding discovery.

120.    On or about December 4, 2015, Derma Pen IP Holdings, LLC served Defendants with requests for production of documents and electronically stored information.[150]

121.    On of February 25, 2016, Defendants' then-counsel acknowledged receipt of the requests and promised to begin producing documents by no later than March 15, 2016.[151]

122.    None of the Defendants have produced any documents in response to the requests for production.[152]

---

[148] Docket Text Order, docket no. 1005, filed February 28, 2017.

[149] Emails from Stene Marshall to Judge Nuffer dated February 27, 2017 and February 28, 2017, Docket no. 1009, filed February 28, 2017.

[150] Derma Pen IP Holdings, LLC's 12/04/2015 Requests for Production of Documents and Electronically Stored Information to Defendants, docket no. 938-2, filed October 17, 2016.

[151] Email chain between Carla Oakley and David W. Scofield, docket no. 938-3, filed October 17, 2016.

[152] Declaration of David W. Scofield, docket no. 938-4, filed October 17, 2016.

123. Among other things, these requests sought discovery into the following: the structure of the various companies within and without the USA in which Defendants held an interest or that Defendants controlled; Defendants' communications concerning the DERMAPEN Marks or micro-needling devices bearing the DERMAPEN Marks; marketing materials created or used by Defendants that bore the DERMAPEN Marks; Defendants' financial records; Defendants' sales records concerning micro-needling devices and accessories; Defendants' vendor and freight records.

### d. The Court dismissed 4EverYoung's claims for specific performance.

124. The Court struck and dismissed 4EverYoung's and Equipmed's counterclaims on August 29, 2016, for failure to appear or appoint counsel and otherwise prosecute its claims.[153]

125. 4EverYoung failed to comply with the post-termination terms of the Sales Distribution Agreement with which it had to comply to purchase the DERMAPEN Marks and Domain Name.[154]

126. 4EverYoung also failed to comply with the processes outlined by the Court that would have enabled it to exercise its purported right of specific performance.[155]

127. Indeed, 4EverYoung failed to meaningfully participate in a valuation of the DERMAPEN Marks and the Domain Name.[156]

---

[153] Memorandum Decision and Order ("Dismissal Order"), docket no. 928, entered August 29, 2016. ███████████████████████████████████████████; *see also* Dismissal Order (dismissing 4EverYoung's claim for specific performance of the Sales Distribution Agreement); Rule 55(b)(2) Hearing at 14:24–15:14.

[155] Rule 55(b)(2) Hearing at 14:24–15:14

[156] *Id.*

128. Moreover, 4EverYoung never purchased the DERMAPEN Marks or Domain Name from Derma Pen, LLC.[157]

**10. Derma Pen, LLC's Damages.**

129. On March 1, 2017, the Court held a hearing under Federal Rule of Civil Procedure 55(b)(2) to "determine the amount of damages," "establish the truth of any allegation by evidence," and "investigate any other matter."[158]

130. At the March 1, 2017, hearing, the Court heard testimony from Michael Hennefer, Jeremy Jones, and Michael Anderer.[159]

131. The Court finds Mr. Hennefer's testimony at the March 1, 2017 hearing to be generally credible.

132. The Court finds Mr. Jones testimony at the March 1, 2017 hearing to be generally credible.

133. The Court finds Mr. Anderer's testimony at the March 1, 2017 hearing to be generally credible, and further finds Mr. Anderer qualified to testify as to the value of Derma Pen, LLC as a company given his personal experience in buying and selling companies. However, his testimony of valuation was without convincing foundation.

---

[157] *Id.*; FAC ¶ 106.

[158] Federal Rule of Civil Procedure 55(b)(2); Rule 55(b)(2) Hearing at 4:20–6:16.

[159] Rule 55(b)(2) Hearing, *passim.*

135.    Though Derma Pen, LLC sustained growth for a few months after Defendants began infringing the DERMAPEN Marks in the USA and otherwise actively soliciting Derma Pen, LLC's customers via illegal use of the DERMAPEN® Marks and via the misrepresentations described above, Derma Pen, LLC's revenues showed a general downward trend after Defendants began infringing the trademark and making aforementioned misrepresentations.[161]

136.    The decline in Derma Pen, LLC's revenues accelerated around the time when Defendants obtained unauthorized access to Derma Pen, LLC's database and stole Derma Pen, LLC's customer list and pricing information, and began contacting Derma Pen, LLC's customers directly.[162]

---

[160] Rule 55(b)(2) Hearing at 38:7–44:7; Rule 55(b)(2) Hearing exhibit 2, <u>docket no. 1010-2</u>, entered March 1, 2017; and Rule 55(b)(2) Hearing exhibit 3, docket no. 1010-3, entered March 1, 2017.

[161] *Id.*

[162] *Id.*

[163] *Id.*

[164] Rule 55(b)(2) Hearing at 31:5–32:1, 45:3–55:8.

139. Derma Pen, LLC had a recurring revenue model. It sold micro-needling devices to doctors, who then created "recurring revenue" for the company by subsequently purchasing micro-needling tips and other accessories to use in conjunction with the devices previously purchased.[165]

140. Before Defendants began infringing the DERMAPEN Marks and otherwise making the misrepresentations described above, Derma Pen, LLC had a low attrition rate with its customers. Doctors who purchased micro-needling devices almost always returned to Derma Pen, LLC to purchase tips and other accessories. This is the case even though there were other competitors in the market providing tips and other accessories for micro-needling devices.[166]

142. After Defendants began infringing the DERMAPEN Marks and making the misrepresentations described above, Derma Pen, LLC's sales dropped, the attrition rate on their customers escalated, and the margins for the sales of tips and other accessories narrowed.[168]

143. The drop in sales, rise in attrition rate, and narrowing of the margins was directly attributable to Defendants' infringing activity, misrepresentations, and stealing Derma Pen, LLC's customer list and pricing data. Rather than being a fertile grounds for making new sales, tradeshows became arenas where Derma Pen, LLC had to "battle for [its] name." Customer

---

[165] *Id.* at 45:3–55:8, 72:4–90:25.

[166] *Id.* at 45:3–55:8.

[167] *Id.*

[168] *Id.* at 26:24–32:10, 38:7–44:7.

confusion caused by Defendants' infringing the DERMAPEN Marks caused customers to leave Derma Pen, LLC or to buy products from Defendants, causing Derma Pen, LLC to lose revenue.[169]

144. Defendants infringing activity and misrepresentations, coupled with the legal fees in this action, caused Derma Pen, LLC's quarterly earnings to plummet.[170]

145. Mr. Anderer based his valuation on facts or data, as his valuation derives from the actual revenues of Derma Pen, LLC over the course of the company's history.[171]

146. Mr. Anderer's valuation was based on the following analysis.[172]



[169] *Id.*

[170] *Id.* at 26:24–32:10, 38:7–44:7, 52:23–54:1.

[171] *Id.* at 75:9–76:2.

[175] *Id.* at 93:9–94:4.

[175] *Id.* at 93:9–94:4.

147. Because of Defendants' infringing the DERMAPEN Marks, making the misrepresentations, and otherwise actively attacking Derma Pen, LLC and soliciting its customers by illegal means, the value of the DERMAPEN Marks and the Domain Name declined markedly. In short, Defendants' willful, wanton and illegal use of the DERMAPEN Marks caused the failure of Derma Pen, LLC.[175]

---

[175] *Id*. at 93:9–94:4.

[175] *Id*. at 93:9–94:4.

[177] 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).

## II.    CONCLUSIONS OF LAW

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the Lanham Act and Copyright Act claims as these claims present a federal question. This Court also has jurisdiction under 28 U.S.C. § 1367(a) over Derma Pen, LLC claims arising under Utah law.[177]

2.      Under Federal Rules of Civil Procedure 16(f) and 37(b), Defendants answers to Derma Pen, LLC's Amended Complaint are stricken.[178]

3.      The well-pled factual allegations in Derma Pen, LLC's Amended Complaint are deemed admitted.[179]

4.      4EverYoung's and Equipmed's counterclaims are dismissed.[180]

5.      Through continuous, long-term use in commerce, Derma Pen, LLC established common law rights in the DERMAPEN Marks and in the use of the phrase "DERMAPEN" as a trade name or part of a trade name.[181]

6.      None of the Defendants ever have owned or had the right to use the DERMAPEN Marks, the Domain Name or the trade name "DERMAPEN" in the USA.[182]

7.      None of the Defendants ever owned any right to license or transfer the DERMAPEN Marks or the trade name "DERMAPEN" in the USA to any third party.[183]

---

[177] 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).

[178] Federal Rules of Civil Procedure 16(f) and 37(b)(2)(A).

[179] *Id.* Once a default is entered against a party, all allegations, except those regarding damages, in the complaint are taken as true. *See Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (2d Cir. 1983).

[180] Dismissal Order at 7–8.

[181] Section I.C.1 *supra*.

[182] Sections I.C.1, I.C.2 and I.C.3 *supra*.

[183] *Id.*

8.  The Sales Distribution Agreement terminated on or about August 1, 2013.[184]

9.  Because 4EverYoung failed to reasonably participate in proceedings to establish the DERMAPEN Marks' value as required by the Sales Distribution Agreement and this Court's orders, any rights that 4EverYoung may have had to purchase the DERMAPEN Marks or Domain Name terminated in the course of the current litigation.[185]

10.  Indeed, by failing to fully prosecute its claim for specific performance in a reasonably timely manner after being given the opportunity to do so by this Court, 4EverYoung repudiated, waived, abandoned and is estopped from asserting what rights, if any, it may have had under the Sales Distribution Agreement to purchase now or at any time in the future the DERMAPEN Marks or the Domain Name under ███████ █ ███ █ the Sales Distribution Agreement.[186]

11.  By willfully infringing the DERMAPEN® Mark, making the misrepresentations described in section I.C.5 *supra*, actively attacking Derma Pen, LLC and soliciting its customers by illegal means, and willfully using Derma Pen, LLC's copyrighted content, Defendants violated Utah Code §§ 13-11-1 *et seq.*, entitling Derma Pen, LLC to actual damages of lost profits[187] of $7,307,320.00 plus costs of suit and reasonable attorney fees.[188]

---

[184] Memorandum Decision and Order Granting 4EverYoung's 238 Motion for Partial Summary Judgment on Rescission at 6, 9–11, <u>docket no. 397</u>, entered August 4, 2014.

[185] Rule 55(b)(2) Hearing at 14:24–15:14.

[186] *Id.*

[187] Utah Code § 13-11-19(2) states that "A consumer who suffers a loss as a result of a violation of this chapter may recover . . . actual damages or $2,000, whichever is greater, plus court costs." The statute and relevant case law do not clarify how damages should be calculated. Lost profits is a reasonable measure for determining whether Derma Pen LLC "suffer[ed] a loss as a result" of the defendants' violation of this chapter.

[188] Utah Code §§ 13-11-1 *et seq.* (providing for actual damages, costs and attorney fees).

12.    The amount of Derma Pen's lost profits was estimated, based on the figures found

in Exhibit 2 Derma Pen LLC Profit and Loss Spreadsheet.[189] ███████████████



[189] <u>Docket no. 1010-1</u>, filed under seal March 1, 2017.

13.     By willfully infringing the DERMAPEN Marks, making the misrepresentations described above, actively attacking Derma Pen, LLC and soliciting its customers by illegal means, and willfully using Derma Pen, LLC's copyrighted content, Defendants violated Utah Code §§ 13-11a-1 *et seq.*, thus entitling Derma Pen, LLC to actual damages of lost profits[190] of $7,307,320.00 plus costs and reasonable attorney fees.[191]

14.     By willfully infringing the DERMAPEN Marks, making the misrepresentations described above, actively attacking Derma Pen, LLC and soliciting its customers by illegal means, and willfully using Derma Pen, LLC's copyrighted content, Defendants interfered and disrupted Derma Pen, LLC's ongoing, existing, and prospective business and contractual relationships by improper means,[192] thus entitling Derma Pen, LLC to actual damages of lost profits[193] of $7,307,320.00 plus costs of suit.

15.     By making the false statements described above or the misrepresentations described above, Defendants have defamed or disparaged Derma Pen, LLC in violation of Utah common

---

[190] Again, neither the statute or case law clarifies how damages should be calculated. Lost profit is a reasonable measure for determining actual damages.

[191] Utah Code §§ 13-11a-1 *et seq.*; Utah Code § 13-11a-4 (providing for actual damages, costs and attorney fees).

[192] *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah Sup.Ct. 1982) (recognizing cause of action for tortious interference with contractual relations where a defendant (1) "intentionally interfere[s] with the plaintiff's existing or potential economic relations," (2) "for an improper purpose or by improper means," (3) "causing injury to the plaintiff").

[193] *TruGreen Companies, L.L.C. v. Mower Brothers, Inc.*, 199 P.3d 929, 934–935.

law,[194] entitling Derma Pen, LLC to actual damages of lost profits[195] of $7,307,320.00 plus costs of suit.

16.     Defendants elected either actual damages or statutory damages for defendants' trademark and copyright infringements.[196] Because damages for trademark and copyright infringement remain "uncertain"[197] and statutory and actual damages cannot both be awarded under the Lanham and Copyright Acts,[198] statutory damages will be awarded. Statutory damages have the dual purpose of compensating the aggrieved party and punishing the wrongdoer. Statutory damages require courts to consider—with whatever information is available—actual damages, but "there is no necessary mathematical relationship between the size of such an award [of statutory damages] and the extent or profitability of the defendant's wrongful activities."[199] Courts typically justify the amount of statutory damages by weighing factors such as willfulness of infringements, efforts to mislead and conceal the infringements, defiance of attempts at deterrence, size of

---

[194] *Jacob v. Bezzant*, 2009 UT 37, ¶ 21, 212 P.3d 535 (recognizing a prima facie case for defamation arises where "(1) the defendant published the statements [in print or orally]; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages") (citation and internal quotation marks omitted) (alteration in original).

[195] Numerous cases use lost profits as the appropriate means for measuring damages from business defamation. *See* Restatement (Second) of Torts § 561 (1977) (collecting cases).

[196] *See* Proposed Findings of Fact and Conclusions of Law at 39–42, ¶¶ 11–19, <u>docket no. 1019</u>, filed March 27, 2017.

[197] *See Sara Lee Corp. v. Bags of New York, Inc.*, 36 F.Supp.2d 161, 165–170 (S.D.N.Y. 1999) (relating the history and purpose of statutory damages under both the Lanham and Copyright Acts and stating that where actual damages attributable to the infringing activity are uncertain, the court should choose statutory damages.

[198] 15 U.S.C. § 1117(c) ("the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, *instead of actual damages and profits under subsection (a) of this section*, an award of statutory damages"); 17 U.S.C. § 504(c)(1) ("the copyright owner may elect, at any time before final judgment is rendered, to recover, *instead of actual damages and profits*, an award of statutory damages for all infringements involved in the action") (emphasis added).

[199] *Sara Lee Corp.*, 36 F.Supp.2d at 165 (internal quotation marks omitted).

counterfeiting operation, profits and losses (whatever is ascertainable), and the amount that would prevent future infractions.[200]

17.     Defendants have used a counterfeit mark as defined by 15 U.S.C. § 1116(d) in connection with two types of products: micro-needling devices and tips. Accordingly, under 15 U.S.C. § 1117(c), Derma Pen, LLC is entitled to $4,000,000.00 in statutory damages. After considering the above factors—reflected in the findings of facts—awarding the full $2,000,000.00 for each type of counterfeit is warranted. Defendants' infringements were willful, in defiance of numerous attempts at deterrence, and extensive.[201]

18.     By knowingly and willfully reproducing, distributing or publicly displaying the Infringing Content on their website without Derma Pen, LLC's permission or authorization, Defendants infringed Derma Pen, LLC's copyright interest in Copyrighted Content,[202] thus entitling Derma Pen, LLC to statutory damages of $600,000.00[203] and attorney fees and costs.[204]

19.     The "traditional American rule, subject to certain exceptions, is that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award."[205] Also, the Supreme Court stated that "in narrowly defined circumstances federal courts have

---

[200] *Id.* (collecting cases).

[201] Sections I.C.3–5 *supra*.

[202] *See* Section I.C.1 ¶ 27 (listing four copyright applications or registrations).

[203] 17 U.S.C. § 504(c)(3) ("the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000" per copyrighted work).

[204] 17 U.S.C. §§ 504(c) and 505.

[205] *Kealamakia, Inc. v. Kealamakia*, 213 P.3d 13, 15 (Utah Ct. App. 2009).

inherent power to assess attorney's fees against counsel."[206] One circumstance includes "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[207]

█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████

21.     Because Derma Pen is the prevailing party under the Sale Distribution Agreement, the Copyright Act,[209] the Lanham Act,[210] and relevant Utah statutes,[211] Defendants are liable for costs and attorney's fees. And because defendants have acted in bad faith, vexatiously, wantonly, and for oppressive reasons, as outlined in Sections I.C.1–5 *supra*, defendants are liable for attorney's fees and costs.

22.     Derma Pen, LLC's Motion for Cost and Attorney Fees[212] attaches numerous affidavits from various law firms in support of the motion for attorneys' fees. The Motion for Cost and Attorney Fees and the attached affidavits comply with Federal Rule of Civil Procedure 54(2)(B) and DUCivR 54-2. The fees of the various attorneys are reasonable as defined by *Dixie State Bank v. Bracken*.[213]

---

[206] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).

[207] *Id.* at 46.

████████████████████

[209] 17 U.S.C. § 504(c)(1)

[210] 15 U.S.C. 1117(a).

[211] Utah Code § 70-3a-404; Utah Code § 13-5a-103; Utah Code § 13-11-19; Utah Code § 13-11a-4.

[212] Docket no. 1017, filed March 17, 2017.

[213] 764 P.2d 985, 989–90 (Utah 1988).

23.     Derma Pen, LLC is granted attorney's fees and costs[214] under the Sale Distribution Agreement and the state and federal statutes listed above.

24.     Derma Pen IP Holdings is granted attorney's fees and costs[215] under the state and federal statutes listed above.

25.     Jeremy Jones, Chad Milton, Mike Morgan, and Michael Anderer are entitled attorney's fees and costs[216] under the inherent power of the court to grant an award of attorney's fees.

26.     Derma Pen LLC, Michael Anderer, Jeremy Jones, Michael Morgan, and Chad Milton are also awarded costs under Federal Rule of Civil Procedure 54(d)(1) as the prevailing party in this action or as the prevailing parties in successfully avoiding liability as counterclaim defendants.

27.     Defendants are alter egos of each other.[217]

28.     Any rights created in favor of Defendants by the Court's "Memorandum Decision and Order Granting 4EverYoung's 238 Motion for Partial Summary Judgment on Rescission,"[218] "Memorandum Decision and Order Granting 4EverYoung's 240 Motion for Partial Summary Judgment Directed Against Derma Pen, LLC's Defenses to Specific Performance,"[219] "Memorandum Decision and Order Granting 4EverYoung's 241 Motion for Partial Summary

---

[214] In the amounts listed in the Motion for Cost and Attorney Fees at 3–4.

[215] In the amounts listed in the Motion for Cost and Attorney Fees at 4.

[216] In the amounts listed in the Motion for Cost and Attorney Fees at 4.

[217] Section I.C.8 *supra*.

[218] Docket no. 397.

[219] Docket no. 465, entered December 30, 2014.

Judgment on Specific Performance"[220] are nullified and void because the underlying claims are stricken.[221]

29.     Mr. Marshall has used and continued to use 4EverYoung, Equipmed and BioSoft as his alter ego and as a corporate fiction to shield him from personal liability.[222]

30.     Derma Pen, LLC or any subsequent owner(s) of the DERMAPEN Marks or Domain Name, including but not limited to Derma Pen IP Holdings, are entitled to destroy any and all items that (1) Defendants together or individually have used in commerce and (2) have been marked with a reproduction, counterfeit, copy, or colorable imitation of the DERMAPEN Marks in accordance to 15 U.S.C. § 1118.[223]

31.     Derma Pen, LLC or any subsequent owner(s) of the DERMAPEN Marks or Domain Name, including but not limited to Derma Pen IP Holdings, LLC, also are entitled to a permanent injunction. Accordingly, Defendants are hereby permanently enjoined and restrained as follows:[224]

    a.     Defendants, their officers, agents, servants, employees, attorneys, licensees, and anyone in active concert or participation with, aiding, assisting, or enabling Defendants, are hereby permanently enjoined and restrained from using the DERMAPEN Marks – including any variants thereof or similar wording – or the "DERMAPEN"

---

[220] Docket no. 476.

[221] Federal Rules of Civil Procedure 16(f) and 37(b)(2)(A).

[222] Section I.C.8 *supra*.

[223] 15 U.S.C. §§ 1116 and 1118.

[224] Federal Rule Civil Procedure 65; 15 U.S.C. §§ 1116 and 1118.

tradename in the USA in connection with advertising, promoting, selling, offering for sale, distributing or importing any good or service;

b.     Defendants, their officers, agents, servants, employees, attorneys, licensees, and anyone in active concert or participation with, aiding, assisting, or enabling Defendants are permanently enjoined and restrained from stating, representing, or implying orally or in writing (including, but not limited to, email communications, print advertisements, marketing materials, websites, blogs, social media) any statements or representations: (1) that are likely to cause others to mistakenly believe that Defendants are affiliated, connected or associated with Derma Pen, LLC or any subsequent owner(s) of the DERMAPEN Marks; (2) that are likely to cause others to mistakenly believe that Defendants have or ever had rights to use the DERMAPEN Marks in the USA; (3) that misrepresent the nature, characteristics, qualities, source, or geographic origin of Defendants' micro needling devices; (4) that are about Derma Pen, LLC, about its current or former investors, officers, members or employees, or about any subsequent owner(s) of the DERMAPEN Marks and that are false, deceptive or misleading; (6) that are contrary to or inconsistent with any of the Court's factual findings; (7) that misrepresent the outcome of this lawsuit;

c.     Defendants, their officers, agents servants, employees, and attorneys, licensees and anyone in active concert or participation with, aiding, assisting or enabling Defendants are hereby permanently enjoined and restrained from the following: (1) committing any defamation, any business disparagement, or any unfair business practices directed toward obtaining the business or customers of Derma Pen, LLC or any subsequent

owner of the DERMAPEN Marks; and (2) committing any other deceptive or unfair business practices directed toward devaluing or diminishing the goodwill and reputation associated with Derma Pen, LLC or any subsequent owner(s) of the DERMAPEN Marks;

      d.      Defendants and their officers, agents, servants, employees, attorneys, and anyone in active concert or participation with, aiding, assisting or enabling Defendants are hereby enjoined to deliver up to Derma Pen, LLC or destroy all packaging, containers, devices, products, literature, advertising and any other material bearing (1) the DERMAPEN Marks or any variants thereof or similar wording, (2) the "DERMAPEN" trade name, or (3) the Copyrighted Content;

      e.      Defendants and their officers, agents, servants, employees, attorneys, licensees, and anyone in active concert or participation with, aiding, assisting or enabling Defendants are hereby enjoined to deliver up to Derma Pen, LLC a list and contact information – including name, telephone, email address and physical address – of all persons or entities to whom Defendants their officers, agents, servants, employees, attorneys, licensees and anyone in active concert or participation with have sold, distributed, offered to sell, or marketed products bearing the DERMAPEN Marks in the USA;

      f.      Defendants and their officers, agents, servants, employees, attorneys, licensees, and anyone in active concert or participation with, aiding, assisting or enabling Defendants are hereby enjoined from selling micro-needling device(s) or micro-needling tip(s) – whether or not the micro-needling device(s) or tip(s) bear the DERMAPEN Marks – to any person or entity to whom Defendants and their officers, agents, servants,

employees, attorneys, licensees and anyone in active concert or participation with, aiding, assisting or enabling Defendants previously have sold micro-needling device(s) or tip(s) bearing the DERMAPEN Marks in the USA;

g.     Defendants and their officers, agents, servants, employees, attorneys, licensees and anyone in active concert or participation with, aiding, assisting, or enabling Defendants are hereby enjoined to deliver up and destroy all packaging, containers, devices, products, literature, advertising and any other material bearing any literally false or impliedly false and deceptive statements regarding Defendants' micro-needling devices or regarding Derma Pen, LLC or its current or former investors, officers, members or employees;

h.     Defendants are hereby enjoined to file with this Court and serve on Derma Pen, LLC within thirty days after the service of this order, a report in writing under oath, setting forth in detail the manner and in which they have complied with the permanent injunction order.

## ORDER

IT IS HEREBY ORDERED that in accordance with the above findings of fact and conclusions of law that the following motions are GRANTED:

1.  Motions and Supporting Memorandum to Strike Answers of Defendants, for Entry of Default, and for Default Judgment;[225]

2.  Motion for Entry of Findings of Fact and Conclusions of Law;[226]

---

[225] Docket no. 938, filed October 17, 2016.

[226] Docket no. 943, filed October 21, 2016.

3. Motion for Terminating Sanctions and for Clarification that the Benefit of the Terminating Sanctions in the August 29, 2016 (Doc. No. 928) Order Apply to All Non-4EY Parties and Memorandum;[227]

4. Motion for Attorneys Fees;[228]

5. Motion for an Award of Damages, Costs and Attorney Fees;[229]

6. Motion for an Award of Costs and Attorney Fees;[230] and

7. Derma Pen, LLC's Motion for Cost and Attorney Fees.[231]

IT IS FURTHER HEREBY ORDERED that the following motions are now MOOT:

1. 4EverYoung's Motion *In Limine* to Exclude Derma Pen's Valuation Expert Reports and Testimony;[232] and

2. Ex-Parte Motion for Stay of Response to Defendants' Motion in Limine to Exclude Derma Pen's Valuation Expert Reports and Testimony Until Issues of Trademark's Status and Feasibility of Specific Performance Are Resolved.[233]

IT IS FURTHER HEREBY ORDERED that judgment shall be entered in favor of Derma Pen LLC and against 4EverYoung Limited, Biosoft (Aust) PTY LTD d/b/a Dermapenworld,

---

[227] Docket no. 952, filed October 25, 2016.

[228] Docket no. 944, filed October 21, 2016. Derma Pen LLC is no longer required to pay 4EverYoung's attorney's fees. *See* Order Granting Attorneys' Fees (ECF No. 736), docket no. 801, entered May 7, 2015.

[229] Docket no. 945, filed October 21, 2016.

[230] Docket no. 1015, filed March 17, 2017.

[231] Docket no. 1017, filed March 17, 2017.

[232] Docket no. 651, filed March 5, 2015.

[233] Docket no. 706, filed March 19, 2015.

Equipmed International PTY LTD d/b/a Dermapenworld, and Stene Marshall d/b/a/ Dermapenworld in the amount of $11,907,320.00.[234]

IT IS FURTHER HEREBY ORDERED that defendants are permanently enjoined and restrained according to the terms described above.[235]

IT IS FURTHER HEREBY ORDERED that Derma Pen LLC is awarded and defendants, jointly and severally, shall pay the sum of $3,668,007.53 which represents the following attorneys' fees and costs:

| Client and Firm | Attorney's Fees | Costs |
|---|---|---|
| **Derma Pen, LLC** | | |
| Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.[236] | $1,068,027.76 | $97,618.86 |
| Christensen & Jensen, P.C.[237] | $87,330.50 | |
| Douglas R. Short[238] | $205,237.50 | $1,858.27 |
| Durham Jones & Pinegar[239] | $312,189.95 | |
| Snell & Wilmer, LLP[240] | $650,202.50 | $13,516.62 |
| Stoel Rives, LLP[241] | $87,086.50 | $8,899.91 |
| **Derma Pen IP Holdings, LLC** | | |
| Peters Scofield[242] | $310,264.17 | |

[234] This includes $7,307,320.00 for lost profits, $4,000,000.00 for willful violation of the Lanham Act, and $600,000 for willful violation of the Copyright Act. Though there are numerous bases for awarding lost profits, lost profits may only be awarded once.

[235] Section II, ¶¶ 29–30 (including every subsection).

[236] Declaration of Samuel F. Miller, docket no. 1017-1, filed March 17, 2017.

[237] Declaration of Nathan Alder, docket no. 1017-3, filed March 17, 2017.

[238] Declaration of Douglas R. Short, docket no. 1017-5, filed March 17, 2017.

[239] Affidavit of J. Mark Gibb Re Attorney Fees Incurred by Derma Pen While Employing Durham Jones & Pinegar, docket no. 1017-6, filed March 17, 2017.

[240] Declaration of Douglas P. Farr, docket no. 1017-9, filed March 17, 2017.

[241] Declaration of Marc T. Rasich, docket no. 1017-11, filed March 17, 2017.

[242] Declaration of David W. Scofield, docket no. 1017-8, filed March 17, 2017.

| Jeremy Jones | | |
|---|---|---|
| Callister Nebeker & McCullough[243] | $68,782.25 | $71.30 |
| Christensen & Jensen, P.C.[244] | $15,968.50 | |
| **Chad Milton and Mike Morgan** | | |
| Christensen & Jensen P.C.[245] | $72,755.50 | $1,085.05 |
| **Michael Anderer** | | |
| Christensen & Jensen P.C.[246] | $124,352.00 | $2,146.43 |
| David W. Scofield[247] | $136,642.36 | |
| Anderson & Karrenberg, P.C.[248] | $15,338.00 | |
| Zimmerman Jones Booher[249] | $161,286.00 | $2,347.60 |
| Mark Anderson[250] | $225,000.00 | |

       IT IS FURTHER HEREBY ORDERED that the clerk of the court is directed to CLOSE this case.

       IT IS FURTHER HEREBY ORDERED that, within fourteen days after filing of this order, the parties shall send a redacted version of this document to dj.nuffer@utd.uscourts.gov.

---

[243] Declaration of James D. Gilson, docket no. 1017-2, filed March 17, 2017.

[244] Declaration of Nathan Alder, docket no. 1017-3, filed March 17, 2017.

[245] Declaration of Nathan Alder, docket no. 1017-3, filed March 17, 2017.

[246] Declaration of Nathan Alder, docket no. 1017-3, filed March 17, 2017.

[247] March 16, 2017 Declaration of David W. Scofield Re; Michael E. Anderer Personal Fees, docket no. 1017-4, filed March 17, 2017.

[248] Attorney Fee Declaration of Stephen P. Horvat, docket no. 1017-10, filed March 17, 2017.

[249] Declaration of Clemens A. landau, docket no. 1017-12, filed March 17, 2017.

[250] Declaration of Mark Anderson, docket no. 1017-7, filed March 17, 2017.

The redacted version shall obscure all protected information and shall be a text-based PDF. If the redactions are acceptable to the court, the redacted version will be placed on the docket.

Dated May 9, 2017.

BY THE COURT:

David Nuffer
United States District Judge

United States District Court
for the
District of Utah
May 9, 2017

******MAILING CERTIFICATE OF THE CLERK******

RE:   Derma Pen v. 4EverYoung Limited et al
      2:13cv729 DN-EJF


      Michael B. Bennett
      590 S STATE ST
      OREM, UT 8405

      Bryson R. Brown
      CHRISTENSEN & JENSEN PC
      257 E 200 S STE 1100
      SALT LAKE CITY, UT 84111

      4EverYoung Ltd.
      BioSoft
      Equipmed International
      Stene Marshall
      56 MYOORA ROAD
      TERREY HILLS NSW 2084
      AUSTRALIA

      James E. Magleby
      MAGLEBY CATAXINOS & GREENWOOD
      170 S MAIN ST STE 1100
      SALT LAKE CITY, UT 84101

_____

Aimee Trujillo